Matthew R. Mendelsohn, Esq. (Attorney ID:  015582005)
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 228-9898
*Attorneys for Plaintiffs*

[Additional Counsel on Signature Page]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HELENE MELZER, CHRISTINE BOROVOY, ANDY SAJNANI, and PATRICIA BIEWALD, individually and on behalf of all those similarly situated,<br><br>　Plaintiffs,<br><br>v.<br><br>JOHNSON & JOHNSON CONSUMER INC.,<br><br>　Defendant. | CIVIL NO. 22-cv-03149 (MAS)<br><br><br>*CIVIL ACTION*<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiffs Helene Melzer, Christine Borovoy, Andy Sajnani, and Patricia Biewald, (collectively, "Plaintiffs") individually and on behalf of all others similarly situated, bring this Second Amended Class Action Complaint against Johnson & Johnson Consumer Inc. ("J&J" or "Defendant") for violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* (the "BIPA"). Plaintiffs allege as follows based upon personal knowledge as to their own acts and experiences, and as to all other matters, upon information and belief, including an investigation conducted by their attorneys.

## NATURE OF THE ACTION

1.      Plaintiffs bring this class action to enforce the statutorily protected privacy rights that Plaintiffs and other Illinois residents have in their biometric information and biometric identifiers, such as scans of their unique face geometry, and to recover from Defendant for its repeated and continuing violations of BIPA.

2.      The Illinois Legislature enacted BIPA to provide special protections for this highly private and sensitive information. The legislature found that "[b]iometric identifiers and biometric information . . . are biologically unique to the individual" and cannot be changed; "therefore once compromised, the individual has no recourse." 740 ILCS 14/5(c).

3.      BIPA is an informed consent privacy law addressing the collection, retention and use of personal biometric identifiers and information. The statute prohibits companies, such as the Defendant, from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining Illinois residents' biometric identifiers or biometric information without first informing the individual, in writing, that such information is being collected and the specific purpose and length of term of the collection, storage, and use of the information and without first receiving a written release. 740 ILCS 14/15(b).

4.      BIPA further prohibits companies in possession of biometric identifiers or biometric information from disclosing, redisclosing, or otherwise disseminating this information without express consent and from selling, trading, or profiting from the information. 740 ILCS 14/15(c) and (d).

5.      BIPA also requires companies in possession of biometric identifiers or biometric information to develop and publish a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information. 740 ILCS 14/15(a).

6.      Defendant's Neutrogena Skin360 ("Skin360") technology utilizes a sophisticated and precise facial recognition and skin analysis program. Defendant, through the Skin360 technology, actively collects, captures, uses, and stores detailed biometric identifiers and/or biometric information, including scans of the facial geometry of Plaintiffs and other Illinois consumers. The biometric data is tied to the individuals' names, email addresses, birthdates, and other personally identifying information.

7.       Defendant's conduct violated, and continues to violate, BIPA in Illinois because Defendant did not:

- First inform Plaintiffs and Class members in writing that their biometric information and/or biometric identifiers (unique face geometry) were being captured, collected, or stored;

- First inform Plaintiffs and Class members in writing of the specific purpose and length of time for which their biometric identifiers were being captured, collected, stored, and used; and

- Obtain a written release from Plaintiffs and Class members.

8.      Defendant did not provide any of the required disclosures, nor did it obtain written consent. Defendant also failed to create, develop, publicly disclose, follow, and comply with data retention and destruction policies for biometric data. Defendant commercially disseminates and unlawfully profits from this highly protected, private information.

9.      Defendant, intentionally or recklessly, disregarded, and continues to disregard, its obligations under BIPA to protect the privacy interests of its consumers located in Illinois. Plaintiffs bring this action individually and on behalf of the proposed class to (1) enjoin Defendant from continuing to violate BIPA; (2) recover from the privacy injuries suffered by Plaintiffs and the Class by awarding them BIPA's statutory damages for each of Defendant's intentional or reckless acts of

unlawful collection, storage, use, disclosure, sale, trade and profiting from this protected information; and (3) compel Defendant to disgorge its ill-gotten gains.

## PARTIES

10.     At all relevant times, Plaintiff Melzer has been a resident and citizen of the state of Illinois.

11.     At all relevant times, Christine Borovoy has been a resident and citizen of the state of Illinois.

12.     At all relevant times, Andy Sajnani has been a resident and citizen of the state of Illinois.

13.     At all relevant times, Patricia Biewald has been a resident and citizen of the state of Illinois.

14.     Defendant Johnson & Johnson Consumer Inc. is a New Jersey corporation with its principal place of business in 199 Grandview Road, Skillman, New Jersey, 08558. It is the owner and operator of the Neutrogena Skin360 mobile software application, downloadable at the Apple App and Google Play stores, and the Neutrogena Skin360 web application located at https://skin360.neutrogena.com.

