**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HELENE MELZER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> JOHNSON & JOHNSON CONSUMER INC., <br><br> Defendant. | Civil Action No. 22-3149 (MAS) (RLS) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Johnson & Johnson Consumer Inc.'s ("JJCI" or "Defendant") Motion to Dismiss ("Motion") (ECF No. 66) Plaintiffs Helene Melzer ("Melzer"), Christine Borovoy, Andy Sajnani, and Patricia Biewald's (collectively, "Plaintiffs") Second Amended Complaint (the "SAC") (ECF No. 62). Plaintiffs opposed (ECF No. 72), and Defendant replied (ECF No. 73). After careful consideration of the parties' submissions, the Court decides Defendant's Motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b)[1] and Local Civil Rule 78.1(b). For the reasons set forth below, the Court denies Defendant's Motion to Dismiss.

---

[1] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

I.  **BACKGROUND**[2]

A.  **Factual Background**

This is a class action case about the privacy concerns that come with the alleged use of biometric information and identifiers. JJCI's Neutrogena Skin360 ("Skin360") is a technology that provides consumers with "a personalized at-home skin assessment" by scanning a consumer's face and analyzing the facial scan to diagnose skin health issues, and then recommending a skin care regimen consisting of Neutrogena products. (SAC ¶ 33, ECF No. 62.)[3] In creating this assessment, Skin360 requires consumers, like Plaintiffs, to turn on and use their live camera for 180-degree selfie scans. (*Id.* ¶ 73.) Skin360 deploys the Perfect Corp.'s YouCam technology, which is integrated with the Skin360 application and captures over 200 facial landmark points.[4] (*Id.* ¶ 35.)

Between 2020 and 2022, Plaintiffs, while located in Illinois, each used the Skin360 application on their mobile devices to obtain a personalized at-home skin assessment. (*See id.* ¶¶ 72, 78, 84, 90.) Plaintiffs allege that in creating this assessment, the Skin360 technology scanned, collected, captured, used, and stored in an electronic database, digital copies of their

---

[2] The Court adopts and incorporates the Background as set forth in its prior Opinion entered April 26, 2023 ("April 2023 Opinion"), with minor additions. (*See* ECF No. 41.) For the purposes of considering the instant Motion, the Court accepts all factual allegations in the SAC as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[3] Neutrogena Skin360, https://web.archive.org/web/20220609041141/https://skin360.neutrogena-.com/ (cited at SAC ¶ 32). As the Court explained in its April 2023 Opinion, Plaintiffs expressly rely on several Neutrogena websites and use screenshots from those websites to frame the SAC (*see* SAC ¶¶ 33-36, 48, 60). Because these websites and documents are "integral to or explicitly relied upon in the [C]omplaint," this Court may appropriately consider them on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996); *see also N.J. Second Amend. Soc'y v. N.J. Press Ass'n*, No. 20-5228, 2021 WL 4822050, at *5 (D.N.J. Oct. 15, 2021) (considering websites cited in a complaint on a motion to dismiss).

[4] On or about April 20, 2023, JJCI discontinued the Skin360 mobile application, but maintains a Skin360 web application, available at https://skin360.neutrogena.com. (SAC ¶¶ 50 n.1, 14.)

unique facial geometries. (*Id.* ¶¶ 73, 79, 85, 91.) Plaintiffs allege that prior to taking these biometric identifiers and/or biometric information, JJCI did not inform them in any form that their biometrics were being captured, collected, stored, used or disseminated. (*Id.* ¶¶ 74, 80, 86, 92.) Thus, JJCI neither sought, nor did Plaintiffs ever provide, informed consent relating to the use of their biometrics, and JJCI did not publish any policy specifically about biometric use. (*Id.*) Importantly, Plaintiffs allege that this biometric data is tied to individuals' names, birthdates, and other personally identifying information. (*Id.* ¶ 6.)

Plaintiffs bring this class action suit on behalf of themselves and other Illinois consumers for JJCI's alleged violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 Ill. Comp. Stat. 14/1, *et seq.* (*Id.* ¶¶ 1-2.) Specifically, Plaintiffs allege that JJCI violated BIPA in numerous capacities, such as by failing to inform Plaintiffs and class members in writing that their biometric information and/or biometric identifiers were being captured, collected, or stored, among other alleged privacy concerns. (*Id.* ¶¶ 7-9.)