15.     It also distributes, promotes, and sells Neutrogena skincare and cosmetic products to consumers located in the state of Illinois.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) et seq., because this case is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are greater

than 100 putative class members; at least one putative class member is a citizen of a state other than

Defendant; and none of the exceptions under subsection 1332(d) apply.

17.    This Court has jurisdiction over Defendant because it is a New Jersey corporation

with its principal place of business in the State of New Jersey.

18.    Venue is proper in this Court because the acts and omissions giving rise to this lawsuit

took place in this District and Defendant maintains its principal place of business within the District.

## FACTUAL ALLEGATIONS

**A.  BIPA Requires Companies to Provide Notice and Obtain the Informed, Written Consent of Illinois Residents Prior to Capturing, Collecting, Using, or Storing their Biometric Data**

19.    Every person has unique features by which they can be identified using a set of standard quantitative measurements, referred to as "biometric identifiers." For example, the shape of and distance between tiny ridges on each person's finger are unique, so measures of those features can be used to identify a specific individual.

20.    Each person also has a unique facial geometry composed of, among other measures, distances between key facial landmarks and ratios between those distances. Once a picture of a person's face is scanned and its biometric measurements are captured, computers can store that information and use it to identify that individual any other time that person's face appears on the internet or in public. Biometrics are used for everything from airport security screening to an alternative to passwords for accessing websites and phone applications, including banking and investment applications.

21.    In 2008, Illinois recognized that

[b]iometric identifiers and biometric information are unlike other unique identifiers used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometric identifiers and biometric information, however, are

biologically unique to the individual; therefore, once compromised, the individual has no recourse . . .

740 ILCS § 14/5.

22.    To provide special protections for this information, Illinois enacted BIPA, codified at 740 ILCS 14/1-25, which recognizes that "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and biometric information." 740 ILCS § 14/5(g).

23.    The Illinois Supreme Court has recognized that BIPA was enacted to preserve an individual's right to privacy and control over his/her/their biometric data:

> Through the Act, our General Assembly has codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information. . . .The duties imposed on private entities by section 15 of the Act regarding the collection, retention, disclosure, and destruction of a person's or customer's biometric identifiers or biometric information define the contours of that statutory right. Accordingly, when a private entity fails to comply with one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach.
>
> * * *
>
> The Act vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent. . . . When a private entity fails to adhere to the statutory procedures, as defendants are alleged to have done here, the right of the individual to maintain his or her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized. This is no mere "technicality." The injury is real and significant.

*Rosenbach v. Six Flags Ent. Corp*., 129 N.E.3d 1197, 1206 (Ill. 2019) (internal citations and quotations omitted).

24.    BIPA defines a "biometric identifier" as a "retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS § 14/10.

25.    The statute defines "biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual."

26.    BIPA prohibits the collection of such information without prior express written informed consent:

> No private entity may collect, capture, purchase receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:
>
> > (1)    informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
> >
> > (2)    informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
> >
> > (3)    receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS § 14/15(b).

27.    BIPA also requires that private entities possessing such information develop special written policies establishing specific retention guidelines and make these policies available to the public:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS § 14/15(a).

28.     Even if a private entity first obtains this information with informed consent and provides the required written policy, BIPA in turn limits the further disclosure or redisclosure of this information without express consent. 740 ILCS § 14/15(d).

29.     Separate from the disclosure and consent requirements, BIPA prohibits any sale, trade, or profiting from this specially protected information irrespective of any informed consent:

> No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information.

740 ILCS § 14/15(c).

30.     BIPA gives any person aggrieved by a BIPA violation a private right of action, with liquidated damages for each violation. 740 ILCS § 14/20.

31.     BIPA provides for statutory damages of $1,000 for each negligent violation and, alternatively, damages of $5,000 for each willful and/or reckless violation of BIPA. *Id.* at § 14/20(1), (2). BIPA further provides, among other things, for injunctive relief, "as the State or federal court may deem appropriate." *Id.* at § 14/20(4).

**B.  Neutrogena Skin360 Captures, Collects, Uses, and Stores the Facial Biometric Data of Plaintiffs and Class Members Without Notice and Informed Written Consent**

32.     Through its Skin360 face scanning program, Defendant actively collects, captures, obtains, uses, processes, and stores biometric identifiers and/or biometric information of consumers in Illinois without notice and written consent.

33.     Defendant describes Skin360 as a "breakthrough technology" that provides consumers with "a personalized at-home skin assessment" by scanning a consumer's face and analyzing the facial scan to diagnose skin health issues, such as dark circles, wrinkles, fine lines, dark spots, and texture, and then recommending a skin care regimen consisting of Neutrogena products—all in real

time. *See* https://web.archive.org/web/20220609041141/https://skin360.neut-rogena.com/.