**B.     Procedural Background**

Melzer initially filed a complaint on May 26, 2022 (*see generally* ECF No. 1), which JJCI moved to dismiss under Rule 12(b)(6). (ECF No. 17.) Melzer then filed a first amended complaint ("FAC") on August 11, 2022. (*See generally* FAC, ECF No. 21.) JJCI moved to dismiss the FAC (ECF No. 25), which the Court granted in part and denied in part (ECF No. 42). Plaintiffs then filed a SAC, which primarily includes three additional named plaintiffs and removes Melzer's unjust enrichment claim. (*See generally* SAC.) Now before the Court is JJCI's Motion to Dismiss the SAC. (ECF No. 66.) JJCI moves to dismiss the SAC under Rule 12(b)(6), arguing that the alleged conduct falls under BIPA's health care exemption. (*See* Def.'s Moving Br. 1, ECF No. 66-

3

1.) Plaintiffs opposed (Pls.' Opp. Br., ECF No. 72), and JJCI replied (Def.'s Reply Br., ECF No. 73). JJCI's Motion is now ripe for resolution.

## II.  LEGAL STANDARD

Rule 8(a)(2) "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### III. DISCUSSION

JJCI moves to dismiss the SAC for failure to state a claim pursuant to Rule 12(b)(6), arguing that the alleged conduct falls within BIPA's health care exemption. (*See* Def.'s Moving Br. 1.)

#### A. BIPA's Health Care Exemption

Under BIPA, "biometric identifiers," which are defined as "retina or iris scan[s], fingerprint[s], voiceprint[s], or scan[s] of hand or face geometry," are subject to certain regulations. 740 Ill. Comp. Stat. 14/10. Section 10 of BIPA, however, specifically excludes from its definition of "biometric identifier," "information captured from a patient in a health care setting or information collected, used, or stored for health care treatment, payment or operations under the federal Health Insurance Portability and Accountability Act of 1996 [(HIPAA)]." *Id.* BIPA does not otherwise define the terms "patient" or "health care setting." *See id.*

It is the first part of this exclusion—excluding "information captured from a patient in a health care setting" —that is relevant to the instant Motion to Dismiss. *Id.* The Court refers to this as the health care exemption. JJCI argues that because Skin360 "provides users with a personalized skin health assessment, suggests skincare products based on users' specific skin concerns and goals, and provides users access to information relating to the maintenance and improvement of their skin health," users of Skin360 are "patients," and Skin360 collects their information "in a health care setting" under BIPA's health care exemption. (Def.'s Moving Br. 1.)

#### B. Interpretation of BIPA's Health Care Exemption by Illinois Courts

In diversity cases, the Court is bound to "follow state law as announced by the highest state court." *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 361 (3d Cir. 2007). "If the highest court has not spoken to the issue, [the Court] can garner assistance from the decisions of the state's intermediate appellate courts in predicting how the state's highest court would rule." *Id.* (quoting *Mosley v. Wilson*, 102 F.3d 85, 92 (3d Cir. 1996).) "Where an intermediate appellate state court

5

rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 254 (3d Cir. 2010) (quoting *Budget Rent-A-Car Sys., Inc. v. Chappell*, 407 F.3d 166, 174 (3d Cir. 2005)); *see Shannon v. B.L. Eng. Generating Station*, No. 10-4524, 2013 WL 6199173, at *12 (D.N.J. Nov. 27, 2013) (quoting *Rustay v. Conrail*, 775 F. Supp. 161, 164 (3d Cir. 1991) (explaining that "decisions of a state intermediate appellate court are evidence of state law . . . and must be given significant weight").

The Illinois Supreme Court has not yet addressed how to interpret the phrase "patient in a health care setting" under BIPA. After JJCI filed the instant Motion, however, the Illinois Appellate Court addressed this issue and was asked to determine whether a user of a "virtual try-on" software for non-prescription sunglasses was a "patient in a health care setting" under the health care exemption of BIPA. *Marino v. Gunnar Optiks LLC*, 2024 IL App (1st) 231826, ¶¶ 21, 40 (Ill. App. Ct. Aug. 30, 2024). In answering this question in the negative, the *Marino* court squarely rejected the holding and reasoning of the three federal district court cases JJCI heavily relies on in its Motion, and found that "none of these federal cases interpret [BIPA's] exclusion for 'information captured from a patient in a health care setting' in a manner that is consistent with its plain language and the legislature's intent." *Id.* ¶ 40; (*see* Def.'s Moving Br. 10-16 (citing *Warmack-Stillwell v. Christian Dior, Inc.*, 655 F. Supp. 3d 742, 744, 746-47 (N.D. Ill. 2023); *Svoboda v. Frames for Am., Inc.*, No. 21-5509, 2022 WL 4109719, at *2-3 (N.D. Ill. Sept. 8, 2022); *Vo v. VSP Retail Dev. Holding, Inc.*, No. 19-7187, 2020 WL 1445605, at *2 (N.D. Ill. Mar. 25, 2020)).).