34.     Skin360 "processes over 100,000 skin pixels from every selfie scan to measure 5 different aspects of [the consumer's] skin health." *See* https://www.business-wire.com/news/home/20200103005398/en/NEUTROGENA®-Relaunches-NEUTROGENA-Skin360™-App-to-Democratize-Skin-Health-. "Each Neutrogena Skin360® Scan identifies over 2,000 facial attributes like dark circles, wrinkles, fine lines, smoothness, and dark spots." *Id.*

35.     Skin360 deploys Perfect Corp.'s YouCam technology, which utilizes precise face detection and facial tracking as well as face mapping and advanced facial recognition. The YouCam technology, which captures over 200 facial landmark points, is integrated with the Skin360 app.

36.     Each Skin360 facial scan captures the unique facial geometry of consumers in Illinois, including Plaintiffs and Class members. The "images are analyzed using Neutrogena's database of 10,000 other selfies from a range of age groups and ethnicities." *See* https://www.al-lure.com/story/neutrogena-skin360-app-naia-assistant; *see also*, https://www.business-wire.com/news/home/20200103005398/en/NEUTROGENA®-Relaunches-NEUTROGENA-Skin360™-App-to-Democratize-Skin-Health-Information (Neutrogena Skin360 technology was "developed using more than 10,000 facial databases across ethnicities, skin types and ages (from 7-70 years old), with more than 10 types of lighting.").

37.     Skin360's algorithms scan, detect, align, and process a consumer's facial image at specific coordinates. The mapping technology takes a 180-degree facial scan. To ensure full facial coverage, including difficult to map areas such as chin and cheeks, Skin360 takes a scan of the front, left, and right profiles of the consumer's face. It provides a facial map for the consumer to align their own face with, as illustrated by Defendant's depiction of a facial scan below:



38.     Skin360's algorithms extract and create a unique digital representation of the face and its measurements (*i.e.,* a face template) based on the scan of the consumer's facial landmarks and facial geometry. Each face template is a distinct numerical representation of the unique shape and geometry of an individual's facial image, including the contours of, and distance between, unique facial landmarks and features.

39.     Each face template is unique to an individual and can be used to identify them.

40.     The photo below is Defendant's own illustration of a Skin360 Scan:



41.     Through the scan of the consumer's unique facial geometry and the face template, Skin360 accurately detects dark circles, wrinkles, fine lines, smoothness, dark spots, and other skin concerns and displays them to the consumer by marking them at their precise location on an image of the consumer's face. The scan of unique facial geometry and the face template is also how the Skin360 knows exactly where to mark a fine line, a dark spot, or other skin concern, on the image of the consumer's face—and to do so with precision and exactitude.

42.     The collected biometric identifiers and/or biometric information of Plaintiffs and Class members are attached to other personally identifying information, such as names, dates of birth, and email addresses, as well as other private information about consumers, such as their sleep, exercise, and stress levels, and their precise geolocation (as the app tracks real time weather data to suggest products based on the weather).

11

43.     Defendant stores Plaintiffs and Class members' biometric data on third-party servers.

44.     Defendant encourages consumers to scan their face twice a day, in the morning and evening, on an ongoing basis, so that Skin360 can monitor and track the progress of their skin health over time.

45.     On information and belief, Defendant also combines the facial biometric identifiers and/or biometric information of Plaintiffs and Class members with other information Defendant has collected about them, including information it receives from Defendant's parent company, Defendant's or its parent company's affiliates, publicly available information (such as social media profiles), and other third-parties.

46.     Clinique Laboratories, LLC, the maker of Clinique skincare products, also deploys Perfect Corp's YouCam technology for its virtual skin analysis and product recommendation tool, Clinique Clinical Reality Skincare Recommendation Diagnostic Tool. *See* Provident Acquisition Corp. Schedule 14A, Preliminary Proxy Statement/Prospectus Subject to Completion Dated July 8, 2022.

47.     Before scanning consumer's faces and collecting their facial geometry, Clinique's "Biometric Data Notice and Consent," appears on the consumer's screen, as shown in the figure below.

## Biometric Data Notice and Consent

The Clinique Clinical Reality Skincare Recommendation Diagnostic Tool will analyze a scan of your face geometry from your photograph in order to provide you with a personalized skin care solution and related product recommendations. Clinique will only retain this information for the duration of your use of the Tool. For information about Clinique's privacy practices, please read our full Privacy Policy.

By clicking the "OK" button, you consent and provide a written release to the use of your face geometry from your photograph for the purpose described above.