The Illinois Appellate Court instead engaged in its own statutory analysis of BIPA's health care exemption and concluded: (1) a "patient" is "someone who is presently awaiting or receiving

care and treatment from a medical professional;" (2) "health care" is defined as "efforts made to maintain, restore, or promote someone's physical, mental, or emotional well-being especially when performed by trained and licensed professionals;" and (3) "setting" is defined as "the time, place, and circumstances in which something occurs or develops." *Marino*, 2024 IL App (1st) 231826 at ¶¶ 27, 28 (emphasis omitted).

Reading these definitions and the phrase "patient in a health care setting" together, the *Marino* court found:

> [T]he health care exclusion applies, in our view, where what would otherwise be biometric identifiers are taken from an individual who is presently awaiting or receiving medical care in a time, place, or circumstance where efforts are being made to maintain, restore, or promote that individual's well-being, especially as performed by trained and licensed professionals. In light of the broad current use of telehealth, the setting itself might be almost anywhere but the definition is limited by the requirement that the individual is awaiting or receiving medical care and the information is being collected as part of an effort to maintain or restore or promote that person's well-being.

*Id.* ¶ 29.

Since *Marino* is a decision of a state intermediate appellate court, the Court is bound to follow it unless there is "persuasive data" that the Illinois Supreme Court would decide otherwise. *Sheridan*, 609 F.3d at 254. JJCI asks the Court to disregard *Marino* and instead rely on the reasoning and holdings of three Illinois federal district court cases that each pre-date *Marino* and interpreted BIPA's health care exemption more broadly to include consumers who virtually tried on non-prescription eyewear. *See Warmack-Stillwell*, 655 F. Supp. 3d at 747 (finding consumers of virtual try-on tool for eyewear, including non-prescription sunglasses, were "patient[s] in a health care setting" under BIPA); *Svoboda*, 2022 WL 4109719, at *3 (concluding that a user of a virtual try-on software for eyewear was a "patient receiving a health care service in a health care

setting"); *Vo*, 2020 WL 1445605, at *2-3 (finding user of a virtual try-on software that ensured "the appropriate fit and positioning of corrective eyewear" was a "patient in a health care setting"). Relying on these authorities, JJCI argues that because Skin360 "similarly provides information and suggests products designed to improve one's skin health," users of Skin360 are "patient[s] in a health care setting," and BIPA's health care exemption applies. (Def.'s Moving Br. 10, 14.)

In asking the Court to disregard *Marino*, JJCI contends *Marino* "violate[s] long-settled principles of statutory construction in Illinois" and is flawed for two primary reasons: (1) the definition of "patient" reached by the *Marino* court is "overly narrow," in part because the word "patient" is already qualified by the phrase "in a health care setting" in the statute; and (2) *Marino*'s statutory analysis renders the health care exemption duplicative of the HIPPA exemption in the statute. (Def.'s Reply Br. 8-15.) The Court is unpersuaded by these arguments. That JJCI would reach a different result were it to engage in its own statutory analysis is not "persuasive data" to suggest the Illinois Supreme Court would reject the analysis proferred in *Marino*.[5] *Sheridan*, 609 F.3d at 254. Indeed, the *Marino* court carefully considered multiple alternate statutory analyses, some of which were similar to the one JJCI advocates for, and rejected them based on its

---

[5] In arguing that *Marino*'s statutory analysis renders the health care exemption of BIPA duplicative of its HIPAA exemption, JJCI relies on the Illinois Supreme Court's opinion in *Mosby*, which interpreted the HIPAA exemption of the statute. *See Mosby v. Ingalls Mem. Hosp.*, 234 N.E.3d 110, 120 (Ill. 2023). JJCI, however, fails to recognize that in *Mosby*, the Illinois Supreme Court adopted the dissenting opinion of Justice Mary L. Mikva, who also authored the opinion in *Marino*. *Id.*; *see Marino*, 2024 IL App (1st) 231826. In other words, *Marino* and *Mosby* both rely on Justice Mikva's interpretation of BIPA. The Court is thus unpersuaded by JJCI's assertion that these two cases and holdings are somehow contradictory. To the contrary, the fact that the Illinois Supreme Court adopted Justice Mikva's statutory analysis in *Mosby*, including her interpretation of the terms "health care treatment, payment, or operations" and conclusion that the legislature intended to create a "narrow exclusion" in drafting exemptions regarding the health care industry, only affirms the Court's conclusion that the Illinois Supreme Court would similarly adopt Justice Mikva's statutory analysis in *Marino* here. *Mosby*, 234 N.E.3d at 117, 120-22.

understanding of the legislative intent and purpose of BIPA.[6] *Marino*, 2024 IL App (1st) 231826 at ¶ 40; *see Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 n.1 (9th Cir. 2007) ("The opinions of other federal judges on a question of state law do not constitute 'convincing evidence that the state supreme court would decide [an issue] differently . . . nor do those opinions contain any relevant 'convincing evidence.'") Because the Court sees no persuasive reason to reject *Marino*, the Court proceeds by applying the guidance of the Illinois Appellate Court to the instant case.