OK

48.     Clinique also disclosed to its customers that it "may collect . . . biometric information, such as facial geometry (for example, if you use our Clinique Clinical Reality Skincare Recommendation Diagnostic Tool)." *See* https://www.clinique.com/customer-care/general-info/privacy-policy.

49.     Other companies disclose that they collect biometric information when consumers utilize their face mapping technologies for skin diagnostics and product recommendations.

50.     In or about May 2023, Defendant implemented a pop-up on the Skin360 website, which for the first time referenced biometric data, as shown in the figure below[1]:

---

[1]     On or about April 20, 2023, Defendant discontinued the Neutrogena Skin360 mobile apps.

Figure 1



51.     The previous version of the pop-up made no reference to biometric data, as shown in the figure below:

Figure 2



52.     In direct violation of BIPA, 740 ILCS § 14/15(b)(1), Defendant never informed or disclosed to Plaintiff and Class members that it was capturing, collecting, and storing their biometric identifiers and biometric information.

53.     In direct violation of BIPA, 740 ILCS § 14/15(b)(2), Defendant never informed Plaintiff and the Class members of the specific purpose and length of time for which Defendant was collecting, storing, and using their biometric identifiers and biometric information.

54.     In direct violation of BIPA, 740 ILCS § 14/15(b)(3), Defendant never obtained a written release executed by Plaintiff and Class members prior to collecting, capturing, storing, and using their biometric identifiers or biometric information.

55.     Defendant's violations of BIPA injured Plaintiffs and Class members, who lost the power and ability to make informed choices about Defendant's collection, storage, and use of their highly sensitive biometric identifiers and/or biometric information.

C. **Defendant Has Unlawfully Retained Plaintiffs and Class Members' Biometric Data**

56.     BIPA also requires Defendant, as "an entity in possession of biometric identifiers or biometric information" to "develop a written policy, made available to the public" that establishes "a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose has been satisfied or within 3 years of the individual's last interaction with private entity, whichever occurs first." 740 ILCS § 14/15(a).

57.     Defendant failed to comply with the full panoply of its Section 15(a) duties. Defendant failed to create, develop, publicly disclose, follow, and comply with data retention and destruction policies. Neither Skin360's Privacy Policy nor its Terms of Use contained any written policy regarding the treatment of biometric information and biometric identifiers.

58.    Defendant has retained the facial biometric data of Plaintiffs and Class members without creating and following a written retention policy, which has resulted in the wrongful retention of Plaintiffs and Class members' biometric information and biometric identifiers. This has directly injured Plaintiffs and Class members.

**D.    Defendant Discloses and Profits from Plaintiffs and Class Members' Biometric Data Without Obtaining Their Informed Consent.**

59.    Defendant actively collects, tracks, possesses, and uses Plaintiffs and Class members' facial geometric data to enrich its facial databases and enhance its machine learning of its artificial intelligence assistant, NEUTROGENA® AI Assistant (NAIA™), which recommends Neutrogena products to consumers.

60.    NAIA is virtual skin health coach that is integrated into the Skin360 technology.  It is "powered by artificial intelligence and behavior change techniques" and 'builds a relationship with users by initiating a text conversation to determine their skincare personality, approach to skincare and current routine." *See* https://www.businesswire.com/news/home/20200103005398/en/NEU-TROGENA®-Relaunches-NEUTROGENA-Skin360™-App-to-Democratize-Skin-Health-Information.

61.    NAIA™ "helps users identify an 8-week skincare goal that is monitored and supported with behavioral coaching." *See id.* It recommends a specific skin care regimen consisting of Neutrogena products to new customers who have their face geometry analyzed by the Skin360 technology, resulting in sales of Neutrogena products.

62.    According to Defendant, "[a]s more data is tracked, NAIA™ will use machine learning to improve analysis and recommendations, getting more precise and intelligent." *See id.*

63.     On information and belief, Defendant uses the biometric identifiers and/or biometric information it collects from Plaintiffs and Class members to enhance, enrich, improve, and perfect Skin360 (including NAIA) to better solicit sales from future customers. Specifically, it integrates and incorporates their scans of facial geometry into the Skin360 technology and thereby improves its face mapping abilities. Defendant then uses the improved technology to solicit future product sales.

64.     Defendant commercially disseminates Plaintiffs and Class members' biometric identifiers and/or biometric information because it so integrates their biometric identifiers and/or biometric information into its Skin360 technology such that this data is inextricably intertwined with the technology itself, and Defendant's further use of the technology commercially disseminates their biometric identifiers and/or biometric information. By continuing to market and disseminate this technology on its website, on social media, on YouTube, and elsewhere, Defendant is commercially disseminating and directly profiting from Plaintiffs and Class members' biometric identifiers and/or biometric information without their consent.