C. **Whether Users of Skin360 are "Patient[s] in a Health Care Setting"**

Turning to the question of whether users of Skin360 are "patient[s] in a health care setting," the inquiry before the Court is twofold. 740 Ill. Comp. Stat. 14/10. First, the Court must determine whether users of Skin360 are "patients." If the Court answers this question in the affirmative, the Court must then determine whether Skin360 collects data from users "in a health care setting."

Beginning with the first question, the *Marino* court defined a "patient" as someone who is "presently awaiting or receiving care and treatment from a medical professional." *Marino*, 2024 IL App (1st) 231826 at ¶ 27. The Court cannot discern from the SAC any facts that would suggest users of Skin360 are "awaiting or receiving care and treatment from a medical professional." *See id.*

---

[6] JJCI asks the Court to define "patient" as a recipient of "various personal services," which was a definition considered and adopted by the Illinois district court in *Svoboda*. (Def.'s Moving Br. 12); *Svoboda*, 2022 WL 4109719, at *2. This interpretation, however, was squarely rejected by the *Marino* court. *See Marino*, 2024 IL App (1st) 231826 at ¶ 36 (finding "this definition of 'patient' [to be] too broad to be helpful in understanding [BIPA's] health care exclusion"). In addition, while *Svoboda* adopted the broader definition of "patient" that JJCI advocates for, at least one other Illinois federal district court has adopted the narrower definition of "patient" that the *Marino* court adopted. *See Vaughan v. Biomat USA, Inc.*, No. 20-4241, 2022 WL 4329094, at *6 (N.D. Ill. Sept. 19, 2022) (defining "patient" as an individual "awaiting or under medical care and treatment"). Accordingly, the Court is persuaded that the *Marino* court's definition of "patient" is not impermissibly broad.

Skin360 relies on artificial intelligence ("AI") to compare a user's skin to a database including thousands of images, and provides the user with a skin assessment based on these image comparisons. (Def.'s Moving Br. 5.) JJCI does not contest that no medical professionals are involved in providing Skin360's assessment—at most, it contends that Skin360 provides a "virtual skin health coach," which is an AI assistant that users can interact with while using the technology. (Def.'s Moving Br. 7.) Even assuming Skin360 provides users with this AI assistant and "science-backed information," the Court finds it a reach to consider these services "medical care" under BIPA's health care exemption. (Def.'s Moving Br. 7); *Marino*, 2024 IL App (1st) 231826 at ¶ 29; *see Mosby*, 234 N.E.3d at 117, 123 (declining to construe BIPA's related HIPAA exemption as a "broad, categorical exclusion of biometric identifiers taken from health care workers" because the legislature intended BIPA's exemptions to be "narrow[ly]" construed). Indeed, Skin360 only recommends Neutrogena products to users of the technology, which suggests it is closer to a marketing and sales strategy rather than to the provision of informed medical care or treatment. (*See* Def.'s Moving Br. 6-7 (citing SAC ¶ 33).) Applying the guidance of the Illinois Appellate Court here, at the motion to dismiss stage, the Court concludes that individuals who used the virtual Skin360 technology are not "patient[s]" under BIPA's health care exemption. 740 Ill. Comp. Stat. 14/10; *see Marino*, 2024 IL App (1st) 231826.

Because the Court concludes users of Skin360 are not "patient[s]" within the meaning of BIPA's health care exemption, the Court need not proceed to the next step of the inquiry to determine whether the information collected by Skin360 occurs "in a health care setting." 740 Ill. Comp. Stat. 14/10. The Court therefore finds that users of Skin360 are not "patient[s] in a health

care setting" under BIPA's health care exemption. As such, Plaintiffs' claims fall within BIPA's purview and Defendant's Motion to Dismiss the SAC is denied.[7]

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is denied. The Court will issue an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[7] JJCI submits that even if BIPA's health care exemption does not apply, the SAC also fails to state a claim because it "(1) does not identify any facts permitting a plausible inference that, through Skin360, JJCI possessed or collected any information that can identify an individual; (2) fails to allege that JJCI sold, leased, traded, or otherwise profited from transactions involving biometric data; and (3) fails to allege that JJCI disseminated biometric data to any third party." (Def.'s Moving Br. 8, n.7). As JJCI acknowledges, JJCI previously raised these arguments in its Motion to Dismiss the FAC, and the Court dismissed them. (*Id.*; *See* April 2023 Opinion, ECF No. 24.) For the reasons set forth in the April 2023 Opinion, the Court finds these arguments unavailing. (*Id.*)

11