65.     As a result of Plaintiffs and Class members' use of Skin360, Defendant has gained a competitive advantage in Illinois, including increased sales of Neutrogena products to consumers in the state of Illinois and valuable consumer insights about its Illinois residents' skin conditions that traditionally could only be obtained through consumer surveys, questionnaires, and focus groups.

66.     Defendant also commercially discloses, transfers, and disseminates Plaintiffs and Class members' biometric identifiers and/or biometric information directly to Defendant's affiliates and third-party partners, including partners that provide technical and other services for its Skin360 technology, without consent and for Defendant's benefit.

67.     Defendant exchanges consumer information with its affiliates and third-party providers, and in 2020, notified California consumers that it collected their personal information, including biometric information, and shared it with its affiliates and unidentified partners in transfers that could be considered "sales" under California law during the prior year.

68.     In 2023, Defendant unlawfully transferred Plaintiffs' and Class Members biometric identifiers and biometric information to Kenvue, Inc., a newly formed entity that became Defendant's parent entity at that time. Defendant did not disclose or obtain consent for this transfer.

69.     Defendant, never having disclosed its ongoing collection of the biometric identifiers and/or biometric information of Illinois customers in the first instance, failed to obtain consent to transfer, disclose, redisclose, or disseminate this information. Defendant's conduct violated, and continues to violate, BIPA's prohibition on the disclosure, redisclosure, or dissemination of biometric information and biometric identifiers without express consent. *See* 740 ILCS § 14/15(d).

70.     Defendant also commercially benefits from its commercial disclosure and dissemination of this protected biometric data. In doing so, Defendant violated BIPA's prohibition on the sale, trade, or profiting from Plaintiff and Class members' biometric information and biometric identifiers. *See* 740 ILCS § 14/15(c).

71.     Defendant's conduct of selling, trading, or otherwise profiting from its possession of Plaintiffs and Class members' biometric information and biometric identifiers amplified the invasion of privacy that occurred when the data was first unlawfully collected, injured them by exposing Plaintiffs and Class members to a heightened risk of privacy and informational harms and deprived them of their control over their biometric data.

**E.  Plaintiff Melzer's Personal Experience Using Neutrogena Skin360**

72.     While located in Illinois, and in or around December 2021 or January 2022, Plaintiff

Melzer used Neutrogena Skin360 on her mobile device to obtain a personalized at-home skin assessment.

73.    Defendant required Plaintiff Melzer to turn on and use her live camera for 180-degree selfie scans, at which point Defendant used Skin360 to scan, collect, capture, use, and store in an electronic database, digital copies of Plaintiff's unique facial geometry.

74.    Prior to taking Plaintiff Melzer's biometric identifiers and/or biometric information, Defendant did not inform her in writing, or otherwise, that her biometrics were being captured, collected, stored, used, or disseminated. Defendant did not seek, and Plaintiff Melzer was never provided, informed written consent relating to the collection, capture, use, storage, dissemination, or disclosure of her biometrics.  Nor did Defendant publish any policy specifically about the collection, retention, use, deletion, or dissemination of her biometrics.

75.    In fact, at the time Melzer used Skin360, Defendant did not publish any policy as to a biometric retention schedule or guidelines for permanently destroying biometrics. Defendant collected and retained Plaintiff Melzer's biometric identifiers and/or biometric information without creating and complying with a written retention policy, resulting in the wrongful retention of such data.

76.    Melzer has never been informed of the specific purposes or length of time for which Defendant collected, stored, or used her facial geometry or whether Defendant will ever permanently delete her biometrics.  Melzer does not know whether Defendant has destroyed—or will destroy—the biometrics collected from her.

77.    By failing to comply with BIPA, Defendant violated Plaintiff Melzer's substantive state rights to biometric information privacy. As a result, Defendant injured Plaintiff by depriving her of the power and ability to make informed decisions about the collection, storage, and use of her biometric information and biometric identifiers, and the wrongful retention and misuse of her data.

**F. Plaintiff Borovoy's Personal Experience Using Neutrogena Skin360**

78.    In 2022, Plaintiff Borovoy downloaded the Neutrogena Skin360 mobile app.  Between 2020 and 2022, while located in Illinois, on multiple occasions, she used Neutrogena Skin360 on her mobile device to obtain a personalized at-home skin assessment

79.    Defendant required Plaintiff Borovoy to turn on and use her live camera for 180-degree selfie scans, at which point Defendant used Skin360 to scan, collect, capture, use, and store in an electronic database, digital copies of Plaintiff's unique facial geometry.

80.    Prior to taking Plaintiff Borovoy's biometric identifiers and/or biometric information, Defendant did not inform her in writing, or otherwise, that her biometrics were being captured, collected, stored, used, or disseminated. Defendant did not seek, and Plaintiff Borovoy was never provided, informed written consent relating to the collection, capture, use, storage, dissemination, or disclosure of her biometrics.  Nor did Defendant publish any policy specifically about the collection, retention, use, deletion, or dissemination of her biometrics.

81.    In fact, at the time Borovoy used Skin360, Defendant did not publish any policy as to a biometric retention schedule or guidelines for permanently destroying biometrics. Defendant collected and retained Plaintiff Borovoy's biometric identifiers and/or biometric information without creating and complying with a written retention policy, resulting in the wrongful retention of such data.

82.    Borovoy has never been informed of the specific purposes or length of time for which Defendant collected, stored, or used her facial geometry or whether Defendant will ever permanently delete her biometrics.  Borovoy does not know whether Defendant has destroyed—or will destroy—the biometrics collected from her.

83.    By failing to comply with BIPA, Defendant violated Plaintiff Borovoy's substantive state rights to biometric information privacy. As a result, Defendant injured Plaintiff by depriving her of the power and ability to make informed decisions about the collection, storage, and use of her biometric information and biometric identifiers, and the wrongful retention and misuse of her data.

**G. Plaintiff Biewald's Personal Experience Using Neutrogena Skin360**

84.    While located in Illinois, and in or around 2020, Plaintiff Biewald used Neutrogena Skin360 on her mobile device to obtain a personalized at-home skin assessment.

85.    Defendant required Plaintiff Biewald to turn on and use her live camera for 180-degree selfie scans, at which point Defendant used Skin360 to scan, collect, capture, use, and store in an electronic database, digital copies of Plaintiff's unique facial geometry.

86.    Prior to taking Plaintiff Biewald's biometric identifiers and/or biometric information, Defendant did not inform her in writing, or otherwise, that her biometrics were being captured, collected, stored, used, or disseminated. Defendant did not seek, and Plaintiff Biewald was never provided, informed written consent relating to the collection, capture, use, storage, dissemination, or disclosure of her biometrics.  Nor did Defendant publish any policy specifically about the collection, retention, use, deletion, or dissemination of her biometrics.

87.    In fact, at the time Biewald used Skin360, Defendant did not publish any policy as to a biometric retention schedule or guidelines for permanently destroying biometrics. Defendant collected and retained Plaintiff Biewald's biometric identifiers and/or biometric information without creating and complying with a written retention policy, resulting in the wrongful retention of such data.

88.    Biewald has never been informed of the specific purposes or length of time for which Defendant collected, stored, or used her facial geometry or whether Defendant will ever permanently

delete her biometrics.  Biewald does not know whether Defendant has destroyed—or will destroy—the biometrics collected from her.

89.    By failing to comply with BIPA, Defendant violated Plaintiff Biewald's substantive state rights to biometric information privacy. As a result, Defendant injured Plaintiff by depriving her of the power and ability to make informed decisions about the collection, storage, and use of her biometric information and biometric identifiers, and the wrongful retention and misuse of her data.

**H. Plaintiff Sajnani's Personal Experience Using Neutrogena Skin360**

90.    In or about late 2020, while located in Illinois, Plaintiff Sajnani used Neutrogena Skin360 several times to obtain a personalized at-home skin assessment.

91.    Defendant required Plaintiff Sajnani to turn on and use his live camera for 180-degree selfie scans, at which point Defendant used Skin360 to scan, collect, capture, use, and store in an electronic database, digital copies of Plaintiff's unique facial geometry.

92.    Prior to taking Plaintiff Sajnani's biometric identifiers and/or biometric information, Defendant did not inform him in writing, or otherwise, that his biometrics were being captured, collected, stored, used, or disseminated. Defendant did not seek, and Plaintiff Sajnani was never provided, informed written consent relating to the collection, capture, use, storage, dissemination, or disclosure of her biometrics.  Nor did Defendant publish any policy specifically about the collection, retention, use, deletion, or dissemination of his biometrics.

93.    In fact, at the time Sajnani used Skin360, Defendant did not publish any policy as to a biometric retention schedule or guidelines for permanently destroying biometrics. Defendant collected and retained Plaintiff Sajnani's biometric identifiers and/or biometric information without creating and complying with a written retention policy, resulting in the wrongful retention of such data.

94.    Sajnani has never been informed of the specific purposes or length of time for which Defendant collected, stored, or used his facial geometry or whether Defendant will ever permanently delete his biometrics.  Sajnani does not know whether Defendant has destroyed—or will destroy—the biometrics collected from him.

95.    By failing to comply with BIPA, Defendant violated Plaintiff Sajnani's substantive state rights to biometric information privacy. As a result, Defendant injured Plaintiff by depriving him of the power and ability to make informed decisions about the collection, storage, and use of his biometric information and biometric identifiers, and the wrongful retention and misuse of his data.

## CLASS ALLEGATIONS

96.    Plaintiffs seek to certify the following Class and brings this complaint against the Defendant, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), on their own behalf and on behalf the following Class:

> All persons who, while in Illinois, used Neutrogena Skin360 on a mobile app or the Skin360 website, regardless as to the manner in which it was accessed, at any time during the applicable limitations period through date the Defendant implemented the pop-up depicted in Figure 1, above (the "Class Definition")

97.    Excluded from the Class are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family member of such officer or director.

98.    Ascertainability: The Class members can be reasonably identified using information that is kept by Defendant and/or their agents in the usual course of business and/or is in Defendant's control.

99.    Numerosity: The Class is so numerous that individual joinder is impracticable. Upon information and belief, there are thousands of members of the Class, making the members of the

Class so numerous that joinder of all members is impracticable. The exact number of members of the Class is known by Defendant and can be easily identified through Defendant's records.

100.    Typicality: Plaintiffs' claims are typical of the claims of the Class she seeks to repre-sent, because the factual and legal bases of Defendant's liability to Plaintiffs and the Class is the same, and because Defendant's conduct has resulted in similar injuries to Plaintiffs and to the Class. As alleged herein, Plaintiffs and the Class have all suffered damages as a result of Defendant's BIPA violations and biometric handling practices.

101.    Commonality: There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individ-ual members of the Class. Common questions for the Class include, but are not limited to, the fol-lowing:

    a.  Whether Defendant collected, captured, received otherwise obtained, stored and/or used biometric identifiers and biometric information from Plaintiffs and the members of the Class;

    b.  Whether Defendant first informed Plaintiffs and the members of the Class in writing that they would be collecting, capturing, receiving, otherwise obtaining, storing, and/or using their biometric identifiers or biometric information;

    c.  Whether Defendant first informed Plaintiffs and the members of the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information would be collected, captured, received, otherwise obtained, stored, and/or used;

    d.  Whether Defendant first obtained from Plaintiffs and the members of the Class a written release before capturing, collecting, or otherwise obtaining their biometric information and biometric identifiers;

    e.  Whether Defendant established a publicly available policy for retention of biometric identifiers and biometric information sufficient to satisfy 740 ILCS § 14/15(c).

    f.  Whether Defendant disclosed, redisclosed, or disseminated the biometric identifiers and biometric information of Plaintiff and the members of the Class;

    g.  Whether Defendant obtained the consent of Plaintiffs and the members of the Class to disclose, redisclose, or disseminate their biometric information and biometric identifiers;

24

h.  Whether Defendant traded, sold, leased, or otherwise profited from its possession of the biometric identifiers and biometric information of Plaintiffs and the members of the Class;

i.  Whether Defendant's conduct violates BIPA;

j.  Whether Defendant's conduct is negligent;

k.  Whether Defendant's violations of BIPA are willful or reckless; and

l.  Whether Plaintiffs and the Class are entitled to damages and injunctive relief.

102.    Superiority: Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

103.    Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

104.    Individual litigation also risks inconsistent or contradictory judgments and increases the costs of legal resolution of this matter for all parties and the court system. By contrast, the proposed class action presents far fewer management difficulties and offers the benefits of single adjudication, economies of scale, and comprehensive supervision by this Court.

105.    Adequacy of Representation: Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class they seek to represent. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members

of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

## FIRST CLAIM FOR RELIEF
### Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*., (On behalf of Plaintiffs and the Class)

106.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

107.   Defendant is a private entity as defined in 740 ILCS § 14/10.

108.   In violation of 740 ILCS § 14/15(b)(3), Defendant systematically collected, captured, received, or otherwise obtained, stored, and/or used Plaintiffs' and the other Class members' biometric identifiers and biometric information without first obtaining the written release required by that provision.

109.   In violation of 740 ILCS § 14/15(b)(1), Defendant failed to inform Plaintiffs and the other Class members in writing before collecting and storing their biometric information and biometric identifiers that such biometric identifiers and biometric information was being collected and stored.

110.   In violation of 740 ILCS § 14/15(b)(2), Defendant failed to inform Plaintiffs and the other Class members in writing before collecting and storing their biometric information and biometric identifiers of the specific purpose and length of term for which the biometric identifiers and biometric information was being collected, stored and used.

111.   In violation of 740 ILCS § 14/15(a), Defendant, while in possession of Plaintiffs' and the Class members' biometric identifiers and biometric information, failed to develop a written policy made available to the public providing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information as required by that provision, and injured

Plaintiffs' and the Class members' by capturing, collecting, and using their biometric identifiers and biometric information without creating and following a retention schedule and retention guidelines.

112.    In violation of 740 ILCS § 14/15(d), Defendant disclosed and/or redisclosed and disseminated Plaintiffs' and the Class members' biometric information and biometric identifiers without obtaining consent.

113.    In violation of 740 ILCS § 14/15(c), Defendant sold, traded, or otherwise profited from its possession of Plaintiff and Class members' biometric information and biometric identifiers.

114.    By capturing, collecting, storing, using, and disseminating Plaintiffs' and the Class' biometric identifiers and biometric information as described herein, Defendant denied Plaintiffs and the Class of their right to statutorily-required information, failed to protect their facial biometric data and violated their state rights to biometric privacy as set forth in BIPA.

115.    Each of these privacy violations harmed and injured Plaintiff and the other Class members.

116.    BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA.

117.    Defendant's violations of BIPA, as set forth herein, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendants negligently failed to comply with BIPA's requirements because they failed meet their applicable standard of care to ensure that such information was collected, stored, and used in compliance with applicable State law.

118.    Accordingly, Plaintiffs, on behalf of themselves and the proposed Class, seek: (i) injunctive and equitable relief as provided for in 740 ILCS § 14/15(c) to protect Plaintiffs' and the Class members' interests by requiring Defendant to comply with BIPA's requirements for collecting,

capturing receiving, otherwise obtaining, storing, disclosing, and selling, trading, or profiting from biometric identifiers and biometric information and restraining Defendant's continued non-compliance; (ii) statutory damages of $5,000 pursuant to 740 ILCS § 14/20(2) for each intentional and reckless violation of BIPA, or alternatively statutory damages pursuant to 740 ILCS § 14/20(1) of $1000 for each negligent violation; (iii) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class, respectfully request that this Court enter a Judgment as follows:

a. Certifying the Class as defined above, appointing Plaintiffs as class representatives and the undersigned as class counsel;

b. Declaring that Defendant violated BIPA's requirements, including separate violations of 740 ILCS § 14/15(a), (b)(1), (b)(2), (b)(3), (c), and (d);

c. Awarding injunctive and equitable relief to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA requirements for the capture, collection, storage, use, and dissemination of biometric identifiers and biometric information, and restraining Defendant's continued non-compliance;

d. Awarding statutory damages of $1,000 for each negligent violation of BIPA, pursuant to 740 ILCS § 14/20(3);

e. Awarding statutory damages of $5,000 for each willful and/or reckless violation of BIPA, pursuant to 740 ILCS § 14/20(1);

f. Ordering Defendant to disgorge all profits or other benefits obtained from its improper collection, use, trade, sale, dissemination and profiting from Plaintiffs' and the Class members' biometric information and biometric identifiers;

28

g. Awarding reasonable attorneys' fees, costs, and other litigation expenses pursuant to 740 ILCS § 14/20(3);

h. Awarding pre-judgment and post-judgment interest, as allowable by law; and

i. Awarding such further and other relief as the Court deems just and equitable.

## **JURY TRIAL DEMAND**

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: July 1, 2024

*/s/ Matthew R. Mendelsohn*
Matthew R. Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Phone: (973) 228-0391
mrm@mazieslater.com

Grace E. Parasmo (*pro hac vice*)
Yitzchak H. Lieberman (*pro hac vice*)
**PARASMO LIEBERMAN LAW**
7119 W. Sunset Blvd, #808
Los Angeles, CA 90046
Tel: (917) 657-6857
gparasmo@parasmoliebermanlaw.com
ylieberman@parasmoliebermanlaw.com

Allen Schwartz (*pro hac vice*)
**LAW OFFICE OF ALLEN SCHWARTZ, ESQ.**
150 Broadway, Suite 900
New York, NY 10038
Tel: 347-460-5379
allen@allenschwartzlaw.com

Glenn Ruud (*pro hac vice*)
Kylie K. Franklin (*pro hac vice*)
**HOPKINS & HUEBNER, P.C.**
100 E. Kimberly Road, Suite 400
Davenport, IA 52806
Tel: 563-445-2254
gruud@hhlawpc.com
kfranklin@hhlawpc.com

*Attorneys for Plaintiffs, individually, and on behalf of all others similarly situated*

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

I hereby further certify that to the best of my knowledge the matter in controversy is the not the subject of another action, pending arbitration or administrative proceeding in this District.

Dated: July 1, 2024

/s/ Matthew R. Mendelsohn

Matthew R. Mendelsohn

**MAZIE SLATER KATZ & FREEMAN, LLC**

103 Eisenhower Parkway

Roseland, NJ 07068

(973) 228-0391

*Attorneys for Plaintiffs, individually, and on behalf of all others similarly situated*
