**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

HELENE MELZER, CHRISTINE BOROVOY, ANDY SAJNANI, and PATRICIA BIEWALD, individually and on behalf of all those similarly situated,

Plaintiffs,

v.

JOHNSON & JOHNSON CONSUMER INC.,

Defendant.

Case No. 3:22-cv-03149-MAS-RLS

**DECLARATION OF GRACE E. PARASMO IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS, AND TO DIRECT CLASS NOTICE**

Pursuant to 28 U.S.C. § 1746, I hereby declare, and state as follows:

1. I am over the age of eighteen and reside in the State of California. I am a partner in the law firm of Parasmo Lieberman Law in Los Angeles, California. I am one of the attorneys for Plaintiffs Helene Melzer, Christine Borovoy, Andy Sajnani, and Patricia Biewald ("Plaintiffs") and putative Settlement Class Members in this matter. I am a member in good standing of the Bar of the State of California and the Bar of the State of New York, and I am admitted *pro hac vice* in this proceeding.

2. I make this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify under oath to the matters set forth in this Declaration.

**The Litigation**

3. Plaintiff Melzer initiated this action by filing a complaint on May 26, 2022, in the United States District Court for the District of New Jersey, alleging that through its use of Skin360 in Illinois, Defendant violated Sections 15 (a), (b), (c), and (d) of BIPA. (Dkt. 1). Plaintiff

Melzer subsequently amended her complaint (the "First Amended Complaint" or "FAC") (Dkt. 21).

4. On April 26, 2023, the Court denied JJCI's first motion to dismiss, rejecting its threshold argument that BIPA requires that a biometric identifier must "be used to identify an individual". Dkt. 41.

5. On July 1, 2024, Plaintiffs filed the Second Amended Complaint adding Plaintiffs Christine Borovoy, Partricia Biewald and Any Sajnani and an allegation that JJCI unlawfully transferred Plaintiffs and class members' biometric identifiers to Kenvue, Inc., a newly formed entity, without disclosing or obtaining consent. Dkt. 62. On March 7, 2025, the Court denied JJCI's second motion to dismiss, holding "that individuals who used the virtual Skin360 technology are not 'patient[s]' under BIPA's health care exemption". Dkt. 74 & 75.

**The Proposed Settlement is a Product of informed, Arms-length Negotiations.**

6. After the Court denied JJCI's second motion to dismiss, the parties agreed to engage in private mediation. On August 5, 2025 the parties participated in a mediation before Honorable Wayne Andersen (Ret.) from JAMS in Chicago, Illinois. As part of the mediation, Plaintiffs prepared a detailed mediation statement that put forth their respective positions on the facts, with the assistance of technical experts. Both parties prepared mediation statements that assessed the law and the merits of the action. With the guidance of Honorable Wayne Andersen, the parties reached an agreement in principle to settle this action.

7. On October 23, 2025, the Parties reached agreement regarding the material terms of the proposed settlement and executed a Settlement Term Sheet. Over the following months, the parties negotiated the long form settlement agreement and the form of class notice, and by February 16, 2026, the parties had executed the class action settlement agreement.

8. All the terms of the Settlement Agreement are the result of arm's-length

negotiations between experienced counsel for both sides.

**Plaintiffs' Counsel has done significant amount of work to develop the claims.**

9. The parties engaged in substantial discovery and factual investigation, including responding to interrogatories and production and review of documents.

10. Plaintiffs reviewed JJCI's document production including, *inter alia*: JJCI's agreements with third party entities regarding the development and implementation of the Skin360 platform; technical documentation concerning the data architecture and data flows associated with the Skin360 web and mobile applications and storage of data collected by Skin360; and documents regarding JJCI's collaboration with third parties.

11. Plaintiffs also served a subpoena on Perfect Corp., the company that developed and customized the facial scanning technology used in Neutrogena's Skin360 platform. Perfect Corp. produced technical documentation, including documents and software describing its software development kit ("SDK") and application programming interfaces ("APIs") implemented within Skin360.

12. Plaintiffs hired experts to analyze the technical aspects of how Skin360 operates, including the manner in which facial geometry and related data were allegedly captured. Plaintiffs' experts also assisted with the review and interpretation of JJCI's and Perfect Corp.'s technical documentation and its software code.

13. To prepare for the mediation, the parties exchanged informal discovery, and Plaintiffs conducted their own independent investigation, relating to the class size and composition.

14. Plaintiffs also conducted an independent expert investigation of JJCI's Skin360 tool and software code and analyzed its privacy policies.

15. The extensive factual investigation and discovery conducted, along with a thorough analysis of applicable law, allowed Plaintiffs' Counsel to make a well-informed assessment of the strength and weaknesses of the claims and defenses, and to adequately assess the fairness and reasonableness of the proposed Settlement.

16. The Court's orders on the motions to dismiss also provided meaningful guidance on the viability and scope of the claims and the defenses available to JJCI. Those rulings, considered in conjunction with the discovery obtained, enabled Plaintiffs' Counsel to carefully analyze the risk of future litigation in comparison to the relief offered by the Settlement.

**The Proposed Settlement is Fair, Reasonable, and in the Best Interests of the Settlement Class**

17. I, along with the other proposed Class Counsel, believe that the Settlement amount offered by the Settlement—$4,700,000 on a non-reversionary basis for an estimated 11,000 Settlement Class Members—represents an excellent outcome whether compared to privacy cases more generally or BIPA cases more specifically.

18. The Settlement also provides meaningful prospective relief. After the lawsuit was filed, JJCI implemented a pop-up on the Skin360 website, which, for the first time, referenced biometric data. Dkt. 62, ¶ 50, Figure 1. The Settlement's prospective relief provision will ensure that JJCI maintains a user notice and written consent mechanism for Skin360 and a written policy regarding the retention and destruction of information collected through Skin360. Settlement Agreement § IV.B. It also requires JJCI to delete any images obtained during a Skin360 skin assessment during the Class Period. *Id.*

19. Based on our investigation, the discovery conduced in this case, my interviews of Settlement Class Members, the Court's rulings on the motions to dismiss, and my experience prosecuting consumer class actions in courts throughout the nation, including numerous privacy

and technology class actions, I, along with proposed Class Counsel, believe that the Settlement reached in this matter is in the best interests of Plaintiffs and the Settlement Class, and is fair, reasonable, and adequate in light of the risks of protracted litigation.

20. While I believe that the merits of Plaintiffs' BIPA claims could and would be proven at trial, there is considerable risk and inherent uncertainty which continued litigation imposes on Plaintiffs and the Settlement Class Members, especially given JJCI's many asserted defenses, including that it was not subject to, or obligated to comply with, BIPA's provisions.

21. My understanding is that JJCI maintains that it did not capture or collect biometric data through Skin360 and that it did not control such data. I understand that JJCI contends that any processing of biometric data occurred outside of any servers owned or operated by JJCI and that JJCI had no visibility into Perfect Corp.'s technology.

22. In fact, JJCI's defenses—and the resources that JJCI had committed to defending the case through trial and appeal—present numerous risks of non-recovery by the Settlement Class had the litigation continued. Considering the substantial benefits provided by the Settlement, the proposed Class Counsel believe that the Settlement is an excellent outcome for the Settlement Class.

23. I have worked closely with the proposed Class Representatives. They each have been actively and diligently pursuing this litigation in cooperation with my firm and co-counsel. They assisted with counsel's investigation, with the filing of the complaint (or the amended complaint), complied with their discovery obligations, asked for updates about their case, and shared their views and input on important aspects of the litigation and the settlement relief. Each of the Plaintifs support the Settlement and believe that it constitutes a fair, reasonable, and adequate result for the Settlement Class. The proposed Class Representatives will adequately represent the

Settlement Class.

**<u>Selection of Proposed Settlement Administrator</u>**

24. Proposed Class Counsel obtained bids from well-established, experienced, and highly regarded class action notice and administration firms. After reviewing and comparing costs among the proposals, and obtaining further follow-up information from each potential administrator, Plaintiffs proposed, and JJCI consented, to engage Eisner Advisory Group LLC (EAG) to serve as Settlement Administrator, subject to the Court's approval. Plaintiff worked closely with EAG to ensure that the content and form of all notice-related materials and other Settlement documents are consistent with the terms of the Settlement, comply with due process and applicable law, and are easily understood by Settlement Class Members.

25. The Settlement Administrator currently estimates that the Settlement Administration Expenses will be approximately $100,000; however, this amount, however, may change during the notice period.

26. Attached as **Exhibit 1** is a true and correct copy of the Settlement Agreement and Release ("Settlement") that the Parties reached in this case, and which is the subject of the Motion.

a. Attached to the Settlement Agreement as **Exhibit A** is a true and correct copy of the proposed Claim Form.

b. Attached to the Settlement Agreement as **Exhibit B** is a true and correct copy of the proposed Long Form Notice.

c. Attached to the Settlement Agreement as **Exhibit C** is a true and correct copy of the proposed Email Notice.

d. Attached to the Settlement Agreement as **Exhibit D** is a true and correct copy of the Geo-Located Publication Notice.

e. Attached to the Settlement Agreement as **Exhibit E** is a true and correct copy of the Statewide Press Release.

f. Attached to the Settlement Agreement as **Exhibit F** is a true and correct copy of the Proposed Preliminary Approval Order.

g. Attached to the Settlement Agreement as **Exhibit G** is a true and correct copy of the Proposed Final Approval Order.

27. Attached as **Exhibit 2** is a true and correct copy of Parasmo Lieberman Law's firm resume.

28. Attached as **Exhibit 3** is a true and correct copy of Dkt. 360, the Final Settlement Approval and Order Granting In Part and Denying in Part Motion for Attorney's Fees, in *Adkins v. Facebook, Inc*., No. 18-CV-05982-WHA (N.D. Cal.).

29. Attached as **Exhibit 4** is a true and correct copy of the Order Granting Final Approval of Class Action Settlement, Awarding Attorneys' Fees, Incentive Award And Entering Final Judgment in *Carroll v. Crème de la Crème, Inc.*, No. 2017-CH-01624 (Cir. Ct. Cook Cnty Aug. 8, 2018).

30. Attached as **Exhibit 5** is a true and correct copy of the Final Order and Judgment in *Salkauskaite, et al. v. Sephora USA, Inc*., No. 2018-CH-14379 (Cir Ct. Cook Cnty. June 23, 2021).

31. Attached as **Exhibit 6** is a true and correct copy of the Final Approval Order and Judgment in *Powe v. Dermalogica,* LLC, Case No. 2022LA000874 (18th Judicial Circuit, DuPage Cnty. March, 22, 2023)

32. Attached as **Exhibit 7** is a true and correct copy of the Final Order and Judgment in *Marshall v. Lifetime Fitness, Inc*., 2017-CH-14262 (Cir. Ct. Cook Cnty. July 30, 2019).

I declare under penalty of perjury that the foregoing is true and correct.

*/s/Grace E. Parasmo*
Grace E. Parasmo

Dated: February 17, 2026

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

HELENE MELZER, CHRISTINE BOROVOY, ANDY SAJNANI, and PATRICIA BIEWALD, individually and on behalf of all those similarly situated,

Plaintiffs,

v.

JOHNSON & JOHNSON CONSUMER INC.,

Defendant.

No. 3:22−CV−03149 −MAS−TJB

**SETTLEMENT AGREEMENT AND RELEASE**

This Settlement Agreement and Release (the "Settlement Agreement") is entered into by, between, and among, Plaintiffs Helene Melzer, Christine Borovoy, Andy Sajnani, and Patricia Biewald ("Class Representatives"), individually and on behalf of the Settlement Class (defined below), and Defendant Johnson & Johnson Consumer Inc. n/k/a Kenvue Brands LLC ("JJCI") in the case of *Melzer v. Johnson & Johnson Consumer Inc.*, Case No. 3:22-cv-03149 (the "Action"), currently pending in the United States District Court for the District of New Jersey, subject to the final approval of the Court presiding over the above-captioned action. Hereinafter, Class Representatives and JJCI may each individually be referred to as a "Party", and collectively as the "Parties" hereto.

## I. OVERVIEW OF SETTLEMENT TERMS

For reference, a general overview of the Settlement Terms are:

- **SETTLEMENT CLASS DEFINITION:** All persons who, while in Illinois, performed a Skin360® skin assessment, whether via mobile application or web application, between December 9, 2019 and May 5, 2023 ("Settlement Class").
- **SETTLEMENT AMOUNT:** $4,700,000.00
- **RELEASED CLAIMS:** All claims, liabilities, actions, causes of action, demands, rights, costs, expenses, damages, remedies, and all other obligations and responsibilities of every nature and description, whether known or unknown, whether suspected or unsuspected, whether arising under federal, state, local, common, statutory, administrative or foreign law, or any other law, rule or regulation, at law or in equity, whether class or individual in nature, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, that Class Representatives and the Settlement Class Members (i) asserted in

the Action or (ii) could have asserted in any court or forum that arise out of, are based upon, or are related to the same allegations, transactions, facts, matters or occurrences, representations, or omissions set forth in this action, including those related to the alleged collection, capture, receipt, storage, possession, purchase, acquisition, dissemination, disclosure, re-disclosure, transfer, transmission, use, sale, lease, trade, or profit from biometric information, biometric identifiers, or any data derived therefrom, through a Class Member's use of Skin360®, including all claims under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 et seq. ("BIPA") or other statute or regulation, common law, or in equity. This release shall apply to all versions of Skin360®, including Neutrogena® Skin360®, Neostrata® Skin360®, and any Skin360® collaborations with other entities. This release shall be effective regardless whether the Settlement Class Member receives any payment from the Settlement Fund.

- **RELEASED PARTIES:** Johnson & Johnson Consumer Inc. n/k/a Kenvue Brands LLC, and its past, present, and future affiliates, including subsidiaries, parent entities, predecessors, successors, and assigns, and each of their respective past, present and future employees, directors, officers, board members, contractors, agents, representatives, shareholders, attorneys, insurers, partners, service providers, vendors and all other individuals or entities acting on their behalf, and any and all persons, firms, trusts, corporations, or entities related to or affiliated with them.

**SETTLEMENT ADMINISTRATOR:** Eisner Advisory Group LLC

**TIME TO COMMENCE NOTICE:** 30 days after Preliminary Approval

**DEADLINE TO SUBMIT A CLAIM FORM:** 105 days after Preliminary Approval

**DEADLINE TO OBJECT OR FILE EXCLUSION:** 90 days after Preliminary Approval

**TIME FOR FINAL HEARING DATE:** At least 120 days after Preliminary Approval

## II. FACTUAL BACKGROUND AND RECITALS

**WHEREAS**, on May 26, 2022, Class Representative Helene Melzer filed a putative class action in this Court, captioned *Melzer v. Johnson & Johnson Consumer Inc.*, Case No. 3:22-cv-03149 (the "Action"), asserting claims against JJCI for violation of Sections 15(a), (b), (c), and (d) of BIPA and a dependent claim for unjust enrichment, based on Helene Melzer's alleged interactions with JJCI's Neutrogena® Skin360®;

**WHEREAS**, on July 21, 2022, JJCI filed a Motion to Dismiss Plaintiff's Class Action Complaint;

**WHEREAS**, on August 11, 2022, Class Representative Helene Melzer filed a First Amended Class Action Complaint;

**WHEREAS**, on September 22, 2022, JJCI filed a Motion to Dismiss Plaintiff's First Amended Class Action Complaint;

**WHEREAS**, on April 26, 2023, the Court granted in part and denied in part JJCI's Motion to Dismiss the First Amended Class Action Complaint, denying the motion as to the BIPA claims and granting the motion as to the unjust enrichment claim;

**WHEREAS**, the Parties engaged in discovery, including propounding and responding to written discovery requests, negotiations regarding the scope of discovery, and the production of documents;

**WHEREAS**, on July 1, 2024, Class Representatives filed the Second Amended Class Action Complaint, adding Christine Borovoy, Andy Sajnani, and Patricia Biewald as Class Representatives;

**WHEREAS**, on August 12, 2024, JJCI filed a Motion to Dismiss the Second Amended Complaint;

**WHEREAS**, on March 7, 2025, the Court denied JJCI's Motion to Dismiss the Second Amended Class Action Complaint;

**WHEREAS,** in March 2025 the Parties agreed to participate in a private mediation and to stay all pending deadlines;

**WHEREAS,** for purposes of the mediation the Parties exchanged additional informal discovery;

**WHEREAS**, on August 5, 2025, the Parties appeared for and participated in an all-day mediation with the Honorable Wayne Andersen (Ret.) from JAMS in Chicago, Illinois, and reached an agreement in principle regarding settlement of this Action;

**WHEREAS**, on October 23, 2025, the Parties reached agreement regarding the material terms of the proposed settlement previously agreed to in principle, executed the Settlement Term Sheet, and agreed to proceed to drafting this Settlement Agreement;

**WHEREAS**, at all times, JJCI contended and continues to contend that Class Representatives' claims and allegations of wrongdoing or liability against JJCI are without merit; JJCI denied and continues to deny all allegations of wrongdoing or liability and further contends that neither the Class Representatives nor any potential Class Members are entitled to relief from JJCI; and it is expressly agreed that neither this Settlement Agreement, nor any document referred

to herein, nor any action taken to carry out this Settlement Agreement is, may be construed as, or may be used as, an admission by JJCI of any fault, wrongdoing, or liability whatsoever;

**WHEREAS**, at all times, JJCI denied, and continues to deny, that certification of a class for litigation purposes in this case is justified, necessary, or proper;

**WHEREAS**, following arms-length negotiations, including mediation before an experienced mediator, the Parties now seek to enter into this Settlement Agreement;

**WHEREAS,** Class Representatives and Class Counsel have investigated the facts and the law regarding the Action and have concluded that a settlement according to the terms set forth below is fair, reasonable, and adequate, and beneficial to and in the best interests of Class Representatives and the Settlement Class recognizing: (1) the existence of complex and contested issues of law and fact; (2) the risks inherent in litigation; (3) the likelihood that future proceedings will be unduly protracted and expensive if the proceeding is not settled by voluntary agreement; (4) the magnitude of the benefits derived from the contemplated settlement in light of both the maximum potential and likely range of recovery to be obtained through further litigation and the expense thereof, as well as the potential of no recovery whatsoever; and (5) Class Representatives' determination that the settlement is fair, reasonable, adequate, and will substantially benefit the Settlement Class Members;

**WHEREAS**, *inter alia*, taking into account the uncertainty and risks inherent in any litigation and the desire to avoid the expenditure of further legal fees and costs, JJCI has concluded that it is desirable and beneficial that this Action be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in this Agreement to avoid further expense, inconvenience, and burden;

**WHEREAS**, this Settlement Agreement supersedes and replaces the Settlement Term

Sheet to which Class Representatives and JJCI agreed on October 23, 2025;

**WHEREAS**, this Agreement is a compromise, and this Agreement, and any related documents, and any discussions or negotiations resulting in this Agreement shall not be construed as or deemed to be evidence of or an admission or concession of liability or wrongdoing on the part of JJCI, or any of the Released Parties (as defined below), with respect to any claim of any fault or liability or wrongdoing or damage whatsoever or with respect to the certifiability of a class, and that any references to alleged business practices of JJCI in this Settlement Agreement, any other settlement document, such as the Settlement Term Sheet, and any motions for approval relating to this Settlement Agreement, or the related Court hearings and processes, will raise no inference with respect to the propriety of JJCI's business practices, or the business practices of any company affiliated with JJCI;

**WHEREAS,** after extensive review, the Parties have decided to resolve all matters in dispute, and have agreed to resolve and settle this Action in its entirety, without any admission of liability, on the following terms, conditions, and representations;

**WHEREAS,** the Parties intend this Agreement to bind Class Representatives, JJCI, and all members of the Settlement Class who do not timely and properly exclude themselves from the Settlement Agreement;

**NOW THEREFORE**, in consideration of the foregoing recitals, the mutual terms and conditions set forth in this Settlement Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties intending to be legally bound, it is hereby stipulated and agreed by and among Class Representatives, the Settlement Class, and JJCI, by and through their undersigned counsel, that, subject to the final approval of the Court, the Action and Released Claims (as defined below) shall be finally and fully compromised,

settled, and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions of this Agreement.

## III. DEFINITIONS

In addition to the terms defined at various points within this Agreement, which are re-stated here, the following defined terms apply throughout this Settlement Agreement.

1. **"Action"** means or refers to the putative class action filed in this Court, styled as *Melzer v. Johnson & Johnson Consumer Inc.*, Case No. 3:22-cv-03149.

2. **"Agreement"** or **"Settlement Agreement"** means this Settlement Agreement and Release, including any and all attached Exhibits (which are an integral part of this Settlement Agreement and are expressly incorporated in their entirety herein by reference).

3. **"Alternate Judgment"** means a form of final judgment that may be entered by the Court herein but in a form other than the form of judgment provided for in this Agreement and where none of the Parties elects to terminate this Settlement Agreement by reasons of such variance.

4. **"Approved Claim"** means a Claim Form submitted by a Settlement Class Member that has satisfied the claim process outlined in Section VIII, *infra*.

5. **"Biometric Identifier"** has the same definition set forth in Section 10 of BIPA, and means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry. "Biometric Identifier" does not include any writing samples, written signatures, photographs, human biological samples used for valid scientific testing or screening, demographic data, tattoo descriptions, or physical descriptions such as height, weight, hair color, or eye color. "Biometric Identifier" does not include donated organs, tissues, or parts as defined in the Illinois Anatomical Gift Act or blood or serum stored on behalf of recipients or potential recipients of living or

cadaveric transplants and obtained or stored by a federally designated organ procurement agency. "Biometric Identifier" does not include biological materials regulated under the Genetic Information Privacy Act. "Biometric Identifier" does not include information captured from a patient in a health care setting or information collected, used, or stored for health care treatment, payment, or operations under the federal Health Insurance Portability and Accountability Act of 1996. "Biometric Identifier" does not include an X-ray, roentgen process, computed tomography, MRI, PET scan, mammography, or other image or film of the human anatomy used to diagnose, prognose, or treat an illness or other medical condition or to further validate scientific testing or screening.

6. **"Biometric Information"** has the same definition set forth in Section 10 of BIPA, and means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual. "Biometric Information" does not include information derived from items or procedures excluded under the definition of biometric identifiers.

7. **"BIPA"** means the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.*

8. **"Claims Deadline"** means the time and date by which a Claim Form must be received by the Settlement Administrator in order for a Settlement Class Member to be entitled to any of the monetary consideration contemplated in this Settlement Agreement. The Claims Deadline shall be one hundred and five (105) days after entry of the Preliminary Approval Order.

9. **"Claim Form"** or **"Claim"** means the form Settlement Class Members must complete and submit to be eligible for monetary relief under the terms of the Settlement, the proposed form of which is attached hereto as Exhibit A.

10. **"Class Counsel"** means Grace E. Parasmo and Yitzchak H. Lieberman of Parasmo Lieberman Law, Matthew R. Mendelsohn of Mazie Slater Katz & Freeman, LLC, and Allen Schwartz of Schwartz Law PLLC.

11. **"Class Period"** means the period of time from December 9, 2019 to May 5, 2023.

12. **"Class Representatives"** mean Plaintiffs Helene Melzer, Christine Borovoy, Andy Sajnani, and Patricia Biewald.

13. **"Complaint"** means the Second Amended Class Action Complaint.

14. **"Court"** means the United States District Court for the District of New Jersey.

15. **"Days"** when used in this Settlement Agreement to specify a deadline or time period by which some event will occur, shall mean the number of calendar days stated, excluding the day that triggers the period, except that if the last day is a Saturday, Sunday, or legal holiday, the period shall continue to run until the next day that is not a Saturday, Sunday, or legal holiday. But when a deadline or time period by which some event will occur in this Settlement Agreement is stated as a number of "business days," it shall mean the number of days, excluding the day that triggers the period, that are not a Saturday, Sunday, or legal holiday.

16. **"Defendant"** means Johnson & Johnson Consumer Inc. n/k/a Kenvue Brands LLC.

17. **"Defendant's Counsel"** or **"JJCI's Counsel"** means Sidley Austin LLP and McCarter & English, LLP, counsel of record for Johnson & Johnson Consumer Inc. n/k/a Kenvue Brands LLC.

18. **"Effective Date"** means the date upon which the Settlement Agreement in the Action shall become final, and occurs one business day following the later of: (a) the date upon which the time expires for filing or noticing any appeal of the Final Approval Judgment; (b) if an

appeal is filed, the date of completion, in a manner that finally affirms and leaves in place the Final Approval Order without any material modification, of all proceedings arising out of the appeal(s) (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petition for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal(s) following decisions on remand); or (c) the date of final dismissal of any appeal or the final dismissal of any proceeding on certiorari with respect to the Final Approval Judgment.

19. **"Fee Award"** means the amount of attorneys' fees and reimbursement of costs and expenses awarded by the Court to Class Counsel. Any Fee Award shall be paid from the Settlement Fund.

20. **"Final Approval Hearing"** means the hearing before the Court where the Parties request that Final Judgment be entered by the Court approving the Settlement Agreement, the Fee Award, and the Service Payment to the Class Representative.

21. **"Final Approval Order"** or **"Final Approval Judgment"** means the Final Judgment and Order, substantially in the form of Exhibit G hereto, that the Court enters upon Final Approval after the Final Approval Hearing. In the event the Court issues separate orders addressing the matters constituting Final Approval, then Final Approval Order or Final Approval Judgment includes all such orders.

22. **"JJCI"** means Johnson & Johnson Consumer Inc. n/k/a Kenvue Brands LLC.

23. "**Long Form Notice**" shall mean notice of this Settlement, substantially in the form of Exhibit B hereto, which shall be posted on the Settlement Website in accordance with Section VII.B. below to inform Settlement Class Members of their rights and duties under this Settlement.

24. **"Net Settlement Fund"** means the amount of the Settlement Fund remaining after payment of Settlement Administration Expenses (including Notice Costs), the Service Payments, and the Fee Award.

25. **"Notice"** means all notices of proposed Settlement associated with implementing the Notice Program, that the Parties will ask the Court to approve in connection with a motion for Preliminary Approval of the Settlement Agreement, which are to be sent to the Settlement Class substantially in the manner set forth in this Agreement consistent with the requirements of Due Process, and includes Exhibit B (Long Form Notice), Exhibit C (Email Notice), Exhibit D (Geo-Located Internet Publication Notice), Exhibit E (Statewide Press Release), and Settlement Website.

26. **"Notice Date"** means the date by which the Notice is first disseminated under the Notice Program set forth in Section VII, *infra*, which shall be no later than thirty (30) days after entry of the Preliminary Approval Order.

27. **"Notice Program"** means the notice methods provided for in this Agreement in Section VII, *infra*.

28. **"Objection/Exclusion Deadline"** or **"Opt-Out Deadline"** means the date by which a written objection to this Settlement Agreement or a request for exclusion submitted by a member of the Settlement Class must be made, which shall be designated as ninety (90) days after entry of the Preliminary Approval Order.

29. **"Opt-Out"** is the election by a member of the Settlement Class to be excluded from this Settlement Agreement.

30. **"Parties"** means Class Representatives and JJCI.

31. **"Person"** shall mean, without limitation, any individual, corporation, partnership,

limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouse, parent, child, guardian, associate, co-owners, heirs, predecessors, successors, representatives, or assigns. "Person" is not intended to include any governmental agencies or governmental actors, including, without limitation, any state Attorney General office.

32. **"Preliminary Approval"** or **"Preliminary Approval Order"** means the Order conditionally certifying the Settlement Class for settlement purposes, preliminarily approving the Settlement substantially in the form jointly agreed upon by the Parties, and approving the form and manner of the Notice. The Preliminary Approval Order shall be substantially in the form of Exhibit F attached hereto.

33. **"Qualified Settlement Fund"** means a settlement fund that meets the requirements of a Qualified Settlement Fund under U.S. Treasury Regulation section 468B-1.

34. **"Released Claims"** means any and all claims, liabilities, actions, causes of action, demands, rights, costs, expenses, damages, remedies, and all other obligations and responsibilities of every nature and description, whether known or unknown, whether suspected or unsuspected, whether arising under federal, state, local, common, statutory, administrative or foreign law, or any other law, rule or regulation, at law or in equity, whether class or individual in nature, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, that Class Representatives and the Settlement Class Members (i) asserted in the Action or (ii) could have asserted in any court or forum that arise out of, are based upon, or are related to the same allegations, transactions, facts, matters or occurrences, representations, or omissions set forth in this action, including those related to the alleged collection, capture, receipt,

storage, possession, purchase, acquisition, dissemination, disclosure, re-disclosure, transfer, transmission, use, sale, lease, trade, or profit from biometric information, biometric identifiers, or any data derived therefrom, through a Class Member's use of Skin360®, including all claims under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 et seq. ("BIPA") or other statute or regulation, common law, or in equity. This release shall apply to all versions of Skin360®, including Neutrogena® Skin360®, Neostrata® Skin360®, and any Skin360® collaborations with other entities. This release shall be effective regardless of whether the Settlement Class Member receives any payment from the Settlement Fund.

35. **"Released Parties"** means Johnson & Johnson Consumer Inc. n/k/a Kenvue Brands LLC, and its past, present, and future affiliates, including subsidiaries, parent entities, predecessors, successors, and assigns, and each of their respective past, present and future employees, directors, officers, board members, contractors, agents, representatives, shareholders, attorneys, insurers, partners, service providers, vendors and all other individuals or entities acting on their behalf, and any and all persons, firms, trusts, corporations, or entities related to or affiliated with them.

36. **"Releasing Parties"** means the Class Representatives and any Settlement Class Member who does not timely and properly opt out from the Settlement Agreement, and any other person claiming by, through, or on behalf of them, including each of their respective predecessors, successors, heirs, beneficiaries, conservators, trustees, executors, administrators, guardians, associates, estates, assigns, agents, attorneys, accountants, financial and other advisors, lenders, consultants, independent contractors, insurers, and underwriters.

37. **"Service Payment"** means any payment approved by the Court to be made to the Class Representatives in recognition of their service to the Settlement Class. Any Service

Payment shall be paid from the Settlement Fund.

38. **"Settlement"** means the settlement into which the Parties have entered to resolve the Action. The terms of the Settlement are as set forth in this Agreement, including any and all exhibits hereto.

39. **"Settlement Administrator"** means the administration company that has been approved by the Court to perform the duties set forth in this Agreement, including but not limited to overseeing distribution of Notice, as well as processing and payment of Approved Claims to the Settlement Class, as set forth in this Agreement, and disbursement of all approved payments out of the Settlement Fund, and handling the determination, payment and filing of forms related to all federal, state and/or local taxes of any kind (including any interest or penalties thereon) that may be owed on any income earned by the Settlement Fund. Class Counsel and JJCI may, by agreement, substitute a different Settlement Administrator, subject to Court approval. In the absence of agreement, either Class Counsel or JJCI may move the Court to substitute a different Settlement Administrator, upon a showing that the responsibilities of Settlement Administrator have not been adequately executed by the incumbent.

40. **"Settlement Administration Expenses"** means the Settlement Administrator's fee, and the reasonable and necessary expenses incurred by the Settlement Administrator in providing Notice, processing claims, exclusion, and objections, responding to inquiries from members of the Settlement Class, reviewing claims for fraud and duplication, issuing payments for Approved Claims, performing claim fraud detection and prevention services, providing reports and declarations in connection with the administration of the Settlement, paying taxes and tax expenses related to the Settlement Fund (including all federal, state or local taxes of any kind and interest or penalties thereon, as well as expenses incurred in connection with determining the

amount of and paying any taxes owed and expenses related to any tax attorneys and accountants), and any other services related to the Settlement Notice and administration.

41. **"Settlement Amount"** means $4,700,000.00 (Four Million, Seven Hundred Thousand United States Dollars, and Zero Cents), that JJCI shall cause to be deposited into the Settlement Fund according to any schedule set forth herein, plus all interest earned thereon. The Settlement Amount represents the total extent of JJCI's monetary obligations under this Settlement Agreement, and the maximum amount that JJCI will pay into the Settlement Fund, which shall be used to distribute payment to Settlement Class Members for Approved Claims, any Fee Award, any Service Payment to the Class Representatives, and Settlement Administration Expenses, and any other costs, fees or expenses approved by the Court. Under no circumstances shall JJCI be responsible for any payments, individually or in the aggregate, in excess of the amount of the Settlement Amount.

42. **"Settlement Class"** means all persons who, while in Illinois, performed a Skin360® skin assessment using any version of Skin360®, including Neutrogena® Skin360®, Neostrata® Skin360®, and any Skin360® collaborations with other entities, whether via mobile application or web application, between December 9, 2019 and May 5, 2023. Excluded from the Settlement Class are (1) Defendant, its subsidiaries, parent, and other affiliate entities, and all employees thereof; (2) the Judges presiding over this Action and their immediate family members and staff; (3) Class Counsel and Defendant's Counsel; (4) Persons who properly execute and file a timely request for exclusion from the Settlement Class; and (5) the successors or assigns of any excluded Persons.

43. **"Settlement Class Member"** means any Person who meets the parameters of the Settlement Class.

44. **"Settlement Fund"** means an interest-bearing account, administered by the Settlement Administrator, into which JJCI shall deposit or cause to be deposited the Settlement Amount.

45. **"Settlement Term Sheet"** means the settlement term sheet duly executed, dated, and countersigned between the Parties on October 23, 2025.

**46.** **"Settlement Website"** means the website that the Settlement Administrator will establish to provide notice to Settlement Class Members under Section VII.B. of this Agreement. The Parties to this Settlement Agreement shall mutually agree on the URL for that Settlement Website.

## IV. SETTLEMENT CONSIDERATION

### A. Monetary Relief for Settlement Class

1. Within fourteen (14) days after the Effective Date, JJCI shall deposit into the Settlement Fund an amount equal to the Settlement Amount less any Settlement and Administration Expenses already paid into the Settlement Fund pursuant to Section V.7. To the extent not already provided, Class Counsel and/or the Settlement Administrator shall provide JJCI and JJCI's Counsel the necessary information for electronic transfer of the Settlement Amount thirty (30) days prior to the Effective Date.

2. The obligations incurred pursuant to this Settlement Agreement shall be a full and final disposition of the Action and any and all Released Claims, as against all Released Parties. Once the payment provided for in the above paragraph is made, JJCI shall have no further monetary obligations of any sort or kind to Class Representatives, Settlement Class Members, or any counsel for same, including Class Counsel. The Settlement Amount paid by JJCI is JJCI's sole monetary responsibility under this Settlement Agreement, and Settlement Class Members

who have not timely excluded themselves from the Class shall not look to any of the Released Parties for satisfaction of any or all of Released Claims. Neither JJCI nor the Released Parties are responsible for payment of Settlement Administration Expenses, Class Counsel's Fee Award, Service Payments, or any other type of payment pursuant to this Settlement Agreement, other than out of the Settlement Fund, as provided herein.

**B. Prospective Relief for Settlement Class**

1. Within fourteen (14) days after the Effective Date, JJCI will confirm that (i) it has deleted any images obtained during a Neutrogena® Skin360® or Neostrata® Skin360® (collectively, "Skin360®") skin assessment during the Class Period and (ii) subject to any changes in relevant authority, JJCI will maintain a user notice and written consent mechanism for Skin360® and a written policy regarding the retention and destruction of information collected through Skin360®. Nothing within this Paragraph shall be read to constitute an admission that any data collected through Skin360® constitutes Biometric Identifiers or Biometric Information, nor that JJCI received Biometric Identifiers or Biometric Information. By agreeing to such prospective relief, JJCI does not admit any liability or non-compliance with BIPA.

## V. SETTLEMENT ADMINISTRATION

1. The monetary relief provided by this Settlement Agreement shall be administered on a class wide basis by a third-party Settlement Administrator, under the supervision of the Court, in a rational, responsive, cost effective, and timely manner.

2. The Parties agree that the administration of the Settlement Fund is not a material term of the Settlement Agreement. Any decision by the Court concerning the administration of the Settlement Fund shall not affect the validity or finality of the Settlement Agreement. Further, it is not a condition of this Settlement Agreement that any particular administration of the

Settlement Fund be approved by the Court. Notwithstanding the above paragraph 1, any order relating solely to the administration of the Settlement Fund among Settlement Class Members, or any request for further judicial review from any order relating solely thereto or reversal or modification of the administration of the Settlement Fund described herein, shall not operate to terminate the Settlement Agreement.

3. The Settlement Administrator shall establish and maintain the Settlement Fund. The Settlement Fund shall be a non-reversionary common fund, no part of which shall revert to JJCI. The Settlement Administrator will hold the Settlement Fund in escrow until such time as the Settlement Administrator is authorized to disseminate the funds pursuant to this Agreement, the Final Approval Order, or other order of the Court.

4. The Settlement Fund is intended to be treated as a Qualified Settlement Fund ("QSF") for U.S. federal income tax purposes. The Settlement Administrator shall be the "administrator" of the QSF within the meaning of Section 1.468B-2(k)(3) of the Treasury Regulations, responsible for causing the filing of all tax returns required to be filed by or with respect to the QSF, paying from the QSF any taxes owed by or with respect to the QSF, and complying with any applicable information reporting or tax withholding requirements imposed by Section 1.468B-2(l)(2) of the Treasury Regulations or any other applicable law on or with respect to the QSF. In addition, the Settlement Administrator shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this paragraph, including, if relevant, the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such election shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for

signature by all necessary parties, and thereafter to cause the appropriate filing to occur. All taxes on income or interest generated by the Settlement Fund, if any, shall be paid out of the Settlement Fund. The Parties and their counsel shall have no responsibility or liability for the Settlement Fund's tax returns or other filings.

5. Class Counsel shall select the Settlement Fund escrow account and the Settlement Fund escrow bank. The Settlement Fund escrow bank shall invest the Settlement Fund exclusively in an interest-bearing account or accounts where the principal will not decrease and is fully insured by the United States Government or an agency thereof, including certificates of deposit, a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. The Settlement Fund escrow bank shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. All interest earned on the investment of the Settlement Fund shall be added to the Settlement Fund, for distribution as set forth herein.

6. The total amount distributed to the Settlement Class Members shall be the Settlement Fund and any earnings thereon, less the Settlement Administration Expenses, any amount awarded by the Court for any Fee Award to Class Counsel, and any Service Payments.

7. Prior to the Effective Date, and only after being properly invoiced for reasonable costs actually incurred by the Settlement Administrator, JJCI shall pay into the Settlement Fund all reasonable and necessary Settlement Administration Expenses not to exceed $300,000.00. Class Counsel and/or the Settlement Administrator shall provide JJCI and JJCI's Counsel the necessary information sufficiently in advance for electronic transfer of the Settlement Administration Expenses. The Settlement Administration Expenses shall count against the $4.7

million Settlement Amount.

8. Upon JJCI's deposit of the Settlement Amount into the Settlement Fund (less any Settlement Administration Expenses already paid into the Settlement Fund), the Settlement Administrator will withdraw funds sufficient to cover any remaining, unpaid, Settlement Administration Expenses from the Settlement Fund, as they are incurred and invoiced, subject to the written approval of JJCI (by their counsel) and Class Counsel.

9. Payments shall be made directly by the Settlement Administrator from the Settlement Fund in this order: (i) Settlement Administration Expenses to the extent not already paid; (ii) Fee Award; (iii) Service Payments; (iv) Settlement payments to Class Members; and (v) payment to *cy pres* recipient, if applicable.

10. Within twenty-one (21) days of the Effective Date, the Settlement Administrator shall pay: (1) equal, *pro rata* cash payments to Settlement Class Members who submitted an approved Claim Form, by either mailing a check to each such Person or providing compensation electronically by the method designated by the Settlement Class Member, *e.g.*, Zelle, Paypal, Venmo or other electronic payment method; (2) any Fee Award to Class Counsel; (3) any Service Payments to the Class Representatives; and (4) the Settlement Administration Expenses.

11. All Settlement payments will be issued to Settlement Class Members along with a clear indication that the Settlement payment will expire and become null and void unless cashed within ninety (90) days after the date of issuance. If a Settlement payment is made by paper or electronic check and is not negotiated within ninety (90) days after the date of issuance, such checks shall, subject to Court approval, be deemed void. All funds from uncashed Settlement payments will be returned to the Settlement Fund and redistributed to the Settlement Class. If redistribution is not feasible, or if residual funds remain in the Net Settlement Fund after

redistribution, such funds shall be allocated and distributed to the following *cy pres* recipient: Electronic Privacy Information Center.

12. The Settlement Administrator shall maintain reasonably detailed records of its activities under this Settlement Agreement. Further, the Settlement Administrator shall maintain all such records as required by applicable law in accordance with its normal business practices, and shall make such records available to the Court, Class Counsel, and JJCI's Counsel at any time upon request.

13. The Settlement Administrator shall provide Class Counsel and JJCI's Counsel with regular reports at weekly intervals containing information concerning Notice, administration, Opt-Outs, objections, or other requests to be excluded from the Settlement Class, implementation of this Settlement Agreement, the number of claims made, and the number of individuals who are unsuccessfully delivered Notice. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require.

14. Should the Court so request, the Parties shall submit a timely report, prepared by Class Counsel and/or the Settlement Administrator and approved by JJCI, to the Court summarizing all work performed by the Settlement Administrator, including a report of all amounts from the Settlement Fund paid to Settlement Class Members on account of Approved Claims.

15. The Settlement Administrator shall make all necessary efforts to ensure the security and privacy of Settlement Class Member information and shall not use the information provided by JJCI or Class Counsel in connection with the Settlement or this Notice Program for any purposes other than providing notice or conducting claims administration or otherwise effectuating the terms of the Settlement.

16. The Settlement Administrator shall provide Class Counsel and JJCI's Counsel with drafts of all administration-related documents, including but not limited to Notices, telephone scripts (if any) in a form mutually approved in advance in writing by Class Counsel and JJCI's Counsel, settlement website postings or language, and any other standardized, form, or template communications intended to be distributed in bulk or on a uniform basis to multiple or all members of the Settlement Class in a form mutually approved in advance in writing by Class Counsel and JJCI's Counsel, at least five (5) days before the Settlement Administrator is required to or intends to publish or use such communications, unless Class Counsel and JJCI's Counsel agree to waive this requirement in writing on a case-by-case basis. For the avoidance of doubt, this advance approval requirement does not apply to individualized, non-template responses to Settlement Class Member inquiries that are not sent in bulk or pursuant to a standardized script or form.

17. The Settlement Administrator shall receive requests to be excluded from the Settlement Class and other requests and promptly provide to Class Counsel and JJCI's Counsel copies of such requests. If the Settlement Administrator receives any Opt-Outs or other requests to be excluded from the Settlement Class after the Opt-Out Deadline, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and JJCI's Counsel.

18. In the exercise of its duties outlined in this Agreement, the Settlement Administrator shall have the right to reasonably request additional information from any Settlement Class Member.

19. Except as otherwise provided herein, JJCI, the Released Parties, and JJCI's Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission, or determination by Class Counsel or the Settlement Administrator, or any of

their respective designees, employees, directors, representatives, or agents, in connection with the administration of the Settlement Agreement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund, including the creation and operation of the QSF; (iii) the allocation of Net Settlement Funds to Settlement Class Members or the implementation, administration, calculation or interpretation thereof; (iv) the determination, administration, calculation, or interpretation thereof; (v) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; or (vi) the payment, reporting, or withholding of any taxes, tax expenses, or costs incurred in connection with the taxation of the Settlement Fund or the filing of any federal, state, or local returns.

20. All taxes and tax expenses, if any, shall be paid out of the Settlement Fund, and shall be timely paid by the Settlement Administrator pursuant to this Settlement Agreement and without further order of the Court. Any tax returns or reporting forms prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with this Agreement and in all events shall reflect that all taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein. No Person shall have any claim against the Class Representatives, Class Counsel, the Settlement Administrator or any other agent designated by Class Counsel, or the Released Parties and/or their counsel, arising from distributions made substantially in accordance with this Agreement. The Parties and their respective counsel, and all other Released Parties shall have no liability whatsoever for the investment or distribution of the Settlement Fund or the determination, administration, calculation, or payment of any claim or nonperformance of the Settlement Administrator, the payment or withholding of taxes (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

21. Anyone that receives funds pursuant to this Settlement Agreement, including Class Representatives, Settlement Class Members, and/or Class Counsel, shall be solely responsible for filing all information and other tax returns necessary or making any tax payments related to funds received pursuant to this Settlement Agreement. JJCI, the Released Parties, and JJCI's Counsel provide no legal advice and make no representations regarding the legal or tax consequences of this Agreement, including any benefit or monies paid and received. Anyone that receives funds pursuant to this Settlement Agreement, including Class Representatives, Settlement Class Members, and/or Class Counsel, shall be solely responsible for any tax or legal consequences for any benefit or award paid and/or received pursuant to this Settlement Agreement.

22. No person shall have any claim against Class Representatives, Class Counsel, counsel of record for any party in the Action, the Settlement Administrator, or any other person designated by Class Counsel, based on determinations or distributions made substantially in accordance with this Agreement, administration of the Settlement Fund, or further order(s) of the Court.

## VI. PRELIMINARY APPROVAL

1. Within thirty (30) days following the execution of this Settlement Agreement by all Parties, Class Counsel will move the Court for an Order granting preliminary approval of this Settlement ("Preliminary Approval Order"), substantially in the form of Exhibit F attached hereto. The motion for Preliminary Approval will request that the Court: (i) preliminarily approve the terms of the Settlement as within the range of fair, adequate, and reasonable terms; (ii) provisionally certify the Settlement Class for settlement purposes only; (iii) approve the Notice Program set forth herein and approve the form and content of the Notices attached hereto as

Exhibits B-E; (iv) approve the procedures set forth herein and in the Notice Program by which Settlement Class Members may exclude themselves from the Settlement Class or object to the Settlement; (v) appoint as Class Counsel the attorneys listed in this Settlement as Class Counsel, and appoint the named plaintiffs as the Class Representatives of the Settlement Class; (vi) appoint a Settlement Administrator; and (vii) schedule the Final Approval hearing for a time and date mutually convenient for the Court and the Parties.

2. The Preliminary Approval Order shall also authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement and its implementing documents (including all exhibits) so long as they are consistent in all material respects with the terms of the Settlement Agreement and do not limit or impair the rights of the Settlement Class or materially expand the obligations of JJCI.

## VII. NOTICE TO THE SETTLEMENT CLASS

1. No later than thirty (30) days after entry of the Preliminary Approval Order, the Settlement Administrator will commence the Notice Program provided herein, using forms substantially in the nature of the forms of Notice approved by the Court in the Preliminary Approval Order.

2. The Notice Program has four (4) components: (i) direct Notice comprised of electronic (email) Notice to those Class Members whose email addresses can be identified in JJCI's business records through a reasonable effort; (ii) Notice posted on the Settlement Website; (iii) Geo-located Internet Publication Notice; and (iv) a statewide press release.

3. The Settlement Administrator shall send a reminder by email to Settlement Class Members who do not file claims before the Claims Deadline and for whom the Settlement Administrator has a valid email address.

4. Upon request, the Settlement Administrator shall provide Class Counsel and JJCI's Counsel with one or more declarations confirming that all components of the Notice Program were completed in accordance with the Parties' instructions and the Court's approval. Class Counsel shall file such declaration(s) with the Court as an exhibit to or in conjunction with the Motion for Final Approval of the Settlement.

5. The Parties will work together in good faith, along with the Settlement Administrator, to address any issues that arise relating to the Notice Program and claims process.

**A. <u>Email Notice</u>**

1. Within ten (10) business days of Preliminary Approval, JJCI shall provide to Settlement Administrator the email addresses of all Settlement Class Members that can be identified in JJCI's business records through a reasonable effort. The Settlement Administrator shall keep the email notice list and all personal information obtained therefrom, including the identity, contact information, and email addresses of all persons strictly confidential, except as requested by the Court or Class Counsel. The email notice list may not be used for any purpose other than providing notice to specific individual Settlement Class Members of their rights, issuing Settlement Payments, and otherwise effectuating the terms of the Settlement Agreement or the duties arising thereunder, including the provision of Notice.

2. By the Notice Date, the Settlement Administrator shall send the Email Notice (substantially in the form of Exhibit C) to individuals for whom a valid email address was provided pursuant to the above paragraph.

**B. <u>Website Notice</u>**

1. As soon as practicable following entry of the Preliminary Approval Order, but prior to the commencement of the Notice Program, the Settlement Administrator will create a Settlement

Website as a means for Settlement Class Members to obtain notice of and information about the Settlement, through and including hyperlinked access to this Settlement Agreement, the Claim Form (substantially in the form attached as Exhibit A), the Long Form Notice (substantially in the form attached as Exhibit B), the Preliminary Approval Order entered by the Court, answers to frequently asked questions, the Complaint and JJCI's responsive motions thereto, and other case documents as agreed upon by the Parties and their respective counsel and/or required by the Court. The URL of the Settlement Website shall be agreed upon by Class Counsel and JJCI. Settlement Class Members shall also be able to submit Claim Forms electronically via the Settlement Website. The Settlement Website shall not include any advertising and shall remain operational until at least fifteen (15) days after the last date for Settlement Class Members to cash a Settlement payment, or such other later date as the Parties and their respective counsel may agree. However, the Settlement Administrator will disable online submissions through the Claim Form immediately following the Claims Deadline.

2. The Long Form Notice, substantially in the form of Exhibit B attached hereto, shall be posted on the Settlement Website to inform Settlement Class Members, prior to the Final Approval Hearing, that there is a pending settlement, and to inform them of their rights and duties under the Settlement.

**C. <u>Geo-located Internet Publication Notice</u>**

1. The Geo-located Internet Publication Notice shall consist of targeted banner advertising on selected advertising networks and on social media websites ("Banner Notices") and Internet Sponsored Search Listings ("Sponsored Search Listings"). The Geo-located Internet Publication Notice will commence on the Notice Date and continue for twenty-eight (28) days following the Notice Date, and shall be substantially in the form attached as Exhibit D hereto.

2. The Banner Notices shall be geo-targeted to potential Settlement Class Members based on the customer demographics and state of residence. The Banner Notices shall run on desktop, mobile, and tablet devices and link directly to the Settlement Website. Banner Notices shall also target people who visit the Settlement Website.

3. Sponsored Search Listings shall be acquired on internet search engines (Google Display Network) to facilitate locating the Settlement Website. The sponsored search listings shall be displayed in Illinois only.

**D. <u>Press Release</u>**

1. By the Notice Date, a statewide press release, substantially in the form attached as Exhibit E hereto, will be issued one time over PR Newswire's Illinois Newsline.

## VIII. <u>CLAIMS PROCESS</u>

1. Settlement Class Members shall have until the Claims Deadline to submit a Claim Form for approval by the Settlement Administrator as an Approved Claim. At the election of the Settlement Class Member, the Claim Form may be submitted in paper form via first-class mail or online at the Settlement Website.

2. The Claim Form, substantially in the form attached as Exhibit A, shall contain a sworn affirmation, under penalty of perjury, that the Settlement Class Member used Skin360® within the state of Illinois and during the Class Period, and shall be signed by the Settlement Class Member, physically or electronically. The Settlement Administrator may require a Settlement Class Member who resides outside the state of Illinois to provide proof they were located in Illinois at the time they used Skin360®.

3. The Settlement Administrator will review all Claim Forms to determine their validity and each claimant's eligibility. The Settlement Administrator shall reject any claim that

does not materially comply with the instructions on the Claim Form, is not submitted timely, is not complete, is not submitted by a Settlement Class Member, or is deemed to be duplicative or fraudulent.

4. To the extent a Claim Form is determined by the Settlement Administrator to be deficient, the Settlement Administrator will send the Settlement Class Member a written notice of deficiency, by first-class mail or email, within thirty (30) days of the Claims Deadline or when the claim is received, whichever is later. This written notice of deficiency shall identify the reason(s) that the Claim Form was deemed insufficient, including steps the Settlement Class Member can take to cure the deficiency, if possible. The Settlement Class Member receiving such notice will be allowed twenty-one (21) days from the date the mail or email is sent to cure the deficiency, if possible. If the Settlement Class Member does not or cannot cure the deficiency within that time frame, the Settlement Administrator shall deny the claim.

5. Each Settlement Class Member who submits an Approved Claim will be sent a Settlement payment on a *pro rata* basis within twenty-one (21) days of the Effective Date as provided in Sec.V.10.

## IX. OPT-OUTS

1. Settlement Class Members may opt out of the Settlement by submitting an exclusion request by email to the Settlement Administrator or downloading and submitting the exclusion request to the Settlement Administrator via first-class mail. To be effective, an exclusion request must be postmarked or emailed no later than the Opt-Out Deadline, as specified in the Notice. Any exclusion request must include the following information: (i) the case name and number; (ii) the individual's full name, mailing address, email address, and telephone number; (iii) a statement that they used Skin360® within the state of Illinois and during the Class Period; (iv) a

statement that they want to be excluded from the Settlement Class; and (v) the individual's signature.

2. Only one individual may be excluded from the Settlement Class per each exclusion request. No group opt-outs from the Settlement Class shall be permitted. The Settlement Administrator shall create a dedicated email address to receive exclusion requests electronically, which shall be made available to the Settlement Class via the Settlement Website and Notice. The Settlement Administrator shall provide the Parties with copies of all completed opt-out notifications, and a final list of all individuals who have timely and validly excluded themselves from the Settlement Class, which Class Counsel shall file with the Court no later than seven (7) days prior to the Final Approval Hearing.

3. Any Settlement Class Member who does not timely and validly exclude himself or herself shall be bound by the terms of the Settlement Agreement. To be timely and valid, the exclusion must be postmarked or received by the Opt-Out Deadline. A request to be excluded that does not include all of the foregoing information, or that is sent to an address other than that designated in the Notice, or that is not postmarked or received by the Opt-Out Deadline, or which otherwise does not comply with the requirements set for this Settlement Agreement, shall be invalid and the person submitting such a request shall remain a member of the Settlement Class and shall be bound as a Settlement Class Member by this Settlement Agreement, if finally approved.

4. Any Settlement Class Member who timely and validly requests to be excluded from the Settlement Class shall not: (i) be bound by the Settlement or Final Approval Order; (ii) be entitled to any relief under this Settlement Agreement; (iii) gain any rights by virtue of this Settlement Agreement; or (iv) be entitled to object to any aspect of this Settlement Agreement.

Settlement Class Members cannot both object to and exclude themselves from this Agreement.

5. Where a Settlement Class Member files both a valid and timely Claim Form and a timely request for exclusion, the valid timely filed Claim Form shall control.

## X. OBJECTIONS

1. The Notice shall also include a procedure for Settlement Class Members to object to the Settlement; Class Counsel's application for attorneys' fees, costs, and expenses; and/or Service Payments. Objections must be filed with the Court. For an objection to be considered by the Court, the Settlement Class Member making an objection, on or before the Objection/Exclusion Deadline, must (i) file a valid objection with the Court; (ii) file copies of all documents or writings that the objector desires the Court to consider; and (iii) send copies of such papers via United States mail, hand delivery, or overnight delivery to both Class Counsel and JJCI's Counsel. A copy of the objection must also be mailed to the Settlement Administrator at the address that the Settlement Administrator will establish to receive requests for exclusion or objections, Claim Forms, and any other communication relating to this Settlement.

2. In order to be considered valid, the objection must set forth and contain: (i) the name and case number of the action; (ii) the objector's full name, mailing address, email address, and telephone number; (iii) a statement that he or she used Skin360® within the state of Illinois, and during the Class Period; (iv) all grounds for the objection, accompanied by any legal and factual support for the objection; (v) the identity of all counsel representing the objector, regardless of whether counsel will appear at the Final Approval Hearing; (vi) the identification of any other objections he/she has filed, or has had filed on his/her behalf, in any other class action cases in the last five years; (vii) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; (viii) the objector's signature on

the written objection (an attorney's signature shall not be deemed sufficient); and (ix) a declaration under penalty of perjury that the information provided by the objector and objector's counsel is true and correct.

3. In the event that any Settlement Class Member objects in the manner prescribed herein, Class Representatives and JJCI shall be afforded a full opportunity to respond to such objections. Any Settlement Class Member who fails to object in the manner prescribed herein will not be permitted to present any objections at the Final Approval Hearing and such failure will render any such attempted objection untimely and of no effect, including as to any appeal, unless otherwise ordered by the Court. If any objection is received by the Settlement Administrator, the Settlement Administrator shall immediately forward the objection and all supporting documentation to Class Counsel and JJCI's Counsel. The failure of the Settlement Class Member to comply with the filing requirements herein shall be grounds for striking and/or overruling the objection, even if the objection is submitted to the Settlement Administrator or to Class Counsel or JJCI's Counsel.

4. A Settlement Class Member's compliance with the foregoing requirements does not in any way guarantee a Settlement Class Member the ability to present evidence or testimony at the Final Approval Hearing. The decision whether to allow any testimony, argument, or evidence, as well as the scope and duration of any presentations of objections at the Final Approval Hearing, will be in the sole discretion of the Court.

5. In the event that any Settlement Class Member objects to the Settlement Agreement, the Parties agree to cooperate in seeking enforcement of the Settlement Agreement.

6. Any member of the Settlement Class who attempts to both object to and exclude

themselves from this Settlement Agreement will be deemed to have excluded themselves and will forfeit the right to object to the Settlement or any of its terms.

## XI. CAFA NOTICE

1. Not later than ten (10) calendar days after this Settlement Agreement is filed with the Court, JJCI shall serve notice of the Settlement and other required documents upon relevant government officials in accordance with the Class Action Fairness Act ("CAFA"), 28 U.S. § 1715. Prior to the Preliminary Approval hearing, JJCI shall provide proof of service of such notice for filing with the Court. JJCI will be responsible for the preparation, service, and costs of the CAFA Notice.

## XII. CONTINUED STAY OF PROCEEDINGS

1. The Parties agree to maintain the stay of all proceedings in the Action, other than those proceedings necessary to carry out or enforce the terms and conditions of the Settlement Agreement, until the Effective Date of the Settlement Agreement has occurred.

## XIII. ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE PAYMENT

### A. Service Payment

1. Class Counsel will ask the Court to approve, and JJCI will not oppose, a Service Payment not to exceed $5,000 for each of the Class Representatives, which is intended to compensate the Class Representatives for their efforts in the litigation and commitment on behalf of the Settlement Class.

2. Any Service Payment approved by the Court shall be deducted and paid from the Settlement Fund. JJCI and the Released Parties shall have no responsibility for any payment of Service Payments separate from the Settlement Fund.

3. Any modification to the terms or timing (including reduction) of the proposed

Service Payment amount shall in no way impact the validity of the settlement of this Action, and shall not constitute grounds for cancelling or terminating the Settlement Agreement.

**B. <u>Attorneys' Fees, Costs, and Expenses</u>**

1. At least fourteen (14) days prior to the Objection/Exclusion Deadline, Class Counsel will file a Fee and Expenses Application that seeks a Fee Award in an amount not to exceed one-third of the Settlement Fund, plus reimbursement of reasonable costs and expenses. Payment of the Fee Award shall be made from the Settlement Fund.

2. The amount of the Fee Award shall be determined by the Court based on a petition from Class Counsel. Class Counsel has agreed, with no consideration from Defendant, to limit their fee request to no more than one-third of the Settlement Fund, plus reimbursement of reasonable costs and expenses.

3. Any attorneys' fees, costs, and expenses awarded by the Court to Class Counsel will be deducted and paid from the common Settlement Fund. JJCI and the Released Parties shall have no responsibility for any payment of attorneys' fees, costs, and expenses to Class Counsel separate from the Settlement Fund.

4. The finality or effectiveness of the Settlement will not be dependent on the Court awarding Class Counsel any particular amount on their Fee Request and shall not alter the Effective Date. In the event the Court declines to approve, in whole or in part, the payment of attorneys' fees, costs, and expenses in the amount that Class Counsel requests, the remaining provisions of this Settlement Agreement shall remain in full force and effect. No order of the Court, or modification, or reversal, or appeal, of any order of the Court, concerning the amount(s) of attorneys' fees, costs, and expenses shall constitute grounds for cancellation or termination of this Settlement Agreement.

5. The Settlement Administrator shall pay Class Counsel the Fee Award from the

common Settlement Fund within twenty-one (21) days of the Effective Date in a payment method elected by Class Counsel.

6. Any requested fees or costs not awarded by the Court shall be added *pro rata* to the Settlement payments distributed to Settlement Class Members.

7. Notwithstanding any contrary provision of this Agreement, the Court's allowance or disallowance of any Fee Award is not part of the Settlement Agreement, and any award made by the Court with respect to Class Counsel's attorneys' fees or expenses, including any award of attorneys' fees or expenses in an amount less than the amount requested by Class Counsel, or any proceedings incident thereto, including any appeal thereof, shall not operate to terminate or cancel this Agreement or be deemed material thereto.

## XIV. RELEASES AND DISMISSAL

1. Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and by operation of the Final Approval Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties, and each of them, whether or not such Class Representative or Settlement Class Member receives a payment from the Settlement Fund. Claims solely to enforce the terms of this Settlement Agreement are not released.

2. Upon the Effective Date, all Class Representatives and Settlement Class Members shall be barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, either directly, representatively, derivatively, or in any other capacity, any Released Claims against any of the Released Parties or based on any actions taken by any of the Released Parties that are authorized or required by this Agreement or by the Final Approval

Order. It is further agreed that the Settlement may be pleaded as a complete defense to Releasing Parties' Released Claims against the Released Parties.

## XV. CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION

1. Subject to all other Sections herein, the terms contained in this Settlement Agreement and any amendments thereto, may be terminated by either Party by providing written election of the right to do so ("Termination Notice") to the other Party within twenty-one (21) days of: (i) the Court's refusal to grant Preliminary Approval of this Agreement in any material respect; (ii) the Court making any material modification to the terms of the Settlement, including, but not limited to, any modification which operates to materially change the scope of the Settlement Class or to require JJCI to pay any amounts in excess of the Settlement Amount; (iii) the Court's refusal to grant final approval of this Agreement in any material respect; (iv) the Court's refusal to enter Final Approval Judgment in this Action in any material respect; (v) the date upon which Final Approval Judgment is vacated, modified, or reversed in any material respect by the Court or on appeal; or (vi) the date upon which an Alternate Judgment is vacated, modified, or reversed in any material respect by the Court or on appeal.

2. If any Party is in material breach of the terms of this Settlement Agreement, then the other Party, provided that it is in substantial compliance with the terms of this Agreement, may move to enforce the terms of or terminate this Settlement Agreement upon written notice to the other Party.

3. If this Agreement is terminated or fails to become effective, then the Parties shall be restored to their respective positions in the Action as of the moment just prior to the signing of this Agreement, and the Settlement Term Sheet entered into between JJCI and the Class Representatives shall be canceled, null, and void. In such event, any Final Approval Judgment or

other order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc,* and the Parties shall be returned to the *status quo ante* with respect to the Action as if this Agreement and the Settlement Term Sheet had never been entered into.

## XVI. NO ADMISSIONS OF LIABILITY OR CERTIFIABILITY OF A NON-SETTLEMENT CLASS

1. JJCI disputes the claims alleged in the Action and does not by this Settlement Agreement or otherwise admit any liability or wrongdoing of any kind. This Settlement Agreement shall not be construed in any fashion as an admission of liability or wrongdoing or the existence or scope of damages by JJCI or any other Released Parties.

2. JJCI has agreed to enter into this Agreement, without any admission of fault or liability by itself or any of the Released Parties, solely to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could have been asserted in the Action.

3. Notwithstanding Class Counsel and Class Representatives' belief that the claims asserted in the Action have merit, they have also taken into account the uncertain outcome and risks of further protracted litigation, especially in complex, costly, and time-consuming actions such as these, as well as the difficulties and delays inherent in such litigation, and agree that it is desirable to fully and finally compromise, settle, and resolve the Released Claims pursuant to the terms set forth herein.

4. The Parties understand and acknowledge that this Settlement Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Settlement Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault,

liability, or wrongdoing of any kind whatsoever.

5. Whether or not the Effective Date occurs or this Settlement Agreement is terminated, neither this Agreement, the Settlement Term Sheet, or any other settlement document, nor the Settlement contained herein or any term, provision, or definition herein, nor any act or communication performed or document executed in the course of negotiating, implementing, or seeking approval pursuant to or in furtherance of this Settlement Agreement is, may be deemed, or shall be used, offered, or received in any civil, criminal, or administrative proceeding in any court, administrative agency, arbitral proceeding, or other tribunal by or against JJCI or the Class Representatives.

6. Notwithstanding the foregoing, this Settlement Agreement, the Settlement Term Sheet and any acts performed and/or documents executed in furtherance of or pursuant to this Settlement Agreement or the Settlement Term Sheet may be used in any proceedings as may be necessary to effectuate the provisions of this Settlement Agreement. Further, if this Settlement Agreement is approved by the Court, any Party or any of the Released Parties may file this Agreement and/or the Final Approval Judgment in any action that may be brought against such Party or Released Parties in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

7. For settlement purposes only, Class Representatives shall seek, and JJCI shall not oppose, the appointment of Class Counsel as Settlement Class Counsel, and appointment of the four named plaintiffs as Class Representatives for the Settlement Class.

8. The Parties further acknowledge and agree that (i) certification of the Settlement Class as set forth in this Agreement, including certification of the Settlement Class for settlement

purposes in the context of Preliminary Approval, shall not be deemed a concession that certification of a class is appropriate, or that the Class Definition would be appropriate for a contested class certification motion, nor would JJCI be precluded from challenging class certification in further proceedings in the Action or in any other action if this Settlement Agreement is not finalized or finally approved; (ii) if this Settlement Agreement is not finally approved by the Court for any reason whatsoever, then any certification of the Settlement Class will be void, the Parties and the Action shall be restored to the *status quo ante*, and no doctrine of waiver, estoppel, or preclusion will be asserted in any litigated certification proceedings in the Action or in any other action; and (iii) no agreements made by or entered into by JJCI in connection with the Settlement Agreement may be used by the Class Representatives, any Person in the Settlement Class, or any other person to establish any of the elements of class certification in any litigated certification proceedings, whether in this Action or any other judicial proceeding.

## XVII. <u>CONFIDENTIALITY</u>

1. Unless as otherwise agreed to with respect to the Notice Program, Class Counsel shall not issue any formal press release directed to the news media concerning this Settlement Agreement or the terms of the Settlement contained herein.

2. The Parties and their respective counsel agree that any public statements (which includes communication to the press or other media, statements on the Internet, speeches, or other communications in public fora) they may make about this case, the Settlement, or the terms of the Settlement shall be in a manner that is consistent with the fact that no adjudication of fault was made by the Court or a jury, and shall not suggest that the Settlement constitutes an admission or other evidence of any claim or defense alleged or of any other wrongdoing by any Person.

## XVIII. MISCELLANEOUS PROVISIONS

1. The Parties acknowledge and agree that it is their intent to consummate this Settlement Agreement, and further agree, subject to their fiduciary and other legal obligations, to cooperate, including by and through their counsel, to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement, to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Settlement Agreement, to secure entry of the Preliminary Approval Order and Final Approval, to defend the Final Approval Judgment through any and all appeals, and promptly to agree upon and execute all such other documentation as may be reasonably required to obtain Final Approval of this Agreement.

2. The Parties each warrant and represent that, subject to Court approval of the four named plaintiffs as Class Representatives, they each have the full right, power, and authority to enter into and perform their obligations under this Settlement Agreement, including in the case of JJCI, as a result of obtaining all requisite authority and consents required to execute, deliver, and perform the obligations under this Settlement Agreement.

3. The Parties acknowledge and agree that, subject to all other provisions herein, they each consider this Settlement Agreement to be a legal, valid, and binding obligation of such Party, enforceable against the Party, and any and all successors and assigns, in accordance with the terms and conditions hereof.

4. The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to all Released Claims by all Releasing Parties against all Released Parties.

5. The Parties have each sought such independent legal advice as they deem necessary with respect to the advisability of making this Settlement Agreement and the meaning and effect of all aspects of the Settlement Agreement. The Parties have read and understand fully

this Settlement Agreement and have been fully advised as to the legal effect hereof by counsel of their own selection and intend to be legally bound by the same.

6. The Parties enter into this Settlement Agreement freely, knowingly, and voluntarily, and agree that the execution and delivery of the Settlement Agreement is not the result of any fraud, duress, mistake, unconscionability, or undue influence whatsoever.

7. The Parties acknowledge and agree that the execution, delivery, and performance of this Settlement Agreement by such Party do not violate, conflict with, or constitute a breach of or under, any applicable charter or similar organizational document, by-laws, order, award, judgment, decree, agreement, or instrument to which such Party is a party or by which such Party is bound.

8. The Parties acknowledge and agree that the Person signing this Settlement Agreement or any related settlement documents on behalf of the Party is duly authorized to bind that Party and has been authorized to execute same.

9. The Court shall retain jurisdiction as to all matters relating to administration, implementation, consummation, enforcement, and interpretation of the Settlement Agreement.

10. The Parties consent and agree that this Agreement shall be construed in accordance with, and be governed by, the laws of the state of New Jersey, applied without regard to laws applicable to choice of law. Federal law shall govern approval of the Settlement, preliminary and final certification and approval of the Settlement Class, and all related issues, such as Class Counsel's Fee and Expenses Application. The Parties agree that any dispute resulting in a legal proceeding arising out of, relating to, or to enforce any term of this Settlement Agreement shall be brought only in federal court in the District of New Jersey, which court shall have exclusive jurisdiction over any such dispute.

11. Whenever possible, each provision of this Settlement Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but in the event any provision of this Settlement Agreement is deemed unenforceable or void under applicable law by any Court, such provision shall be ineffective only to the extent of such prohibition or invalidity without invalidating the remaining provisions of this Settlement Agreement, which shall remain in full force and effect.

12. This Settlement Agreement is the result of arm's length negotiations and shall be deemed drafted by both Parties to avoid any adverse inference against the drafter.

13. This Settlement Agreement, including exhibits, contains the entire integrated agreement of the Parties with respect to the Dispute, and supersedes all prior and/or contemporaneous understandings, negotiations, arrangements, undertakings, and agreements, if any, regarding the subject matter herein. There are no additional terms, understandings, covenants, or representations, which are the basis for, which are a part of, or upon which the Parties are relying in entering into this Settlement Agreement, or which may be implied in this Settlement Agreement, other than those expressly set forth and expressly referenced in these provisions. No representations, warranties, or inducements have been made to any Party concerning this Settlement Agreement or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

14. This Settlement Agreement cannot be modified or waived except by an instrument in writing signed by or on behalf of each of the Parties, or their respective successors-in-interest.

15. The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breaches of this Settlement Agreement.

16. Facsimile, email, or digital signatures, such as through DocuSign, shall be accepted in lieu of originals, and this Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. A complete set of original executed counterparts shall be filed with the Court if the Court so requests.

17. All releases, waivers, representations, and warranties made by the Parties herein shall continue in full force and effect notwithstanding the performance of other obligations hereunder.

18. All section titles, headings, and captions contained in this Settlement Agreement are for convenience only, are not meant to have legal effect, and shall not affect the interpretation of this Settlement Agreement. Any inconsistency between headings and text of the Settlement Agreement shall be resolved in favor of the text.

19. As used in this Settlement Agreement, the masculine, feminine, or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

20. Where this Settlement Agreement requires notice to the Parties, such notice shall be sent by overnight mail and email to the undersigned counsel:

a. *Counsel for Class Representatives*:

Grace E. Parasmo (gparasmo@parasmoliebermanlaw.com)
Yitzchak H. Lieberman (ylieberman@parasmoliebermanlaw.com)
**Parasmo Lieberman Law**
8149 W. Santa Monica Blvd., #611
Los Angeles, California 90046

Matthew R. Mendelsohn (mrm@mazieslater.com)
**Mazie Slater Katz & Freeman, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068

Allen Schwartz (allen@allenschwartzlaw.com)
**Schwartz Law PLLC**
150 Broadway, Suite 701
New York, New York 10038

b. *Counsel for JJCI:*

Kathleen L. Carlson (kathleen.carlson@sidley.com)
Lawrence P. Fogel (lawrence.fogel@sidley.com)
Abigail B. Molitor (amolitor@sidley.com)
**Sidley Austin LLP**
One South Dearborn
Chicago, IL 60603

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

21. Absent an order from a court of competent jurisdiction, or similar compulsion of law, no Party will take any action which would directly or indirectly interfere with the performance of this Settlement Agreement by any other Party or which would directly or indirectly adversely affect any of the rights provided for herein. Before filing any motion in the Court raising a dispute arising out of or related to this Settlement Agreement, the Parties shall consult with each other and certify to the Court that they have so consulted.

22. Provided the Effective Date has occurred, Class Representatives, Class Counsel, and any experts, agents, representatives, employees, or consultants in possession of material that has been provided by JJCI with any confidentiality designation, including but not limited to data and documents exchanged by the Parties during formal and informal discovery in the Action, shall destroy such matter and certify in writing within thirty (30) days after the Effective Date that the matter has been destroyed.

IN WITNESS WHEREOF, the Parties hereto have entered into the Settlement Agreement as of the date last stated below.

Date: Feb. 16, 2026

By: Helene Melzer

Helene Melzer

with permission by attorney Grace Parasmo

Date: ______________________

By: ______________________

Johnson & Johnson Consumer Inc. n/k/a Kenvue Brands LLC

Date: ______________________

By: ______________________

Christine Borovoy

Date: ______________________

By: ______________________

Andy Sajnani

Date: ______________________

By: ______________________

Patricia Biewald

Date: ______________________ Date: ______________________

By: ______________________ By: ______________________

Helene Melzer

Johnson & Johnson Consumer Inc. n/k/a
Kenvue Brands LLC

Date: 2/15/2026

By: DocuSigned by: Christine Borovoy
EFEDC042F60B414...

Christine Borovoy

Date: 2/16/2026

By: DocuSigned by: Andy Sajnani
1B26BA1A56CE48F...

Andy Sajnani

Date: 2/15/2026

By: DocuSigned by: Patricia Biewald
BA1C5D080B4441B...

Patricia Biewald

IN WITNESS WHEREOF, the Parties hereto have entered into the Settlement Agreement as of the date last stated below.

Date: ______________________ Date: 2/16/2026

By: ______________________ By: [signature]
Helene Melzer Johnson & Johnson Consumer Inc. n/k/a Kenvue Brands LLC

Date: ______________________

By: ______________________
Christine Borovoy

Date: ______________________

By: ______________________
Andy Sajnani

Date: ______________________

By: ______________________
Patricia Biewald

# EXHIBIT A

Skin360 BIPA Settlement Administrator
P.O. Box XXX
Baton Rouge, LA 70821

**Your Claim Form Must Be Submitted By Month DD, 202Y**

**MELZER V. JOHNSON & JOHNSON CONSUMER INC. CLASS ACTION SETTLEMENT**

*Helene Melzer, et al. v. Johnson & Johnson Consumer Inc., Case No. 3:22-CV-03149-MAS-TJB*
United States District Court for the District of New Jersey

# CLAIM FORM

**TO RECEIVE A PAYMENT FROM THIS SETTLEMENT, YOU MUST COMPLETE THIS CLAIM FORM AND SUBMIT IT BY MONTH DD, 202Y.**

**INSTRUCTIONS FOR SUBMITTING A CLAIM FOR A SETTLEMENT PAYMENT**

**Please Read These Instructions Carefully**

* This Settlement is open only to individuals who, while in Illinois, performed either a Neutrogena® Skin360® or Neostrata® Skin360® (collectively, "Skin360®") skin assessment, whether via mobile application or web application, between December 9, 2019 and May 5, 2023 (the "Class Period").

**IMPORTANT NOTE: You must fully complete and submit this Claim Form by Month DD, 202Y to be eligible to receive payment. No Claim Forms submitted after this date will be accepted.**

To complete this Claim Form, truthfully provide the requested information in Steps 1 and 2; select a payment method in Step 3; review and sign the certification in Step 4; and submit the Claim Form using one of the methods stated in Step 5 (you can submit this Claim Form online at www.Skin360BIPASettlement.com or by U.S. Mail).

**Each Class Member is entitled to submit only one claim. Duplicate claims will be rejected.** If you timely submit a valid Claim Form, you will be entitled to receive a payment representing a *pro rata* share of the Settlement Fund (the actual cash amount an individual will receive will depend on the number of valid claims submitted) as set forth in Section V.10 of the Settlement Agreement available at www.Skin360BIPASettlement.com.

*It is important that all of the information you provide in this Claim Form is true, accurate, and complete.* You may be required to provide documentation to the Settlement Administrator supporting the answers you have provided. Submitting false information will render your Claim Form invalid. Please note that all information provided on the Claim Form will not be used for any purpose other than for this Settlement.

**If your Claim Form is rejected for any reason, you will be notified and given an opportunity to address any deficiencies. The Settlement Administrator's decisions regarding Claim Forms are final and cannot be appealed.**

*Continue to next page*

## STEP 1 - CLAINMANT INFORMATION

***Please provide your name and contact information below. You must notify the Settlement Administrator if your contact information changes after you submit this Claim Form.***

______________________________ ______________________________
Class Member's First Name | Class Member's Last Name

______________________________
Mailing Address: Street Address/P.O. Box (include Apartment/Suite/Floor Number)

______________________________ ______ ______
City | State | Zip Code

______ - ______ - ______ ______________________________
Contact Telephone Number | Contact Email Address

______________________________
Settlement Claim ID (If Available)

*Continue to next page*

## STEP 2 - CLASS MEMBER DETAILS

Remember that you are only eligible to file a Claim Form under the Settlement if at any time during the Class Period (between December 9, 2019 and May 5, 2023):

(a) You performed a Skin360® skin assessment, whether via mobile application or web application,

(b) While you were in the State of Illinois;

If you fit this description, you may submit a Claim Form**.**

***A. In the spaces below, please provide the requested information regarding the use of Skin360®:***

______ / ______ / ____________ Through ______ / ______ / ____________
Approximate dates of use for Skin360®

***B. If you are no longer an Illinois resident, please provide information regarding your time in Illinois during the Class Period (between December 9, 2019 and May 5, 2023):***

______ / ______ / ____________ Through ______ / ______ / ____________
Approximate dates in Illinois while using Skin360®

☐ I am including documentation to support my time in Illinois with this claim submission.

**<u>Note</u>: Please note that the Settlement Administrator may request that you provide additional documentation in order to verify your Claim. Such documentation could include: proof of identity documentation (such as government-issued identification documents, utility bills, etc.) or proof you were in Illinois at the time you used Skin360® (such as a travel documents, statements demonstrating other purchases in Illinois, etc.).**

*Continue to next page*

## STEP 3 - SELECT PAYMENT METHOD

***Select the appropriate box indicating how you would like to receive your payment and provide the requested information:***

☐ **Venmo**

______________________________
Venmo Account Email Address or Phone Number

☐ **Zelle**

______________________________
Zelle Account Email Address or Phone Number

☐ **PayPal**

______________________________
PayPal Account Email Address

☐ **Prepaid Digital MasterCard**

______________________________
Current Email Address

☐ **Check:** If you prefer to receive your payment via check, please provide your mailing address (if different from the address provided in Step 1).

______________________________
Mailing Address: Street Address/P.O. Box (include Apartment/Suite/Floor Number)

______________________________ ________ ____________
City State Zip Code

## STEP 4 – CERTIFICATION AND SIGNATURE

**I ______________________________________________, affirm that:**
(Full Name)

***I am an adult of 18 years or older and a member of the Settlement Class. I further affirm under penalty of perjury that I used Skin360® within the state of Illinois between December 9, 2019 and May 5, 2023, and that this is the only Claim Form that I have submitted and/or will submit in connection with this Settlement. I understand that this Claim Form will be reviewed for authenticity and completeness.***

______________________________ ______________________________
Signature of Claimant Date

## STEP 5 - METHODS OF SUBMISSION

***Please submit the completed Claim Form through one of the following methods:***

1. Online by visiting www.Skin360BIPASettlement.com and completing an online Claim Form no later than **Month DD, 202Y;**

OR

2. By mailing via U.S. Mail a completed and signed Claim Form to the Settlement Administrator, postmarked no later than **Month DD, 202Y**, and addressed to:

*Skin360 BIPA Settlement Administrator*
*P.O. Box XXX*
*Baton Rouge, LA 70821*

# EXHIBIT B

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

***Helene Melzer, et al., v. Johnson & Johnson Consumer Inc., No: 3:22−CV−03149-MAS-TJB***

**PLEASE READ THIS NOTICE CAREFULLY. YOU MAY BE ENTITLED TO A CASH PAYMENT FROM A PROPOSED CLASS ACTION SETTLEMENT IF, WHILE IN ILLINOIS, YOU PERFORMED A NEUTROGENA® SKIN360® OR NEOSTRATA® SKIN360® SKIN ASSESSMENT VIA MOBILE APPLICATION OR WEB APPLICATION BETWEEN DECEMBER 9, 2019 AND MAY 5, 2023.**

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*
*You are not being sued.*

- A proposed Settlement has been reached in a class action lawsuit in which Plaintiffs allege that Defendant Johnson & Johnson Consumer Inc., now known as Kenvue Brands LLC ("Defendant" or "JJCI"), violated Illinois' Biometric Information Privacy Act, 740 ILCS 14/1 et seq. ("BIPA"). By entering into the Settlement, JJCI does not concede the merits of any of the claims against it and denies that it violated the law. The Court has not decided who is right or wrong. Instead, the parties agreed to the Settlement to avoid the expense, uncertainty, and risks associated with litigation.

- The proposed Settlement only impacts you if you are a Settlement Class Member. A Settlement Class Member is any person who, while in Illinois, performed a Skin360® skin assessment using any version of Skin360®, including Neutrogena® Skin360®, Neostrata® Skin360®, and any Skin360® collaborations with other entities (collectively, "Skin360®"), whether via mobile application or web application, between December 9, 2019 and May 5, 2023.

- The proposed Settlement requires Defendant to pay $4.7 million into a Settlement Fund. Settlement Class Members who file timely and valid claims shall be entitled to a *pro rata* share of the Settlement Fund, net of any attorneys' fees and costs, service payments to Class Representatives, and the costs of administering the settlement. Any remaining funds that cannot feasibly be distributed to the Settlement Class will be paid to a *cy pres* recipient to be approved by the Court.

- To receive a Settlement payment, you must submit a valid and timely Claim Form.

- Whether you act or not, your legal rights as a Settlement Class Member are affected by the proposed Settlement. Your rights and options—and the deadlines to exercise them—are explained in this Class Notice. Please read this Class Notice carefully in its entirety. Defined terms have the meanings in the Settlement Agreement.

| SETTLEMENT CLASS MEMBERS' LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT: | | |
|---|---|---|
| **YOUR RIGHTS AND OPTIONS** | **WHAT THEY MEAN** | **DEADLINES** |
| **SUBMIT A CLAIM FORM** | You must submit a valid and timely Claim Form to receive any money out of the Settlement Fund. To find out how to submit a Claim Form, please read Question 9. | Received or postmarked on or before [DATE] |
| **EXCLUDE YOURSELF (OPT OUT)** | If you exclude yourself from the Settlement, you will get no benefits from the proposed Settlement. Requesting exclusion from the Settlement (also called "opting out") would allow you to file or continue your own lawsuit against Defendant about the legal claims involved in the Settlement, individually. To find out how to opt out, please read Question 11. | Received or postmarked on or before [DATE] |
| **OBJECT** | If you wish to object to the proposed Settlement, you must write the Court about why you do not like the Settlement. To find out how to object, please read Question 13. | Filed and served on or before [DATE] |
| **GO TO FINAL APPROVAL HEARING** | Unless you exclude yourself (opt out) from the proposed Settlement, you may also ask to speak in Court about the Settlement. To find out how to do so, please read Questions 16, 17, and 18. | [DATE] |
| **DO NOTHING** | If you are a Settlement Class Member and do not take any action, you will not receive anything under the Settlement. However, if the proposed Settlement is finally approved by the Court, you will be bound by the Court's Final Judgment and the release of claims explained in the Settlement Agreement. | None |

# TABLE OF CONTENTS


**Basic Information** ........ 4

**1. Why did you receive this notice?** ........ 4

**2. What is this case about?** ........ 4

**3. Why is this a class action?** ........ 4

**4. Why is there a settlement?** ........ 5

**Who Does The Settlement Apply To?** ........ 5

**5. Who is in the Settlement Class?** ........ 5

**6. Are there exceptions to being included in the Settlement Class?** ........ 5

**7. I'm still not sure if I am included.** ........ 6

**The Settlement Benefits And Options** ........ 6

**8. What benefits does the Settlement provide to Settlement Class Members?** ........ 6

**9. What do I need to do to participate in the Settlement?** ........ 7

**10. When will the Settlement go into effect?** ........ 7

**Excluding Yourself From The Settlement Class** ........ 7

**11. If I do not want to participate in the Settlement, what must I do?** ........ 8

**12. If I exclude myself, can I get anything from the Settlement?** ........ 8

**13. How do I tell the Court if I do not like the Settlement or the attorneys' fees request?** ........ 8

**The Lawyers Representing You** ........ 10

**14. Do I have a lawyer in this case?** ........ 10

**15. How will the lawyers be paid?** ........ 10

**The Court's Final Approval Hearing** ........ 10

**16. When and where will the Court decide whether to approve the Settlement?** ........ 10

**17. Do I have to come to the Final Approval Hearing?** ........ 11

**18. May I speak at the Final Approval Hearing?** ........ 11

**If You Do Nothing** ........ 11

**19. What happens if I do nothing?** ........ 11

**Getting More Information** ........ 12

**20. How do I get more information?** ........ 12

## BASIC INFORMATION

### 1. Why did you receive this notice?

This is a court-authorized notice of a proposed settlement in a class action lawsuit, *Helene Melzer, et al., v. Johnson & Johnson Consumer Inc.*, No: 3:22−CV−03149 pending in the United States District Court for the District of New Jersey before the Honorable Michael A. Shipp. The Settlement would resolve a lawsuit brought on behalf of persons who allege that Johnson & Johnson Consumer Inc., now known as Kenvue Brands LLC ("Defendant" or "JJCI") collected, stored, disclosed and profited from individuals' biometric facial geometry without first providing legally-required written disclosures and obtaining written consent. JJCI denies the allegations of this lawsuit.

If you have performed a Skin360® skin assessment, whether via mobile application or web application, between December 9, 2019 and May 5, 2023 within the state of Illinois, your rights may be affected by the Settlement. The Court has granted preliminary approval of the Settlement and has conditionally certified the Settlement Class for purposes of settlement only. This notice explains the nature of the class action lawsuit, the terms of the Settlement, and the legal rights and obligations of the Settlement Class Members. Please read the instructions and explanations below so that you can better understand your legal rights.

### 2. What is this case about?

The Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*., prohibits private companies from collecting, capturing, obtaining, and/or storing biometric identifiers and/or biometric information, such as scans of facial geometry, without first providing specific written disclosures and obtaining written consent. BIPA also prohibits private entities in possession of this data from disseminating or profiting from it and requires them to maintain a public written policy explaining their data retention and destruction policies.

This lawsuit alleges that Defendant violated BIPA by collecting, storing, disclosing, and profiting from the biometric identifiers and/or biometric information of individuals who scanned their faces during a Skin360® skin assessment without first providing the requisite disclosures or obtaining the requisite consent, and without publicly disclosing a data retention policy. JJCI denies these claims and that it violated BIPA. JJCI maintains it did not collect, store, disclose, or profit from any individual's biometric identifiers and/or biometric information.

### 3. Why is this a class action?

A class action is a lawsuit in which one or more individuals, called plaintiffs or "Class Representatives," bring a single lawsuit on behalf of other people who have similar claims. All of these people together are a "Class" or "Class Members." The company the plaintiffs sue is called the defendant. A class action settlement finally approved by the Court resolves the issues for all Class Members, except for those who exclude themselves from the settlement class.

**4. Why is there a settlement?**

To resolve this matter without the expense, delay, and uncertainties of litigation, the Parties have reached a Settlement, which resolves all claims against Defendant. The Settlement requires Defendant to pay money into a Settlement Fund. This money will be used to pay (1) settlement payments to Settlement Class Members, (2) the costs for distributing notice and settlement payments and other costs of administering the Settlement, and (3) attorneys' fees and costs to Class Counsel, and service payments to the Class Representatives, if approved by the Court. The Settlement is not an admission of wrongdoing by Defendant and does not imply that there has been, or would be, any finding that Defendant violated the law.

The Court has already preliminarily approved the Settlement. Nevertheless, because the settlement of a class action determines the rights of all members of the class, the Court overseeing this lawsuit must finally approve the Settlement before it can be effective. The Court has conditionally certified the Settlement Class for settlement purposes only, so that members of the Settlement Class can be given this notice and the opportunity to exclude themselves from the Settlement Class, to voice their support or opposition to final approval of the Settlement, and to submit a Claim Form to receive the monetary relief offered by the Settlement. If the Court does not give Final Approval of the Settlement, or if it is terminated by the Parties, the Settlement will be void, and the lawsuit will proceed as if there had been no settlement and no certification of the Settlement Class.

## WHO DOES THE SETTLEMENT APPLY TO?

**5. Who is in the Settlement Class?**

You are a member of the Settlement Class if you performed a Skin360® skin assessment, via mobile application or web application within the state of Illinois, between December 9, 2019 and May 5, 2023. If you performed a Skin360® skin assessment by scanning your face in the state of Illinois during this time period, then you may visit the settlement website, www.Skin360BIPASettlement.com, to submit a claim for a cash payment.

**6. Are there exceptions to being included in the Settlement Class?**

Excluded from the Settlement Class are (a) Defendant, its subsidiaries, parent, and other affiliate entities, and all employees thereof; (b) the Judges presiding over this Action and their immediate family members and staff; (c) Class Counsel and Defendant's Counsel; (d) Persons who properly execute and file a timely request for exclusion from the Settlement Class; and (e) the successors or assigns of any excluded Persons.

**7. I'm still not sure if I am included.**

If you are still not sure whether you are included in the Settlement Class, you can call toll-free [INSERT PHONE NUMBER] or visit www.Skin360BIPASettlement.com for more information.

## THE SETTLEMENT BENEFITS AND OPTIONS

If the Settlement is approved and becomes final, it will provide the benefits described below to Settlement Class Members.

**8. What benefits does the proposed Settlement provide to Settlement Class Members?**

**Cash Payments.** Defendant has agreed to pay $4,700,000.00 into a Settlement Fund. This money will be used to pay for all payments to Settlement Class Members who make valid and timely claims; the costs of distributing notice and settlement payments and other costs of administering the Settlement; attorneys' fees, costs, and expenses; and service payments to the Class Representatives. All Settlement Class Members must submit a Claim Form to receive a payment out of the Settlement Fund.

If the Settlement is approved, each Settlement Class Member who submits a timely Claim Form that is deemed valid will be entitled to an equal payment paid out of the Settlement Fund. The exact amount of each Settlement Class Member's payment is unknown at this time as it depends on certain factors to be determined, including the total number of valid Claim Forms submitted and the amount of fees, expenses, and awards that may be approved by the Court. The Settlement Administrator will issue a payment to each Settlement Class Member who submits a valid Claim Form following the Final Approval of the Settlement. Any checks issued to Settlement Class Members will expire and become void 90 days after they are issued, and no replacement check will be issued for expired checks.

Additionally, the attorneys who brought this lawsuit (listed below) will ask the Court to award them attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of reasonable costs and expenses, for the substantial time, expense, and effort spent investigating the facts, litigating the case and negotiating the Settlement. Each of the Class Representatives also will apply to the Court for a service payment of up to $5,000 for their time, effort, and service in this matter.

**Prospective Relief.** Within 14 days after the Effective Date, JJCI will confirm that (i) it has deleted any images obtained during a Skin360® skin assessment during the Class Period and (ii) subject to any changes in relevant authority, JJCI will maintain a user notice and written consent mechanism for Skin360® and a written policy regarding the retention and destruction of information collected through Skin360®.

To receive the benefits due under the proposed Settlement, you must submit a Claim Form by following the directions set forth at www.Skin360BIPASettlement.com, as set forth in the next section of this Class Notice.

## 9. What do I need to do to participate in the proposed Settlement?

**To receive any benefits due under the Settlement, you must submit a Claim Form by following the directions set forth at www.Skin360BIPASettlement.com by the [Claims Deadline].** You may, in the alternative, ask the Settlement Administrator for a paper version of the Claim Form and postmark it by the [Claims Deadline]. You may contact the Settlement Administrator at [INSERT ADDRESS] or by emailing [INSERT EMAIL].

**Settlement Class Members who fail to submit a Valid Claim by [Claims Deadline] will not receive any compensation from the Settlement.**

## 10. When will the proposed Settlement go into effect?

The Court will hold a Final Approval Hearing on [DATE] to decide whether to finally approve the Settlement. Even if the Court approves the Settlement, there could be appeals. The time for an appeal varies and could take more than a year.

The Effective Date is the date when all appeals are completed, and the Settlement becomes final. You can visit the Settlement Website at www.Skin360BIPASettlement.com to check the progress of the Court-approval process and the Effective Date. Please be patient.

Settlement Consideration for all Valid Claims will be paid after the Effective Date to the Settlement. Payments to Class Members will be made as soon as practicable at the discretion of the Settlement Administrator.

The Court will have the power to enforce the terms of the Settlement Agreement.

### EXCLUDING YOURSELF FROM THE SETTLEMENT CLASS

If you do not want to participate in the Settlement and instead you want to keep all of your rights to file or continue your own lawsuit against Defendant about the legal claims being resolved in the

Settlement, then you must take steps to get out of the Settlement Class. This is called asking to be excluded from, or "opting out" of, the Settlement Class.

**11. If I do not want to participate in the proposed Settlement, what must I do?**

You may exclude yourself from the proposed Settlement. If you do so, you will not receive any cash payment, and you will not release any claims you may have against Defendant and the Released Parties (as that term is defined in the Settlement Agreement). You will remain free to pursue whatever legal rights you may have by pursuing your own lawsuit against Defendant and the other Released Parties at your own risk and expense.

To exclude yourself from the proposed Settlement, you must sign and send a letter to the Settlement Administrator by U.S. mail at ______, postmarked by XX, XX, XXXX, or by email to the Settlement Administrator at ______________________ by XX, XX, XXXX. The exclusion letter must include (i) the case name and number of this action; (ii) your full name, mailing address, telephone number, and email address; (iii) a statement that you performed a Skin360® skin assessment via website or mobile application, within the state of Illinois between December 9, 2019 and May 5, 2023; (iv) a statement that you wish to be excluded from the Settlement; and (v) your signature. Only one person may be excluded from the Settlement per each exclusion request; no group exclusion requests will be allowed. If you return both a valid and timely Claim Form and a timely request for exclusion, the request for exclusion shall be deemed void and of no force and effect, and the Claim Form shall be processed under the terms of the Settlement.

**12. If I exclude myself, can I get anything from the proposed Settlement?**

If you choose to exclude yourself from the Settlement Class: (1) you will not be entitled to receive the benefits of the Settlement; (2) you will not be legally bound by the Settlement Agreement; and (3) you will keep any rights you may have to file or continue your own lawsuit against Defendant about the legal claims included in the Settlement Agreement, as long as suit is filed before the relevant statute of limitations expires.

**13. How do I tell the Court if I do not like the proposed Settlement or the attorneys' fees request?**

If you are a Settlement Class Member, you can object to the proposed Settlement if you do not like any part of it. You can also object to Class Counsel's request for attorneys' fees, expenses, and costs, and the service payments for the Class Representatives. If you wish to object to the Settlement, you must submit your objection in writing to the Clerk of the Court, United States District Court for the District of New Jersey, Trenton Division, Clarkson S. Fisher Building & U.S. Courthouse, 402 East State Street, Trenton, NJ 08608. The objection must be received by the Court

no later than XX, XX, XXXX. You must also send a copy of your objection to the attorneys for all Parties to the lawsuit, including Class Counsel (Grace E. Parasmo of Parasmo Lieberman Law, 8149 W. Santa Monica Blvd., #611, Los Angeles, California 90046) and the attorneys representing Defendant (Kathleen L. Carlson, Sidley Austin LLP, One South Dearborn, Chicago, IL 60603), postmarked no later than XX, XX, XXXX. You must also file copies of any papers you propose to submit at the Final Approval Hearing with the Clerk of the Court and send copies of such papers via United States mail, hand delivery, or overnight delivery to both Class Counsel and Defendant's Counsel. You must also mail a copy of the objection to the Settlement Administrator at ____________ postmarked no later than XX, XX, XXXX.

Any objection to the proposed Settlement must include (i) the case name and number of this action; (ii) your full name, mailing address, telephone number, and email address; (iii) a statement that you performed a Skin360® skin assessment via website and/or the mobile application, within the state of Illinois between December 9, 2019 and May 5, 2023; (iv) all grounds for the objection, accompanied by any legal and factual support for the objection; (v) the identity of all counsel representing you and whether or not such counsel will appear at the Final Approval Hearing; (vi) the identification of any other objections you have filed, or that have been filed on your behalf, in any other class action cases in the last five years; (vii) a statement confirming whether you intend to personally appear and/or testify at the Final Approval Hearing; (viii) your signature (your attorney's signature will not be sufficient); and (ix) a declaration under penalty of perjury that the information provided is true and correct. If you do hire your own attorney, you will be solely responsible for payment of any fees and expenses the attorney incurs on your behalf.

You cannot both object to and exclude yourself from the Settlement Agreement. Any Settlement Class Member who attempts to both object to and exclude themselves from the Settlement will be deemed to have excluded themselves and will forfeit the right to object to the Settlement Agreement or any of its terms.

You may appear at the Final Approval Hearing, which will be held on XXXXXXX, XXXX at XX, in Courtroom 5W of the United States District Court for the District of New Jersey, Trenton Division, Clarkson S. Fisher Building & U.S. Courthouse, 402 East State Street, Trenton, NJ 08608 (or at such other time or location as the Court may without further notice direct), in person or through counsel to show cause why the proposed Settlement should not be approved as fair, reasonable, and adequate. Attendance at the hearing is not necessary; however, persons wishing to be heard orally in opposition to the Final Approval of the Settlement, the request for attorneys' fees and expenses, and/or the request for service payments to the Class Representatives are required to indicate in their written objection their intention to appear at the hearing on their own behalf or through counsel. The hearing date and time is subject to change by the Court, so please check the Settlement Website, www.Skin360BIPASettlement.com, for updates.

You must sign your own objection. Attorneys' signatures on objections will not be accepted.

**If you do not comply with the foregoing procedures and deadlines for submitting written objections, you may lose substantial legal rights to contest the orders or judgments of the Court entered in connection with the Settlement.**

## THE LAWYERS REPRESENTING YOU

### 14. Do I have a lawyer in this case?

The Court has appointed lawyers from the law firms of Parasmo Lieberman Law, Schwartz Law PLLC, and Mazie Slater Katz & Freeman, LLC as Class Counsel to represent the Settlement Class Members. The only fees, costs, and expenses these lawyers will seek are those described in Question 15 below. If you want to be represented by your own lawyer in this case, you may hire one at your own expense.

### 15. How will the lawyers be paid?

For more than three years, Class Counsel have worked without compensation on this case. In connection with the Final Approval Hearing on the Settlement, Class Counsel will apply to the Court for an award of attorneys' fees, with the total amount not to exceed one-third (1/3) of the Settlement Fund. In addition, Class Counsel may seek all of their reasonable costs and expenses to be paid out of any amounts paid into the Settlement Fund. In the event the Court declines to approve, in whole or in part, the payment of attorneys' fees, costs, and expenses in the amount requested by Class Counsel, the amount not awarded will be available to be claimed by Settlement Class Members.

Class Counsel will make an application for service payments, in amounts not to exceed $5,000 for Class Representatives Helene Melzer, Christine Borovoy, Andy Sajnani, and Patricia Biewald, to compensate them for their efforts and commitment on behalf of the Settlement Class.

## THE COURT'S FINAL APPROVAL HEARING

### 16. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing to decide whether to approve the Settlement, whether to grant Class Counsel's motion for attorneys' fees, costs, and expenses, and whether to grant service payments to the Class Representatives. You may attend and you may ask to speak, but you do not have to do either one.

The Final Approval Hearing will be held before the Honorable Michael A. Shipp on **[DATE]** at **[TIME] Eastern Time**, in Courtroom 5W of the United States District Court for the District of New Jersey, Trenton Division, Clarkson S. Fisher Building & U.S. Courthouse, 402 East State

Street, Trenton, NJ 08608 (or at such other time or location as the Court may without further notice direct).

**Do not write or call the judge or the clerk concerning this Class Notice or the Litigation.**

The purpose of the Final Approval Hearing will be for the Court to determine whether the Settlement should be finally approved as fair, reasonable, and adequate, and in the best interests of the Settlement Class, and to consider awarding attorneys' fees, costs, and expenses to Class Counsel, as well as service payments to the Class Representatives. At the hearing, the Court will hear any objections and arguments concerning the fairness of the Settlement or the fees that have properly been submitted, as set forth above.

The date of the Final Approval Hearing may change without further notice to the Settlement Class. Settlement Class Members are advised to check the Settlement Website at www.Skin360BIPASettlement.com to check on the date of the Final Approval Hearing, the Court-approval process, and the Effective Date.

### 17. Do I have to come to the Final Approval Hearing?

No, you are not required to come to the Final Approval Hearing. Class Counsel will answer any questions the Court may have. If you send an objection, you do not have to come to the Court to talk about it. As long as you served your written objection on time and complied with the other requirements for a proper objection, the Court will consider it.

### 18. May I speak at the Final Approval Hearing?

You or your lawyer may ask the Court for permission to speak at the Final Approval Hearing.

**You may not be able to speak at the hearing if you do not comply with the procedures set out in this notice.**

## IF YOU DO NOTHING

### 19. What happens if I do nothing?

If you are a Settlement Class Member, you must file a Claim Form by the Claims Deadline, [INSERT DATE], as described in response to Question 9, to receive a Settlement payment.

**IF YOU DO NOTHING AND THE SETTLEMENT IS FINALLY APPROVED, YOU WILL BE BOUND BY THE COURT'S FINAL JUDGMENT AND RELEASE OF CLAIMS**

**AGAINST THE DEFENDANT AND THE RELEASED PARTIES AS EXPLAINED IN THE SETTLEMENT AGREEMENT.**

## GETTING MORE INFORMATION

### 20. How do I get more information?

This Class Notice is only a summary of the terms of the proposed Settlement. More details about the Settlement, the Effective Date, the deadlines, and your options are available in a longer document called the Settlement Agreement. This Settlement Agreement can be reviewed by clicking here: www.Skin360BIPASettlement.com.

The Settlement Website also contains answers to common questions about the proposed Settlement, plus other information to help you determine whether you are a Settlement Class Member. In addition, some of the key documents in the case will be posted on the Settlement Website. If you would like this Class Notice, the Claim Form, or the Settlement Agreement mailed to you, please call [PHONE NUMBER] or write to [Settlement Administrator Name], the Settlement Administrator, at:

[INSERT ADDRESS]

Alternatively, all of the court documents in this case are on file and available for review during regular office hours at the Clerk of the Court, United States District Court for the District of New Jersey, Trenton Division, Clarkson S. Fisher Building & U.S. Courthouse, 402 East State Street, Trenton, NJ 08608.

**Please do not call the Court or the Court Clerk's Office to inquire about this Settlement or the Claims Process.**

# EXHIBIT C

To: <<Class Member Email>>
From: Settlement Administrator <noreply@XXXX.com>
Subject: Skin360 Class Action Settlement

**YOU MAY BE ENTITLED TO A CASH PAYMENT FROM A CLASS ACTION SETTLEMENT IF YOU PERFORMED A NEUTROGENA® SKIN360® OR NEOSTRATA® SKIN360® SKIN ASSESSMENT WHILE IN ILLINOIS THROUGH A MOBILE APPLICATION OR WEB APPLICATION, BETWEEN DECEMBER 9, 2019 AND MAY 5, 2023.**

*For more information, visit the Settlement website here.*

A proposed settlement has been reached in a class action lawsuit filed against Defendant Johnson & Johnson Consumer Inc., now known as Kenvue Brands LLC ("Defendant" or "JJCI"). This lawsuit alleges that Defendant violated BIPA by collecting, storing, disclosing, and profiting from the biometric identifiers and/or biometric information of individuals who scanned their faces during a Skin360® skin assessment without first providing legally-required written disclosures and obtaining written consent.

The case is *Helene Melzer, et al., v. Johnson & Johnson Consumer Inc.*, No. 3:22−CV−03149 pending in the United States District Court for the District of New Jersey before the Honorable Michael A. Shipp. The proposed settlement is not an admission of wrongdoing by the Defendant, and the Defendant denies it violated the law. The Court has not decided who is right or wrong. Rather, to avoid the time, expense, and uncertainty of litigation, the parties have agreed to settle the lawsuit. The settlement has been preliminarily approved by the Court.

## Am I a Member of the Settlement Class?

You are a member of the Settlement Class if you performed a Neutrogena® Skin360® or Neostrata® Skin360® (collectively, "Skin360®") skin assessment via mobile application or web application, within the state of Illinois, between December 9, 2019 and May 5, 2023.

## What Can I Get From the Proposed Settlement?

If you believe you are a member of the Settlement Class, you can fill out a short Claim Form to be eligible to receive a payment from a $4.7 million Settlement Fund. The Settlement Fund will also be used to pay (a) the Settlement Administrator for the costs of distributing notice and settlement payments, and (b) attorneys' fees, costs, and expenses to Class Counsel, and service payments to the Class Representatives, if approved by the Court. Any remaining funds that cannot feasibly be distributed to the Settlement Class will be paid to a *cy pres* recipient to be approved by the Court.

Each Settlement Class Member who submits a timely, valid Claim Form will receive an equal payment from the Settlement Fund. The exact amount of the payment is unknown at this time as it depends on certain factors to be determined, including how many Settlement Class Members submit valid Claim Forms, and the amount of fees, expenses, and awards that may be approved by the Court. To receive a payment, you must submit a Claim Form by XXXXXX. You can file a Claim Form online here, or visit the website and download a Claim Form and submit it by email or mail. Visit the website below or call for more information on filing your claim.

The Settlement also requires Defendant to provide certain prospective relief, as explained in the

detailed Notice and Settlement Agreement at the website listed below.

## What Are My Rights and Options?

**File a claim.** The only way to get money is to fill out and submit a short Claim Form by **XXXXXX.** If the Court approves the proposed Settlement, you will be bound by all orders and judgments in the case.

**Do Nothing**. You will get no money, but will still be bound by all orders and judgments in the case.

**Exclude Yourself**. If you do not want money from the Settlement and want to keep your right to file your own lawsuit against Defendant and other Released Parties for any of the claims in the case, you must exclude yourself from the Settlement Class by XXXXX.

**Object.** You can object to the Settlement and Class Counsel's request for attorneys' fees and expenses, and the request for a service payment to the Class Representatives if you disagree with them by XXXXXX.

The Court has appointed lawyers from the firms of Parasmo Lieberman Law, Mazie Slater Katz & Freeman, LLC, and Schwartz Law PLLC to represent you as "Class Counsel." The lawyers will request to be paid from the Settlement Fund. You can hire your own lawyer, but you will need to pay your own legal fees.

The Court will hold a final hearing on the Settlement of this case at XXXX on XXXXX in Courtroom 5W of the United States District Court for the District of New Jersey, Trenton Division, Clarkson S. Fisher Building & U.S. Courthouse, 402 East State Street, Trenton, NJ 08608 (or at such other time or location as the Court may without further notice direct). You can go to this hearing, but you do not have to. If you want, you can hire your own attorney, at your own expense, to appear or speak for you at the hearing. The Court will hear any objections, determine if the Settlement is fair, and consider Class Counsels' request for attorneys' fees of up to one third of the Settlement Fund, plus reimbursement of reasonable costs and expenses, and service payments to the Class Representatives in an amount up to $5,000. Any money not awarded will stay in the Settlement Fund to pay Class Members who file valid claims.

## How Do I Get More Information?

This notice is only a summary. For information, including the Claim Form, the Settlement Agreement, other legal documents, and instructions on how to exclude yourself or object, visit www.Skin360BIPASettlement.com or contact the Settlement Administrator at _____. **Please do not attempt to contact the Court, any Clerk of the Court, or Defendant about this settlement notice.**

# EXHIBIT D


You May Be Entitled to a Cash Payment From a Class Action Settlement if You Performed a Neutrogena® Skin360® or Neostrata® Skin360® Skin Assessment While in Illinois Through a Mobile or Web App, Between December 9, 2019 and May 5, 2023.
LEARN MORE


You May Be Entitled to a Cash Payment From a Class Action Settlement if You Performed a Neutrogena® Skin360® or Neostrata® Skin360® Skin Assessment While in Illinois Through a Mobile or Web App, Between December 9, 2019 and May 5, 2023.
LEARN MORE

# EXHIBIT E

**YOU MAY BE ENTITLED TO A CASH PAYMENT FROM A CLASS ACTION SETTLEMENT IF YOU PERFORMED A NEUTROGENA® SKIN360® OR NEOSTRATA® SKIN360® SKIN ASSESSMENT, WHILE IN ILLINOIS, THROUGH A MOBILE APPLICATION OR WEB APPLICATION, BETWEEN DECEMBER 9, 2019 AND MAY 5, 2023.**

XXX, IL [INSERT DATE], 2026 /PRNewswire/ -- The following notice is being issued by the Court-approved Settlement Administrator and has been authorized by the U.S. District Court for the District of New Jersey, in *Helene Melzer, et al., v. Johnson & Johnson Consumer Inc.*, No. 3:22−CV−03149.

A proposed settlement has been reached in a class action lawsuit filed against Defendant Johnson & Johnson Consumer Inc., now known as Kenvue Brands LLC ("Defendant" or "JJCI"). This lawsuit alleges that Defendant violated BIPA by collecting, storing, disclosing, and profiting from the biometric identifiers and/or biometric information of individuals who scanned their faces during a Skin360® skin assessment without first providing legally-required written disclosures and obtaining written consent.

The case is pending in the United States District Court for the District of New Jersey before the Honorable Michael A. Shipp. The proposed settlement is not an admission of wrongdoing by the Defendant, and the Defendant denies it violated the law. The Court has not decided who is right or wrong. Rather, to avoid the time, expense, and uncertainty of litigation, the parties have agreed to settle the lawsuit. The settlement has been preliminarily approved by the Court.

## Am I a Member of the Settlement Class?

You are a member of the Settlement Class if you performed a Neutrogena® Skin360® or Neostrata® Skin360® (collectively, "Skin360®") skin assessment via mobile application or web application, within the state of Illinois, between December 9, 2019 and May 5, 2023.

## What Can I Get From the Proposed Settlement?

If you believe you are a member of the Settlement Class, you can fill out a short Claim Form to be eligible to receive a payment from a $4.7 million Settlement Fund. The Settlement Fund will also be used to pay (a) the Settlement Administrator for the costs of distributing notice and settlement payments, and (b) attorneys' fees, costs, and expenses to Class Counsel, and service payments to the Class Representatives, if approved by the Court.

Each Settlement Class Member who submits a timely, valid Claim Form will receive an equal payment from the Settlement Fund. The exact amount of the payment is unknown at this time as it depends on certain factors to be determined, including how many Settlement Class Members submit valid Claim Forms, and the amount of fees, expenses, and awards that may be approved by the Court. To receive a payment, you must submit a Claim Form by XXXXXX. You can file a Claim Form online here, or visit the website and download a Claim Form and submit it by email or mail. Visit the website below or call for more information on filing your claim.

The Settlement also requires Defendant to provide certain prospective relief, as explained in the detailed Notice and Settlement Agreement at the website listed below.

## What Are My Rights and Options?

**File a claim.** The only way to get money is to fill out and submit a short Claim Form by **XXXXXX.** If the Court approves the proposed Settlement, you will be bound by all orders and judgments in the case.

**Do Nothing**. You will get no money, but will still be bound by all orders and judgments in the case.

**Exclude Yourself**. If you do not want money from the Settlement and want to keep your right to file your own lawsuit against Defendant and other Released Parties for any of the claims in the case, you must exclude yourself from the Settlement Class by XXXXX.

**Object.** You can object to the Settlement and Class Counsel's request for attorneys' fees and expenses, and the request for a service payment to the Class Representatives if you disagree with them by XXXXXX.

The Court has appointed lawyers from the firms of Parasmo Lieberman Law, Mazie Slater Katz & Freeman, LLC, and Schwartz Law PLLC to represent you as "Class Counsel." The lawyers will request to be paid from the Settlement Fund. You can hire your own lawyer, but you will need to pay your own legal fees.

The Court will hold a final hearing on the Settlement of this case at XXXX on XXXXX in Courtroom 5W of the United States District Court for the District of New Jersey, Trenton Division, Clarkson S. Fisher Building & U.S. Courthouse, 402 East State Street, Trenton, NJ 08608 (or at such other time or location as the Court may without further notice direct). You can go to this hearing, but you do not have to. If you want, you can hire your own attorney, at your own expense, to appear or speak for you at the hearing. The Court will hear any objections, determine if the Settlement is fair, and consider Class Counsel's request for attorneys' fees of up to one third of the Settlement Fund, plus reimbursement of reasonable costs and expenses, and service payments to the Class Representatives in an amount up to $5,000. Any money not awarded will stay in the Settlement Fund to pay Class Members who file valid claims.

## How Do I Get More Information?

This notice is only a summary. For information, including the Claim Form, the Settlement Agreement, other legal documents, and instructions on how to exclude yourself or object, visit www.Skin360BIPASettlement.com or contact the Settlement Administrator at _____. **Please do not attempt to contact the Court, any Clerk of the Court, or Defendant about this settlement notice.**

###

Source: Settlement Administrator
Contact: 1-XXX-XXX-XXXX

# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HELENE MELZER, CHRISTINE BOROVOY, ANDY SAJNANI, and PATRICIA BIEWALD, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JOHNSON & JOHNSON CONSUMER INC.,<br><br>Defendant. | No. 3:22−CV−03149 −MAS−TJB<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

This matter having come before the Court on Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Motion"), the Court having reviewed in detail and considered the Motion and memorandum in support of the Motion, the Settlement Agreement and Release (the "Settlement Agreement" or "Agreement") between Plaintiffs and Defendant Johnson & Johnson Consumer Inc. n/k/a Kenvue Brands LLC, and all other papers that have been filed with the Court related to the Settlement Agreement, including all exhibits and attachments to the Motion and the Settlement Agreement, **IT IS HEREBY ORDERED** as follows:

1. This Order incorporates by reference the definitions in the Agreement, and all terms used in this Order shall have the same meanings as set forth in the Agreement.

2. This Court has jurisdiction over this Action, Plaintiffs Helene Melzer, Christine Borovoy, Andy Sajnani, and Patricia Biewald ("Plaintiffs"), all Settlement Class Members, Defendant Johnson & Johnson Consumer Inc. n/k/a Kenvue Brands LLC ("Defendant" or "JJCI"),

and any party to any agreement that is part of or related to the Settlement. Venue is proper in this District.

3. The Settlement is the product of non-collusive arm's-length negotiations between experienced counsel who were thoroughly informed of the strengths and weaknesses of the Action, including through significant investigation, discovery, and motion practice, and was reached with the assistance of an experienced mediator, the Honorable Wayne R. Andersen (Ret.). The Settlement confers substantial benefits upon the Settlement Class and avoids the costs, uncertainty, delays, and other risks associated with continued litigation, trial, and/or appeal. The Settlement falls within the range of possible recovery, compares favorably with the potential recovery when balanced against the risks of continued litigation, does not grant preferential treatment to Plaintiffs, their counsel, or any subgroup of the Settlement Class, and has no obvious deficiencies.

4. The Court preliminarily approves the Settlement Agreement and the terms embodied therein as being fair, reasonable, and adequate, and finds that it otherwise meets the criteria for approval, subject to further consideration at the Final Approval Hearing described below, and warrants issuance of notice to the Settlement Class.

5. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court finds, upon preliminary evaluation and for purposes of Settlement only, that it will likely be able to certify the Settlement Class as follows:

> All persons who, while in Illinois, performed a Skin360 skin assessment using any version of Skin360, including Neutrogena Skin360, Neostrata Skin360, and any Skin360 collaborations with other entities, whether via mobile application or web application, between December 9, 2019 and May 5, 2023 ("Settlement Class").

Excluded from the Settlement Class are (a) Defendant, its subsidiaries, parent, and other affiliate entities, and all employees thereof; (b) the Judges presiding over this Action and their immediate family members and staff; (c) Class Counsel and Defendant's Counsel; (d) Persons who properly

execute and file a timely request for exclusion from the Settlement Class; and (e) the successors or assigns of any excluded Persons.

6. The Court preliminarily finds that the Settlement is likely to receive final approval and the Settlement Class will likely be certified for settlement purposes only. The Court concludes that the Settlement Class satisfies the requirements of Rule 23(a) and (b)(3): (a) the Settlement Class is so numerous that joinder of all Settlement Class Members in the Action is impracticable; (b) there are questions of law and fact common to the Settlement Class that predominate over any individual questions; (c) the claims of the Plaintiffs are typical of the claims of the Settlement Class; (d) Plaintiffs and Class Counsel have and will continue to fairly and adequately represent and protect the interests of the Settlement Class; and (e) a class action is superior to all other available methods for the fair and efficient adjudication of the controversy. Defendant retains all rights to assert that the Action may not be certified as a class action, other than for settlement purposes.

7. Defendant shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 *et seq.* ("CAFA") no later than ten (10) calendar days following the filing of the Settlement Agreement with the Court. No later than seven (7) calendar days before the Final Approval Hearing, Defendant shall cause to be served on Class Counsel and filed with the Court proof, by affidavit or declaration, regarding compliance with 28 U.S.C. § 1715(b).

8. The Court appoints Grace E. Parasmo and Yitzchak H. Lieberman of Parasmo Lieberman Law, Matthew R. Mendelsohn of Mazie Slater Katz & Freeman, LLC, and Allen Schwartz of Schwartz Law PLLC as Class Counsel, having determined that the requirements of Rule 23(g) of the Federal Rules of Civil Procedure are satisfied by this appointment.

9. The Court hereby appoints Plaintiffs Helene Melzer, Christine Borovoy, Andy Sajnani, and Patricia Biewald to serve as Class Representatives for settlement purposes only on behalf of the Settlement Class.

10. The Court recognizes that, pursuant to the Settlement Agreement, Defendant retains all rights to object to the propriety of class certification in the Litigation in all other contexts and for all other purposes should the Settlement not be finally approved. Therefore, as more fully set forth below, if the Settlement is not finally approved, and the Litigation resumes, the Court's preliminary findings regarding the propriety of class certification shall be of no further force or effect whatsoever, and this Order will be vacated in its entirety.

11. The Court approves the form and content of the Class Notice. The Court finds that the sending of the Class Notice substantially in the manner and form set forth in the Agreement satisfies due process under the U.S. Constitution and Rule 23 of the Federal Rules of Civil Procedure. The foregoing is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Settlement Class Members entitled to such Class Notice. The Parties may, by agreement, revise the Class Notice and Claim Form in ways that are not material, or in ways that are appropriate to update those documents for purposes of accuracy, readability, or formatting for publication.

12. The Court hereby appoints Eisner Advisory Group LLC to serve as the Settlement Administrator to supervise and administer the notice procedures, administer the claims processes, distribute payments according to the processes and criteria set forth in the Settlement Agreement, and perform any other duties of the Settlement Administrator that are reasonably necessary or provided for in the Settlement Agreement. This includes the following:

a) Within thirty (30) days after entry of this Preliminary Approval Order, the Settlement Administrator shall cause (i) the sending of direct Notice, comprised of electronic (e-mail) Notice to those Class Members whose e-mail addresses can be identified in JJCI's business records through a reasonable effort; (ii) the geo-located Internet Publication Notice to be instituted; and (iii) a statewide press release to be issued.

b) The Settlement Administrator may send a reminder by e-mail to Settlement Class Members who do not file claims before the Claims Deadline.

c) The Settlement Administrator shall provide a toll-free number to field questions from Settlement Class Members, and set up a dedicated Settlement Website that will include the Long Form Notice, Claim Form, Settlement Agreement and other relevant materials.

d) No later than ten (10) days before the Final Approval Hearing, the Settlement Administrator shall file with the Court, through Class Counsel, an affidavit setting forth the details of the notice provided pursuant to this Order and the Settlement Agreement.

13. The Claim Form is approved for dissemination to the Settlement Class Members, subject to any non-material changes to which the parties may agree.

14. If Settlement Class Members do not wish to participate in the Settlement Class, Settlement Class Members may exclude themselves by submitting an exclusion request by email or first-class mail to the Settlement Administrator. All requests by Settlement Class Members to be excluded from the Settlement Class must be made in writing and comply with all the requirements set forth herein, and postmarked or emailed no later than ninety (90) days after entry of this Order. The Settlement Administrator, through Class Counsel, shall file with the Court the names and addresses of all such persons and entities requesting exclusion no later than seven (7)

days prior to the Final Approval Hearing, and the list of persons and entities deemed by the Court to have excluded themselves from the Settlement Class will be attached as an exhibit to the Final Approval Order.

15. If a Settlement Class Member wishes to be excluded from the Settlement Class, the Settlement Class Member's written exclusion request shall state in writing (i) the case name and number; (ii) the individual's full name, mailing address, email address, and telephone number; (iii) a statement that they used Skin360 within the state of Illinois between December 9, 2019 and May 5, 2023; (iv) a statement that they want to be excluded from the Settlement Class; and (v) the individual's signature.

16. No exclusion request will be valid unless all of the information described above is included. All Settlement Class Members who exclude themselves from the Settlement Class will not be eligible to receive any benefits under the Settlement, will not be bound by any further orders or judgments entered for or against the Settlement Class, and will preserve their ability to independently pursue any claims they may have against Defendant. Only one individual may be excluded from the Settlement Class per each exclusion request; no group opt-outs shall be permitted.

17. Any Settlement Class Member who has not previously submitted an exclusion request in accordance with the terms of this Agreement may appear at the Final Approval Hearing to argue that the proposed Settlement should not be approved. However, in order to be heard at the Final Approval Hearing concerning an objection, the Settlement Class Member must make an objection in writing and file it with the Court within ninety (90) days after entry of this Order.

a) In order to be considered valid, the objection must set forth and contain: (i) the case name and number; (ii) the objector's full name, mailing address, email address, and

telephone number; (iii) a statement that he or she used Skin360 within the state of Illinois between December 9, 2019 and May 5, 2023; (iv) all grounds for the objection, accompanied by any legal and factual support for the objection; (v) the identity of all counsel representing the objector, regardless of whether counsel will appear at the Final Approval Hearing; (vi) the identification of any other objections he/she has filed, or has had filed on his/her behalf, in any other class action cases in the last five years; (vii) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; (viii) the objector's signature on the written objection (an attorney's signature shall not be deemed sufficient); and (ix) a declaration under penalty of perjury that the information provided by the objector and objector's counsel is true and correct.

b) For an objection to be considered by the Court, the Settlement Class Member making an objection, on or before XX XX XXXX, must (i) file a valid objection with the Court; (ii) file copies of all documents or writings that the objector desires the Court to consider; and (iii) send copies of such papers via United States mail, hand delivery, or overnight delivery to both Class Counsel and Defendant's Counsel. A copy of the objection must also be mailed to the Settlement Administrator at the address that the Settlement Administrator will establish to receive exclusion requests or objections, Claim Forms, and any other communication relating to this Settlement.

c) Any Settlement Class Member who does not make his or her objections in the manner provided herein shall be deemed to have waived such objections and shall forever be foreclosed from making any objections to the fairness, reasonableness, or adequacy of the proposed Settlement and the judgment approving the Settlement.

18. The Court hereby schedules the Final Approval Hearing for______________________________, at ______________ a.m./p.m. in Courtroom 5W of the United States District Court for the District of New Jersey, Trenton Division, Clarkson S. Fisher Building & U.S. Courthouse 402 East State Street, Trenton, NJ 08608, to (i) determine whether the proposed Settlement should be approved as fair, reasonable and adequate; (ii) determine whether a judgment should be entered approving such Settlement; (iii) rule on Class Counsel's application for attorneys' fees, expenses, and costs, and for service payments to the Class Representatives; (iv) consider any properly filed objections; and (v) consider any other matters necessary in connection with the final approval of the Settlement Agreement. The Court may adjourn the Final Approval Hearing without further notice to Settlement Class Members.

19. Class Counsel's application for an award of attorneys' fees, expenses, and costs and for service payments to the Class Representatives will be considered separately from the fairness, reasonableness, and adequacy of the Settlement. Any appeal from any order relating solely to Class Counsel's application for an award of attorneys' fees, expenses, and costs, and/or to Class Counsel's application for service payments to the Class Representatives, or any reversal or modification of any such order, shall not operate to terminate or cancel the Settlement or to affect or delay the finality of a judgment approving the Settlement.

20. The Parties are directed to take all necessary and appropriate steps to establish the means necessary to implement the Settlement Agreement according to its terms should it be finally approved.

21. Papers in support of final approval of the Settlement and Class Counsel's application for attorneys' fees, expenses, and costs and for service payments to the Class Representatives shall be filed no later than fourteen (14) days prior to the objection and exclusion deadline.

22. Settlement Class Members shall have until one hundred and five (105) consecutive days from the date of this Order to submit claim forms. Claim forms must be received by that date to be considered timely.

23. If the Settlement fails to become effective in accordance with its terms, or if the Final Approval Order is not entered or is reversed or vacated on appeal, this Order shall be null and void, the Settlement Agreement shall be deemed terminated, and the Parties shall return to their positions without any prejudice, as provided for in the Settlement Agreement.

24. The fact and terms of this Order or the Settlement, all negotiations, discussions, drafts and proceedings in connection with this Order or the Settlement, and any act performed or document signed in connection with this Order or the Settlement, shall not, in this or any other Court, administrative agency, arbitration forum, or other tribunal, constitute an admission, or evidence, or be deemed to create any inference (i) of any acts of wrongdoing or lack of wrongdoing, (ii) of any liability on the part of Defendant to Plaintiffs, the Settlement Class, or anyone else, (iii) of any deficiency of any claim or defense that has been or could have been asserted in this Action, (iv) of any damages or absence of damages suffered by Plaintiffs, the Settlement Class, or anyone else, or (v) that any benefits obtained by the Settlement Class under the Settlement represent the amount that could or would have been recovered from Defendant in this Action if it were not settled at this time. The fact and terms of this Order or the Settlement, and all negotiations, discussions, drafts, and proceedings associated with this Order or the Settlement, including the judgment and the release of the Released Claims provided for in the Settlement Agreement, shall not be offered or received in evidence or used for any other purpose in this or any other proceeding in any court, administrative agency, arbitration forum, or other tribunal, except as necessary to enforce the terms of this Order, the Final Approval Order, and/or the Settlement.

25. The Court retains exclusive jurisdiction over the Action to consider all further matters arising out of or connected with the Settlement.

26. Pending further order of the Court, all litigation activity and events, except those contemplated by this Order or in the Settlement Agreement, are hereby STAYED, and all hearings, deadlines, and other proceedings in the Litigation, except the Final Approval Hearing and the matters set forth in this Order, are VACATED.

**IT IS SO ORDERED on this ________ day of ____________, 2026.**

______________________________________
HONORABLE MICHAEL A. SHIPP

# EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

HELENE MELZER, CHRISTINE BOROVOY, ANDY SAJNANI, and PATRICIA BIEWALD, individually and on behalf of all those similarly situated,

Plaintiffs,

v.

JOHNSON & JOHNSON CONSUMER INC.,

Defendant.

No. 3:22−CV−03149 −MAS−TJB

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

This matter having come before the Court pursuant to the Court's Preliminary Approval Order dated ______ (ECF No. __) ("Preliminary Approval Order"), and on (a) Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement (the "Motion"), including the Motion and memorandum in support of the Motion, the Settlement Agreement and Release (the "Settlement Agreement" or "Agreement") between Plaintiffs and Defendant Johnson & Johnson Consumer Inc. n/k/a Kenvue Brands LLC, and all exhibits and attachments to the Motion and the Settlement Agreement, and (b) Class Counsel's Fee and Expenses Application and request for Service Payments to the Class Representatives. The Court having read and considered the Settlement Agreement and its exhibits, and all papers that have been filed with the Court related to the Settlement Agreement and proceedings had herein, **IT IS HEREBY ORDERED** as follows:

1. This Order incorporates by reference the definitions in the Agreement, and all terms used in this Order shall have the same meanings as set forth in the Agreement.

2. This Court has jurisdiction over this Action, Plaintiffs Helene Melzer, Christine Borovoy, Andy Sajnani, and Patricia Biewald ("Plaintiffs"), all Settlement Class Members, Defendant Johnson & Johnson Consumer Inc. n/k/a Kenvue Brands LLC ("Defendant" or "JJCI"), and any party to any agreement that is part of or related to the Settlement. Venue is proper in this District.

3. Without in any way affecting the finality of this Final Approval Order, this Court hereby retains jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreement and of this Final Approval Order, and for any other necessary purpose.

4. On [DATE], the Court granted preliminary approval to the proposed class action settlement set forth in the Settlement Agreement between Plaintiffs and JJCI. The Court also provisionally certified the Settlement Class for settlement purposes, approved the procedure for giving Class Notice to the members of the Settlement Class, and set a Final Approval Hearing to take place on [DATE], at [TIME].

5. On [DATE] at [TIME], the Court held a duly noticed Final Approval Hearing to consider: (1) whether the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate; (2) whether a judgment should be entered dismissing the Plaintiffs' Second Amended Complaint with prejudice and against all persons or entities who are Settlement Class Members herein who have not requested exclusion from the Settlement Class; and (3) whether and in what amount to award counsel for the Settlement Class as attorneys' fees, costs, and expenses, and whether and in what amount to award Service Payments to the Class Representatives.

6. The Court finds that the Settlement Agreement was negotiated at arm's length by experienced counsel who were fully informed of the facts and circumstances of this Action and of

the strengths and weaknesses of their respective positions. The Court finds that the Settlement Agreement was reached after the Parties had engaged in extensive settlement discussions and after the exchange of information, including information about the size and scope of the Settlement Class. Counsel for the Parties were therefore well positioned to evaluate the benefits of the Settlement Agreement, considering the expense, risk, and uncertainty of protracted litigation.

7. The Court finds, for settlement purposes only, that the prerequisites for a class action under Federal Rule of Civil Procedure 23 have been satisfied for each Settlement Class Member in that: (a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of Plaintiffs are typical of the claims of the Settlement Class they seek to represent; (d) Plaintiffs have and will continue to fairly and adequately represent the interests of the Settlement Class for purposes of entering into the Settlement Agreement; (e) the questions of law and fact common to the Settlement Class Members predominate over any questions affecting any individual Settlement Class Member; (f) the Settlement Class is ascertainable; and (g) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy.

8. Pursuant to Federal Rule of Civil Procedure 23, this Court hereby finally certifies the Settlement Class, as identified in the Settlement Agreement: All persons who, while in Illinois, performed a Skin360 skin assessment using any version of Skin360, including Neutrogena Skin360, Neostrata Skin360, and any Skin360 collaborations with other entities, whether via mobile application or web application, between December 9, 2019 and May 5, 2023. The Settlement Class excludes the following: (a) Defendant, its subsidiaries, parent, and other affiliate entities, and all employees thereof; (b) the Judges presiding over this Action and their immediate

family members and staff; (c) Class Counsel and Defendant's Counsel; (d) Persons who properly execute and file a timely request for exclusion from the Settlement Class; and (e) the successors or assigns of any excluded Persons.

9. The Court finds that the notice provisions set forth in the Class Action Fairness Act, 28 U.S.C. § 1715, were complied with in this matter.

10. For settlement purposes only, the Court finally appoints Grace E. Parasmo and Yitzchak H. Lieberman of Parasmo Lieberman Law, Matthew R. Mendelsohn of Mazie Slater Katz & Freeman, LLC, and Allen Schwartz of Schwartz Law PLLC, as Class Counsel for the Settlement Class.

11. For settlement purposes only, the Court finally designates Helene Melzer, Christine Borovoy, Andy Sajnani, and Patricia Biewald as the Class Representatives.

12. The Court makes the following findings on notice to the Settlement Class: The Court finds that the distribution of the Class Notice, as provided for in the Settlement Agreement and previously approved and directed by the Court in its Preliminary Approval Order, has been implemented by the Settlement Administrator and the Parties. The Court finds that such Notice Program, including the approved forms of notice, (i) constituted the best practicable notice under the circumstances to Settlement Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of, among other things, the pendency of the Action, the nature and terms of the proposed Settlement, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice, and (iv) complied fully with Federal Rule of Civil Procedure 23 and the requirements of due process under the U.S. Constitution and any other

applicable law.

13. All timely objections submitted by Settlement Class Members have been fully considered by the Court and are overruled.

14. The Motion is hereby GRANTED, and the Settlement Agreement is finally approved in all respects as fair, reasonable, and adequate. The terms and provisions of the Settlement Agreement, including all Exhibits thereto, have been entered into in good faith and are hereby fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, each of the Parties and the Settlement Class Members.

15. The Parties are hereby directed to implement the Settlement Agreement according to its terms and provisions. The Settlement Administrator is directed to provide Claim Settlement Payments to those Settlement Class Members who submitted valid, timely, and complete Claims.

16. Upon entry of this Final Approval Order, all members of the Class who did not validly and timely submit exclusion requests in the manner provided in the Settlement Agreement shall, by operation of this Final Approval Order, have fully, finally and forever released, relinquished and discharged Defendant and the Released Parties from the Released Claims as set forth in the Settlement Agreement.

17. Furthermore, all members of the Class who did not validly and timely submit exclusion requests in the manner provided in the Settlement Agreement are hereby permanently barred and enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in, conducting or continuing, either directly or in any other capacity, either individually or as a class, any action or proceeding in any court, agency, arbitration, tribunal or jurisdiction, asserting any claims released pursuant to the Settlement Agreement, or seeking an award of fees and costs of any kind or nature whatsoever and pursuant to any authority or theory

whatsoever, relating to or arising from the Action or that could have been brought in the Action and/or as a result of or in addition to those provided by the Settlement Agreement.

18. The terms of the Settlement Agreement and of this Final Approval Order, including all Exhibits thereto, shall be forever binding on, and shall have res judicata and preclusive effect in, all pending and future lawsuits or other proceedings maintained by Plaintiffs and all other Settlement Class Members, as well as their heirs, executors and administrators, successors, and assigns.

19. The Releases, which are set forth in the Settlement Agreement and are expressly incorporated herein by reference in all respects, are effective as of the date of this Final Approval Order; and the Released Parties (as that term is defined in the Settlement Agreement) are forever released, relinquished, and discharged by the Settlement Class Members (as set forth in the Settlement Agreement) from all Released Claims (as set forth in the Settlement Agreement).

20. Neither this Final Approval Order, nor the Settlement Agreement, nor the payment of any consideration in connection with the Settlement, shall be construed or used as an admission or concession by or against Defendant or any of the other Released Parties or any fault, omission, liability, or wrongdoing, or of the validity of any of the Released Claims as set forth in the Settlement Agreement. This Final Approval Order is not a finding of the validity or invalidity of any claims in this litigation or a determination of any wrongdoing by Defendant or any of the other Released Parties. The Final Approval of the Settlement does not constitute any position, opinion, or determination of this Court, one way or another, as to the merits of the claims or defenses of Plaintiffs, the Settlement Class Members, or Defendant.

21. This Action, including all individual claims and class claims presented herein, is hereby dismissed on the merits and with prejudice against Plaintiffs and all other Settlement Class

Members, without fees or costs to any party except as otherwise provided in the Settlement Agreement. Finding that there is no just reason for delay, the Court orders that this Final Approval Order shall constitute a final judgment.

22. [To the extent this Order does not address Class Counsel's motion for an award of attorneys' fees, costs, and expenses, and Service Payments for the Class Representatives, such motion will be addressed in a separate Order].

**IT IS SO ORDERED on this ____ day of ________________, 2026.**

______________________________________
HONORABLE MICHAEL A. SHIPP

# EXHIBIT 2

# PARASMO LIEBERMAN LAW
# FIRM RESUME

Parasmo Lieberman Law is a nationally recognized plaintiffs' class action firm with offices in California and New York. The Firm focuses its practice on consumer data privacy and security, consumer protection and false advertising, and wage and hour law. The Firm is committed to vigorously pursuing cases of genuine public importance, championing the rights of consumers, employees, and other aggrieved individuals against well-resourced corporate defendants, and achieving meaningful results for the classes it represents. The Firm's attorneys share a common goal: to pursue justice, level the playing field, and effect corporate change.

## Selected Class Actions

***Halim v. Charlotte Tilbury Beauty Inc.,*** No. 1:23-cv-00094 (Illinois Chancery Div., Cook Cnty) (Appointed class counsel; court granted final approval of a $2,925,000 settlement and prospective business practice changes for a class of consumers asserting claims under the Illinois Biometric Information Act.)

***King v. Bumble Trading, Inc.,*** No. 5:18-cv-06868-NC (N.D. Cal.) (Appointed class counsel; court granted final approval of $22.5 million settlement resolving claims on behalf of nationwide and California subclasses alleging violations of California Automatic Renewal Law and the New York Dating Services Law.)

***Slovin v. Sunrun, Inc.,*** No. 4:15-cv-05340-YGR (N.D. Cal.) (Appointed class counsel; court approved $5.5 million class settlement in consumer class action for violations of the Telephone Consumer Protection Act's auto-dialer and Do-Not-Call provisions.)

***Lomeli, et al. v. SeaWorld Parks and Entertainment, Inc.,*** No. 37-2023-00008529-CU-BT-CTL (San Diego Cnty. Super. Ct.) (Appointed class counsel; court finally approved $1.5 million settlement in class action alleging unfair competition and false adverting claims premised on failure to comply with California's Automatic Renewal Law)

***S.A. v. Natural Cycles USA Corp.***, No. 3:25-cv-10421-WHO (N.D. Cal.) (Class action alleging violations of California privacy statutes arising from the collection and disclosure of sensitive reproductive and health related information through a digital contraceptive application, without consent.)

***VanCleave v. Abbott Laboratories***, No. 19-cv-345045 (Santa Clara Cnty. Super. Ct.) (Appointed class counsel in pending class action alleging claims under the California Unfair Competition Law and California Consumer Legal Remedies Act for misleading health and wellness claims on the labeling of children's nutrition drinks)

***Herrera v. Legoland California LLC***, No. 25CU026472C (San Diego Cnty., Cal. Super. Ct.) (Class action alleging unfair competition, false advertising, and related statutory violations arising from the automatic renewal of annual passes to Legoland California. Plaintiffs seek restitution, injunctive relief, and compliance with California consumer-protection statutes.)

## Attorney Biographies

### Grace E. Parasmo

Ms. Parasmo has nineteen years of experience in class action and complex litigation. She has served as counsel in dozens of class actions across the country resulting in hundreds of millions of dollars in relief for class members. She has substantial experience on a wide range of class actions and group litigation, including deceptive and false advertising, privacy and data security, wage and hour, antitrust, securities fraud, and shareholder derivative litigation.

Prior to co-founding Parasmo Lieberman Law, Ms. Parasmo was a partner at KamberLaw, LLC, where her practice focused on consumer protection and technology-related class actions, including early and significant litigation concerning online tracking, digital advertising practices, and consumer privacy. She is a former member of the International Association of Privacy Professionals, and she obtained an Information Privacy Professional certification. She also lectures on issues relating to online privacy, consumer protection, and technology law.

Ms. Parasmo received her J.D. from New York Law School in 2006, where she served as Executive Articles Editor of the *New York Law School Law Review*. She was a judicial extern to the Honorable Burton R. Lifland, former Chief Bankruptcy Judge for the Southern District of New York. She earned her B.A., *cum laude*, with Departmental Honors, from Fordham University.

Before entering private practice, Ms. Parasmo worked as a consumer advocate with the New York State Attorney General's Office, Bureau of Internet and Technology and later the Bureau of Consumer Fraud and Protection, where she mediated consumer complaints and recommended potential enforcement actions.

Ms. Parasmo is admitted to practice in California and New York and before the United States District Courts for the Northern, Southern, and Central Districts of California and the Southern and Eastern Districts of New York.

## Selected Matters

*Consumer Protection, Privacy, and Technology*

***In Re: iPhone/iPad Application Consumer Privacy Litigation***, MDL No. 2250 (N.D. Cal.) (class action involving the interaction of Apple mobile devices and mobile apps to transmit consumers' personal information and geolocation data to third-party advertisers and analytics networks without consent)

***In Re Hulu Privacy Litigation***, No. 3:11-CV-03764-LB (N.D. Cal.) (class action alleging violations of the federal Video Privacy Protection Act arising from company's unauthorized disclosure of consumers' video viewing information to third-party advertisers, metrics companies, and social networks)

***In Re Clearspring Flash Cookie Litig.,*** No. 10-cv-05948-GW*;* ***In Re Quantcast Advertising Cookie Litig.,*** 10-cv-05484-GW-JCG (C.D. Cal.) (class actions that resulted in landmark settlements including *cy pres* funds and injunctive relief that enjoined third-party ad and analytics companies' repurposing of consumers' Adobe Flash software to override browser privacy and security settings to track consumers).

***Kim v. Space Pencil d/b/a Kissmetrics***, No. 3:11-cv-03796-LB (N.D. Cal. 2011) (class action arising out of third-party analytics company's repurposing of consumers' computer resources to override their browser privacy and security settings to track consumers; settlement resulted in injunctive relief for class that stopped the complained-of tracking activities).

***Valentine v. NebuAd,*** No. C 08-05113 TEH (N.D. Cal. 2011) (class action alleging violation of the Electronic Communications Privacy Act arising out of online ad-serving company's use of deep packet inspection for behavioral targeting of online ads; obtained a *cy pres* fund for ECPA violations.)

***Bose v. Interclick, Inc.,*** (S.D.N.Y. 2011) (class action alleging violations of the Computer Fraud and Abuse Act and New York General Business Law, Section 349 against online ad network that used flash cookies and history sniffing code to track consumer's browsing habits, invade their privacy, and collect their personal information).

***Guido v. L'Oréal U.S.A., Inc.,*** No. 11-CV-01067 (C.D. Cal.) (class action that resulted in class settlement that required L'Oréal USA to comply with the Federal Hazardous Substances Act and its corresponding regulations for classifying products as flammable pursuant to 16 C.F.R. 1500.3 for all Garnier Fructis Hair-Styling products in the Sleek & Shine product line).

*Wage and Hour*

***Braun and Hummel v. Wal-Mart Stores, Inc***., Nos. 3127 and 3757 (Court of Common Pleas, Philadelphia County) (Plaintiffs obtained a $78 million jury verdict against Wal-Mart and an express finding that Wal-Mart acted in bad faith in failing to pay class members for missed rest breaks and off-the-clock work. The verdict was hailed as the largest jury verdict in the Commonwealth of Pennsylvania in 2006. On October 3, 2007, the Court of Common Pleas ordered Wal-Mart to pay an additional $62.3 million in statutory damages to class members. On November 14, 2007, a judgment for in excess of $187 million was entered by the trial judge against Wal-Mart. On June 1, 2011, the Superior Court of Pennsylvania affirmed the $150 million judgment against Wal-Mart, and the three-judge panel held that there was sufficient evidence in the record to conclude that Wal-Mart breached its contract with its hourly employees and violated the state's labor laws. Thereafter, Wal-Mart sought leave to appeal to the Pennsylvania Supreme Court. The Pennsylvania Supreme Court affirmed the decisions of two lower courts and the unanimous class action jury verdict).

***Iliadis, et al. v. Wal-Mart Stores, Inc.***, No. MID-L-5498-02 (N.J. Sup. Ct., Middlesex Co.) (after class certification and further proceedings, a settlement was reached providing for injunctive relief and the payment by Wal-Mart of up to $28 million to hourly employees for unpaid rest and meal breaks and off-the-clock work).

## Yitzchak H. Lieberman

Yitzchak H. Lieberman is a co-founder of Parasmo Lieberman Law and has spent his career representing consumers in class actions across the country. His practice focuses on consumer data privacy and security, biometric privacy, consumer protection and false advertising, and consumer finance claims. He has obtained multi-million dollar settlements and meaningful changes in business practices in cutting-edge privacy and data security class actions. Prior to co-founding Parasmo Lieberman Law, Mr. Lieberman was a partner at KamberLaw, LLP, a consumer class action law firm.

Mr. Lieberman's analytical approach to complex litigation is informed by his unique academic background. In addition to his law degree from Boston University School of Law, he holds a Bachelor of Talmudic Law—a rigorous course of study grounded in textual analysis, principles of logic, and game theory—and studied ancient Hebrew and Aramaic texts. During law school, he served as a Judicial Intern for the Honorable David I. Schmidt, New York State Supreme Court, Kings County.

Mr. Lieberman is admitted to practice in California and New York and before the United States District Courts for the Northern, Central, and Southern Districts of California.

## Selected Matters

***In re Collecto, Inc. Telephone Consumer Protection Act (TCPA) Litigation,*** Master No. 1:14-md-2513-RGS (D. Mass) (TCPA class action alleging that third party debt collector placed calls to collect debts to cellular telephone numbers without an agreement with the creditor for whom it sought to collect the debt).

***Lofton v. Verizon,*** No. 13-cv-05665 (N.D. Cal.) (class action alleging violations of the TCPA against third party debt collectors who employed predictive dialers and recorded calls without consent).

***Wang v. Bank of America,*** No. CGC 12-526452 (Sup. Ct. San Fran. Cty.) (class action which resulted in 12,225 persons throughout California receiving compensation as a result of a dispute over the proper interpretation of a bank deposit agreement).

***Holmes v. NCO, Inc.,*** No. 3:10-cv-2543 (S.D. Cal.) (Fair Debt Collection Practices Act class action which resulted in over 1,000 persons whose credit reports were impacted to receive nearly the entire amount of possible damages recoverable, even after trial).

***Guido v. L'Oréal U.S.A., Inc.,*** No. 11-CV-01067 (C.D. Cal.) (class action that resulted in class settlement that required L'Oréal USA to comply with the Federal Hazardous Substances Act and its corresponding regulations for classifying products as flammable pursuant to 16 C.F.R. 1500.3 for all Garnier Fructis Hair-Styling products in the Sleek & Shine product line).

***In Re Hulu Privacy Litigation,*** No. 3:11-CV-03764-LB (N.D. Cal.) (class action alleging violations of the federal Video Privacy Protection Act arising from company's unauthorized disclosure of consumers' video viewing information to third-party advertisers, metrics companies, and social networks)

# EXHIBIT 3

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEPHEN ADKINS,
Plaintiff,

v.

FACEBOOK, INC.,
Defendant.

No. C 18–05982 WHA

**FINAL SETTLEMENT APPROVAL AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES**

## INTRODUCTION

Both sides seek final approval of a class action settlement and class counsel seek a large sum in fees and costs.

## STATEMENT

A coding error allowed hackers to break into the Facebook platform and pilfer the personal information of millions of users in the United States. This came to light in 2018, leading to a flurry of complaints. A prior order explained the coding vulnerability responsible for the data breach (Dkt. 153). In brief, if three particular features on the Facebook platform aligned simultaneously, "access tokens" became visible. Similar to a password, access tokens permitted

United States District Court
Northern District of California

access to accounts. The compromising of access tokens made millions of users accounts vulnerable to entry (Dkt. 193).

A consolidated complaint sought relief in the form of a credit monitoring service for the victims, in addition to compensatory, statutory, and punitive damages, and declaratory relief based on ten claims. To this end, counsel moved to certify a class of users whose information had been compromised. An order declined to certify a damages class but allowed an injunctive relief class. Users were left to pursue damages claims on their own but no one ever filed one (Dkt. 338 at 4). All but two of plaintiffs' claims were dismissed and by the time the case settled, only one named class representative remained out of the 11 plaintiffs involved in the case after consolidation. The terms of the settlement included commitments by Facebook to prevent future vulnerabilities related specifically to access tokens and consent to be independently monitored. More specifically, Facebook's security commitments include (Dkt. 315-5 at 27-29):

1. Tools to run integrity checks on updates
2. Tools for the detection of suspicious patterns in the generation and use of access tokens
3. Procedures to contain security incidents related to improper issuance of access tokens
4. Automatic alerts for suspicious activity in user growth metrics and reporting on that activity
5. Five years of annual SOC2 Type II security assessments of certain products related to security and vulnerability management and an agreement to report the results to the Court and class counsel
6. Processes that give applications related to access tokens only the capabilities to perform intended functions, including internal guidance to software engineers for selecting capabilities of applications using access tokens and automatic removal of access token capabilities for applications that do not use those capabilities over a 90-day period
7. Certification by Facebook that it eliminated the type of authentication proofs which made user credentials vulnerable
8. Commitment to employing at least one senior security executive who reports to Facebook's Board of Directors

9. Logging issuance and receipt of access tokens to facilitate detection and investigation of compromised access tokens

Class counsel also move for attorney's fees in the amount of $10,700,000 (based on a 1.253 multiplier), $1,210,900.75 in costs, a reserve of $15,000 for a data security vendor to monitor compliance with the settlement terms (by way of the SOC2 Type II assessments), and a $5,000 service award for plaintiff Stephen Adkins (Br. at 2–3).

**ANAYLSIS**

After the coding error in the Facebook platform exposed users to possible loss of personal information, at least ten civil actions were immediately filed in this district and consolidated. A previous order certified a class seeking injunctive relief but rejected certification of a damages class. A class settlement followed whereby Facebook agreed to maintain certain security fixes almost all of which Facebook would likely have maintained anyway. This order will approve the settlement as fair and adequate in light of the substantial risks of litigation. All damages claims have been preserved but none have been asserted anywhere by any of the millions potentially affected. This order will also grant reasonable attorney's fees and expenses for class counsel but not for other lawyers.

**1. PROPOSED CLASS SETTLEMENT FINAL APPROVAL**

Under FRCP 23(e), the Court must approve any settlement agreement that will bind absent class members. In reviewing a proposed settlement agreement, the district court must perform two tasks: (1) direct notice in a reasonable manner to all class members who would be bound by the proposal; and (2) approve the settlement only after a hearing and on finding that the terms of the agreement are fair, reasonable, and adequate. In determining if a settlement is fair, reasonable, and adequate, district courts take into account (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class

United States District Court
Northern District of California

members to the proposed settlement. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015).

A prior order approved the form, content, and planned distribution of the class notice. The claims administrator has fulfilled the notice plan. This order further finds that notice to class members was adequate. For the following reasons and for the reasons stated in the November 2020 order (Dkt. 314), the proposed class settlement is fair, reasonable, and adequate under FRCP 23(e).

In considering the strength of plaintiff's case, this order notes that what Facebook did wrong was not an intentional betrayal of its users for profit. At most Facebook was negligent in allowing a confluence of rare circumstances to open up access tokens to strangers and, arguably, being too slow to catch this vulnerability. The heart of this case was a software coding mistake. Given the many millions of lines of codes, Facebook cannot entirely rid its complex system of all risk of software coding errors. So, the relief obtained herein will not eliminate all future breaches or leaks. Though Facebook reports in supplemental briefing that no further breaches related to access tokens have occurred since putting the settlement measures into place, other intrusions of one sort or another will eventually recur.

Class counsel characterize their success achieved by settlement as "momentous." In the Court's view the success of the settlement seems modest as best and cosmetic at worst. This will be discussed further in connection with the motion for attorney's fees.

The benefit obtained, however, meets the threshold of adequacy in light of the above explained context, as well as the expense to the parties' and the drain on resources that would result from continued litigation.

These proceedings have been ongoing for more than two years and extensive discovery has been taken, including 20 depositions. There has been a motion to dismiss which was granted in part and denied in part, but no dispositive motions. This makes settlement appropriate given the limited relief that could be awarded even if the case were litigated all the way through trial.

One individual responded to the notice of class settlement. The objector claims her personal information was compromised and led to identity theft and phone malfunction.

United States District Court
Northern District of California

Facebook submitted a declaration stating the class notice administrator, Angeion Group, LLC, searched data provided by Facebook and could not verify that the objector was a class member (Dkt. 327-2 at 2). Angeion was unable to contact the objector with the email and phone number provided in the objection (Dkt. 327-2 at 2). The objection raises no points that warrant denial of settlement because the objector remains free under the settlement to independently pursue any claim for damages.

**2. ATTORNEY'S FEES AND COSTS**

In the class settlement agreement, Facebook agreed to pay attorney's fees and costs awarded by the Court to "Class Counsel" (Dkt. 315-5 at § 7.4):

> Facebook shall pay the attorneys' fees, costs, and expenses awarded by the Court to Class Counsel.

The agreement further defined "Class Counsel" as (Dkt. 315-5 at § 1.6):

> "Class Counsel" and "Lead Settlement Class Counsel" mean John Yanchunis of Morgan & Morgan Complex Litigation Group, Ariana Tadler of Tadler Law LLP, and Andrew Friedman of Cohen Milstein Sellers & Toll PLLC.

This definition tracked the definition in the class certification order that had appointed these very lawyers, describing them as "class counsel" (Dkt. 260 at 16).

This order will, accordingly, award all reasonable attorney's fees, costs, and expenses to class counsel but will not do so for lawyers other than class counsel.

Although most of the work appears to have been done by class counsel, the application includes time and expenses for 17 law firms and over 100 timekeepers, including law firms that represented one or more early plaintiffs (all but one of whom eventually withdrew or were dismissed). None of these other firms were ever designated as class counsel.

Applicants, however, answer that the work of class counsel was farmed out to many of these other firms, and therefore seek to include them, albeit after the fact. At the recent hearing, Attorney de Bartolomeo stated (Tr. ):

> [Counsel] may not have done as clear a job as we would have liked . . . for the judge of advising that there were going to be additional lawyers and law firms working on this case in addition to the

> appointed, I see it's ECF Number 72 which [counsel] submitted to the Court at the appointment time, advising that there was going to be committee structure and other firms would be working under the guidance and direction of the co-leads.
>
> So I would just point that out. So if the Court wants to consider that, [counsel] did advise that there would be additional lawyers.

(Dkt. 348, Tr. at 35). Therefore, applicants say, Facebook should pay the committee members for their work.

This is not quite what the record shows.

Under Rule 23, there is a difference between "class counsel" versus "interim counsel." Class counsel refers to counsel appointed at the time of class certification by the district court to represent the certified class through discovery, pretrial, trial, and appeal and must, where there are more than one applicant, be the counsel "best able to represent the interests of the class." By contrast, "interim counsel" refers to counsel "to act on behalf of a putative class before determining whether to certify the action as a class action." Interim counsel are the exception and not the rule. (Class counsel are not only the rule but mandatory.) Interim counsel are usually helpful early on when a number of related actions are moving toward consolidation. Interim counsel can act as a coordinator for the jumble of cases. But once the cases are consolidated and class counsel expressly appointed, interim counsel disappear and there is no need for coordination.

During an early case management conference on January 12, 2019, counsel said they would move to be interim counsel to help coordinate the various cases. The Court replied:

> But we do need a motion for interim counsel from the plaintiffs' side on this coordinated thing, and I want you all to come up with something . . . I'll give you my lecture on the plaintiffs' side. I like streamlined. One lawyer, one firm is the best. Now, maybe you don't want to give me that. Okay, I can maybe live with two, but what we can't have is a top-heavy structure that is going to rack up big fees, and I don't like that. That's just a waste of money.
>
> So you need to think of a good system, even for the interim counsel part, to avoid the problem of a top-heavy plaintiff counsel structure. Please take that to heart. I don't know enough about this case to tell you how that applies here, but . . . some just say, oh, whatever they want, give it to them. No, I'm not that way. I want to protect the class, potential class. So that's one thing.



United States District Court
Northern District of California

Case 3:18-cv-05982-WHA Document 325 Filed 05/21/21 Page 7 of 11

> The other is, whoever is the lead counsel for interim counsel purposes is not necessarily who will wind up being the lead for the class on Rule 23. Some . . . could be, but I would be open to someone else taking that role as well. So you need to make that motion pronto. You can do that soon in order for us to be able to work out some of these problems that are probably going to come up in the next four weeks.

In response, Attorney McNamara of Cohen Milstein stated, "That is helpful guidance, and we will abide by it" (Dkt. 71, at 114-15).

Three days later, on January 15, 2019, counsel filed their motion to appoint John Yanchunis of Morgan & Morgan, Ariana Tadler of Milberg Tadler Phillips Grossman LLP, and Andrew Friedman of Cohen Milstein Sellers & Toll, PLLC as "interim counsel" (Dkt. 72). At the end of the attachments to that motion, counsel included a table depicting a committee structure for delegating work across 17 law firms and a protocol for time and expense reporting (Dkt 72, Exhs. 5, 6). The protocol included the statement "before you expend any time in this litigation for which you may seek compensation, you must obtain ***written approval in advance from Co-Lead Counsel***" (Dkt. 72, Exh. 6) (emphasis in original). The full section read (Dkt. 72, Exh. 6):

> As fiduciaries to the proposed Class, we are obligated to litigate this case effectively and efficiently, without unnecessary effort and duplication. Proposed Co-Lead Interim Counsel ("CoLead Counsel") have, therefore, prepared this protocol to ensure those goals. We will strictly adhere to these directives. Accordingly, before you expend any time in this litigation for which you may seek compensation, you must obtain ***written approval in advance from Co-Lead Counsel***. Moreover, the written approval must clearly authorize all of the time for which you seek to be compensated. If you have any doubts about whether your time has been so authorized, please reach out to us for clarification.
>
> Simply reporting the time does not mean a firm will be paid for that time or that such time will be included in any fee application. We will not be able to include in any fee petition any time that is not expended and timely reported in accordance with this protocol. Further, CoLead Counsel will evaluate the propriety of all reported time to ensure that the tasks were efficiently handled and the time is reasonable.

United States District Court
Northern District of California

On February 14, the Court approved the proposed interim counsel (Dkt. 79). That order acknowledged that (Dkt. 79 at 4):

> [C]ounsel have committed to expending resources to represent the putative class. Counsel have already retained experts and have tentatively created and assigned committees with the existing firms involved in this action (each to be led and supervised by one of the proposed counsel), to meet the deadlines set by the case management order. To date, proposed counsel have managed this litigation with the unanimous support of all counsel in the consolidated cases. Counsel have also prepared protocols to govern timekeeping, monthly submission of time records, and other administrative tasks.

The order again "remind[ed] interim counsel that, as usual, duplicative or excessive requests for attorney's fees will be looked upon with disfavor" (Dkt. 79 at 4).

The committee structure made sense at the interim stage under Rule 23(g)(3) so as to allow more lawyers to have a shot at becoming class counsel and to give various contenders a role prior to selection of class counsel at the certification stage. All of the above occurred before any motion for class certification.

Many months later at the class certification stage, interim counsel moved to certify a damages class and argued for the adequacy of the existing interim counsel for the continued representation of the class (Dkt. 197-4). The motion for class certification simply stated, "Proposed class counsel, approved by this Court as interim counsel, are experienced class action attorneys and are committed to prosecuting this case," recited class counsel's work on the case up to that point, and concluded that "[p]laintiff and proposed Class Counsel meet the adequacy requirement" (Dkt. 197-4 at 14). *No mention was made of any committee structure.*

The Court's order certifying a class and appointing class counsel, unlike the interim order, did not approve or refer to any committee structure (Dkt. 260). That order stated (Dkt. 260 at 16):

> Plaintiff's counsel Andrew Friedman of Cohen Milstein Sellers & Toll PLLC, John Yanchunis of Morgan & Morgan Complex Litigation Group, and Ariana Tadler of Tadler Law LLP are hereby **APPOINTED** as class counsel.



United States District Court
Northern District of California

This definition is the very definition used in the settlement agreement — three firms and three firms only. Attorney de Bartolomeo was incorrect, therefore, in suggesting that the applications for class counsel informed the Court that a committee would assist class counsel. Although the committee structure surfaced in the interim motion (and resulting order appointing interim counsel), no references were made to a committee in the later motion for appointment of class counsel (or in the resulting order appointing class counsel). Class counsel were specifically called out as the three firm in the order.

It was therefore improper for class counsel to delegate class representation after appointment. Any work farmed out to lawyers other than class counsel shall not be included in the lodestar.

Turning to the work of class counsel, our review even for work by class counsel raises questions concerning reasonableness of time spent and costs requested. For example:

- Class counsel seeks compensation for the cost of flying 20 attorneys to a two-hour all-hands meeting in Chicago. Apparently, none of the attorneys or firms were already located there. Though there exists a real need to coordinate law firms before the appointment of class counsel, this meeting could have been conducted telephonically.

- Class counsel seek reimbursement of $5,643.06 in hotel costs for a single attorney to attend a Case Management Conference, among other unexplained high hotel charges.

These are but two examples. The special master shall scrutinize the entire lodestar of class counsel to reduce it to a reasonable amount.

The benefit obtained for the class is of foremost importance in determining the reasonableness of fees so "where the plaintiff has achieved only limited success, counting all hours expended on the litigation — even those reasonably spent — may produce an excessive amount, and the Supreme Court has instructed district courts to instead award only that amount of fees that is reasonable in relation to the results obtained." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Here, the settlement is really little more than

what Facebook would have done anyway. In the preliminary settlement approval and in their supplemental briefing, both parties explained that Facebook voluntarily adopted most of the security measures upon the recommendation of a working group created in 2018. Though many of the security measures came about after the filing of complaints related to the breach, class counsel do not state that these measures arose specifically from settlement discussions. In fact, two of the settlement terms were practices Facebook had been using even before the breach occurred (undergoing annual security assessments and board oversight of cybersecurity) (Dkt. 334 at 5, Dkt. at 7). The only truly novel element of the settlement agreement is the involvement of the Court, class counsel, and an independent monitor in ensuring that Facebook maintains the security measures they would have implemented anyway.

Again, what Facebook did wrong was a coding mistake, not an attempt to sell users' private information. Most claims got dismissed. No damages class got certified. What survived for trial was a negligence claim and a claim for declaratory and injunctive relief. The settlement implicates limited aspects of Facebook's overall data security responsibilities — those related to access tokens — and provides neither monetary damages nor individualized credit monitoring for class members. In light of the thinness of the surviving claims and limited class certification obtained, the settlement itself is understandably thin as well but acceptable in view of the probable merits, but the benefit achieved in this case for the class is modest. Class counsel waxed poetic about the complexity, technicality, and novelty of the data security issues presented in this case, but note well the settlement calls for only pocket change to the monitor who will ensure that Facebook abides by the settlement terms. That amount is merely $15,000 over *five years*. This is further evidence of a cosmetic settlement.

This order will allow recover for *all* of the *reasonable* time incurred *by class counsel* in the case (without reduction for limited success) because Facebook agreed to pay it in the settlement agreement. But no bonus or multiplier will be allowed in view of the limited success in this case (even if the agreement could be stretched to cover a bonus or multiplier).

United States District Court
Northern District of California

United States District Court
Northern District of California

3. **Incentive Award**

Incentive awards pose the risk that a class representative has gone along with a settlement, not because it secures a good outcome for the class, but simply for the incentive award. Such awards should therefore be subject to careful scrutiny. This order finds the $5,000 incentive award for plaintiff Adkins unreasonably high. A reasonable amount is $500 in order to compensate plaintiff Adkins for the use of his vacation time from work to travel to San Francisco for proceedings and his role in discovery (including allowing his phone to be forensically examined).

4. **Special Master Appointment**

The companion order appointing a special master gives further instruction on how billing entries must be organized. A review of the excel document submitted in camera suggests that the time keeping in this case was relatively thorough, but class counsel should resubmit their billing records to align the instructions set out in the companion order if needed.

## CONCLUSION

The final settlement is **Approved** and class counsel's fees motion is **Granted** in part as to entitlement of class counsel (and class counsel only), but **Denied** as to amount. The special master will recalculate fees and costs to a reasonable sum based on the foregoing considerations and the companion order.

**IT IS SO ORDERED.**

Dated: May 6, 2021

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

# EXHIBIT 4

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

8016

JONATHAN CARROLL, on behalf of himself and all others similarly situated,

Plaintiff,

v.

CRÈME DE LA CRÈME, INC.,

Defendant.

No. 2017-CH-01624

Judge Sanjay T. Tailor

ENTERED
JUDGE SANJAY TAILOR-1870
AUG 08 2018
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AWARDING ATTORNEYS' FEES, INCENTIVE AWARD AND ENTERING FINAL JUDGMENT**

This matter coming before the Court on August 8, 2018, on the Motion for Entry of Final Judgment and Final Approval of Settlement (the "Motion"), the Court having reviewed and considered the Motion, the Class Action Settlement Agreement ("Settlement Agreement") between Plaintiff Jonathan Carroll, on behalf of himself and the Settlement Class[1], by and through his undersigned counsel, Carey Rodriguez Milian Gonya LLP, and Defendant Crème de la Crème, Inc. ("Defendant" or "Crème"), including all exhibits and attachments to the Motion and the Settlement Agreement, Motion For Award of Attorneys' Fees and Incentive Award, and having conducted the Final Fairness hearing, and being cognizant of all other prior proceedings in this Action,

[1] Capitalized terms used in this Order that are not otherwise defined herein have the meaning assigned to them in the Stipulation.

**IT IS HEREBY ORDERED** as follows:

1. This Court has jurisdiction over the subject matter of this Action and over all claims raised therein and all parties thereto, including the Class.

2. Pursuant to 735 ILCS 5/2-806, the Court grants final approval of the Settlement Agreement and finds that the Settlement is fair to the Class and was the result of arms' length negotiations between the Class, through Class Counsel, and Crème. The Court concludes that the Settlement Agreement is fair, reasonable, and adequate and in the best interest of the Settlement Class.

**FINAL CERTIFICATION OF SETTLEMENT CLASS**

3. Pursuant to Illinois Code of Civil Procedure 735 ILCS 5/2-801, the Court hereby certifies the following Settlement Class:

> All persons whose fingers were scanned at an Illinois Crème de la Crème facility and who did not sign the Consent or persons who signed the Consent but had previously provided fingerscans prior to the execution of such Consent. Excluded from the Settlement Class are (a) persons who never provided fingerscans before execution of the Consent; (b) any Judge presiding over this action and members of their families; (c) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys and employees; (d) persons who properly execute and file a timely request for exclusion from the Settlement Class; and (d) the legal representatives, successors or assigns of any such excluded persons.

4. The Court finds that the Settlement Class satisfies the requirements of the Illinois Code of Civil Procedure 735 ILCS 5/2-801: the Settlement Class is comprised of approximately 5,685 individuals, and thus is sufficiently numerous; there are questions of law or fact common to the Settlement Class; Plaintiff Carroll's claims are typical of those of Settlement Class Members; and Plaintiff Carroll and his counsel have and will continue to fairly and adequately protect the

interests of the Settlement Class.

5. The Court hereby appoints Jonathan Carroll as the representative of the Class, and appoints David P. Milian, Carey Rodriguez Milian Gonya, LLP, as Class Counsel (hereinafter, "Class Counsel").

**NOTICE AND ADMINISTRATION**

6. Pursuant to this Court's Order granting preliminary approval of the Settlement, Garden City Group, Inc., served as Settlement Administrator. This Court finds that the Settlement Administrator performed all duties thus far required as set forth in the Settlement Agreement.

7. The Court finds that the Settlement Administrator has complied with the approved notice process as confirmed by its Declaration filed with the Court. The Court further finds that the Notice plan set forth in the Settlement as executed by the Settlement Administrator satisfied the requirements of Due Process and 735 ILCS 5/2-803. The Notice plan was reasonably calculated to apprise Settlement Class Members of the nature of this litigation, the scope of the Settlement Class, the terms of the Settlement, the right of Settlement Class Members to object to the Settlement or exclude themselves from the Settlement Class and the process for doing so, and of the Final Approval Hearing. Accordingly, the Court finds and concludes that the Settlement Class Members have been provided the best notice practicable under the circumstances, and that the Notice plan was clearly designed to advise the Settlement Class Members of their rights.

**EXCLUSIONS AND OBJECTIONS**

The Settlement Administrator has certified, and the Court hereby finds, that no timely or otherwise valid objections to the Settlement Agreement or to Plaintiff's Motion for Award of Attorneys' Fees and Incentive Award were submitted. Furthermore, the Settlement Administrator has certified, and this Court hereby finds, that no valid or timely exclusions were submitted. All

persons who have not made their objections to the Settlement in the time period and manner provided in the Settlement Agreement are deemed to have waived any objections by appeal, collateral attack, or otherwise. No Settlement Class Member is excluded from the effect of this Final Judgment and no Settlement Class Member may object by appeal or otherwise to this Final Judgment or to any of the findings and ruling contained herein.

**FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**

The Court finds that the Action satisfies the applicable prerequisites for class action treatment under the Illinois Code of Civil Procedure, 735 ILCS 5/2-801. The Court finds that the settlement of the Action, on the terms and conditions set forth in the Settlement Agreement, is in all respects fundamentally fair, reasonable, adequate, and in the best interests of the Class Members, especially in light of the benefits to the Class Members, the relative strength of Plaintiff's case, the defenses raised by the Defendant, the complexity, expense and probable duration of further litigation, the risk and delay inherent in possible appeals, and the risk of collecting any judgment obtained on behalf of the Class. In the Preliminary Approval Order, the Court found that the Settlement Agreement appeared to be fair, reasonable, and adequate and fell within the appropriate range of possible approval. Essentially, the Settlement provides for each member of the Settlement Class, as that term is defined in the Settlement Agreement, to receive from the Defendants benefits described in the Settlement Agreement. The Settlement Agreement provides these benefits to the Settlement Class even though the Defendant has at all times disputed, and continue to dispute, Plaintiff's allegations in this lawsuit and to deny any liability for any of the claims that have been or could have been alleged by Plaintiff or other members of the Settlement Class.

## AWARD OF CLASS COUNSEL'S FEES AND INCENTIVE AWARD

The Court hereby awards an Incentive Award of $5,000.00 to Plaintiff Jonathan Carroll in compensation for the time, effort, and risk he undertook as representatives of the Class. This award shall be paid within the time period and manner as set forth in the Settlement Agreement.

The Court hereby grants Plaintiff's Motion for Award of Attorneys' Fees. Class Counsel is hereby awarded $350,000 as reasonable attorneys' fees, inclusive of the award of reasonable costs incurred in litigating this Action, in the manner specified in the Settlement Agreement. Class Counsels' fees shall be paid within the time period and manner as set forth in the Settlement Agreement.

The Court finds that the requested fees under the lodestar plus multiplier analysis are reasonable. "In class actions [when determining the reasonableness of a fee] ... the trial court looks to the (1) the skill and qualifications of the attorneys; (2) the nature of the services performed; (3) the complexity of the undertaking; and, (4) the hourly fee charged for similar services by attorneys with similar skills and qualifications. The court may then consider a 'lodestar' request and increase the award it has made based on the above factors by looking to two other factors: (a) 'the contingent nature of the undertaking' and (b) 'the benefits conferred upon the class." *Brundidge v. Glendale Fed. Bank, F.S.B.*, 168 Ill. 2d 235, 244, 659 N.E.2d 909, 914 (1995).

The Court hereby awards Class Counsel for their time incurred and expenses advanced. The Court has concluded that: (a) Class Counsel achieved a favorable result for the Class by obtaining the Defendants' agreement to make significant immediate and prospective benefits available to Settlement Class Members; (b) Class Counsel devoted substantial effort to pre- and post-filing investigation, legal analysis, and litigation; (c) Class Counsel prosecuted the Settlement Class' claims on a purely contingent fee basis, investing significant time and accumulating costs

with no guarantee that they would receive compensation for their services or recover their expenses; (d) Class Counsel employed their knowledge of and experience with class action litigation, and specifically BIPA litigation, in achieving a valuable settlement for the Settlement Class, in spite of the Defendant's possible legal defenses and its experienced and capable counsel, and; (e) the Notice informed Settlement Class Members of the amount and nature of Class Counsel's fee and cost request under the Settlement Agreement, Class Counsel filed and posted on the Settlement Website their Motion For Award of Attorneys' Fees on June 25, 2018, in time for Settlement Class Members to make a meaningful decision whether to object to the Class Counsel's fee request, and no Settlement Class members objected.

**RELEASE OF CLAIMS**

This Final Judgment hereby incorporates and gives full effect to the Release set forth in the Settlement Agreement. By virtue of this Final Judgment, all members of the Class who did not validly and timely submit Requests for Exclusion in the manner provided in the Settlement Agreement (and this Court has found that no such timely Requests for Exclusion were submitted) shall, by operation of this Final Judgment, have fully, finally and forever released, relinquished and discharged the Defendants and the Released Parties as set forth in Section 1.22 of the Settlement Agreement from the Released Claims as set forth in Section 1.21 of the Settlement Agreement. Furthermore, all members of the Class who did not validly and timely submit exclusions in the manner provided in the Settlement Agreement are hereby permanently barred and enjoined from (1) filing, commencing, prosecuting, maintaining, intervening in, participating in, conducting or continuing, either directly or in any other capacity, either individually or as a class, any action or proceeding in any court, agency, arbitration, tribunal or jurisdiction, asserting any claims released pursuant to the Settlement Agreement, or seeking an award of fees and costs

of any kind or nature whatsoever and pursuant to any authority or theory whatsoever, relating to or arising from the Action and/or as a result of or in addition to those provided by the Settlement Agreement; and (2) organizing Settlement Class Members who have not excluded themselves from the Settlement Class into a separate class for purposes of pursuing as a purported class action any lawsuit or arbitration or other proceeding (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action) based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation and/or the Released Claims, except that Settlement Class Members are not precluded from participating in any investigation or suit initiated by a state or federal agency. Any Person who knowingly violates such injunction shall pay the attorneys' fees and costs incurred by Defendants and/or any other Released Persons and Class Counsel as a result of the violation.

**AMENDMENTS AND MODIFICATIONS**

Class Counsel and Defendant are hereby authorized, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of the Settlement and its implementing documents (including all Exhibits to the Settlement Agreement) that (1) shall be consistent in all material respects with this Final Judgment, and (2) do not limit the rights of Settlement Class Members.

**PRECLUSIVE EFFECT**

The Settlement Agreement and this Final Judgment are binding on and shall have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings encompassed by the Release maintained by or on behalf of Plaintiff and all Settlement Class Members, as well as their respective present, former and future administrators, agents, assigns, attorneys, executors, heirs, partners, predecessors-in-interest and successors.

**ENTRY OF FINAL JUDGMENT**

Finding that there is no just reason for delay, the Court orders that this Order for Final Approval of Class Action Settlement, Awarding Attorneys' Fees, Incentive Award and Entry of Final Judgment shall constitute a final judgment. The Clerk of the Court is directed to enter this Order on the docket forthwith. The above-captioned action is hereby dismissed in its entirety *with prejudice*. Without affecting the finality of the Judgment hereby entered, the Court reserves jurisdiction over the implementation of the Settlement Agreement, including enforcement and administration of the Settlement Agreement and this Final Judgment.

**IT IS SO ORDERED**

JUDGE SANJAY T. TAILOR

ENTERED
JUDGE SANJAY TAILOR-1870
AUG 08 2018
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

# EXHIBIT 5

A
D. H.

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| AUSTE SALKAUSKAITE, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>SEPHORA USA, INC., a Delaware corporation,<br><br>*Defendant.* | ) | No. 18 CH 14379<br><br>Calendar 15<br><br>Hon. Anna M. Loftus |

**FINAL ORDER AND JUDGMENT**

This matter coming to be heard on Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement (the "Motion"), due and adequate notice having been given to the Settlement Class, and the Court having considered the papers filed and proceedings in this matter, and being fully advised in the premises,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED as follows:

1. Unless otherwise noted, all capitalized terms in this Final Order and Judgment shall have the same meaning as ascribed to them in the Settlement Agreement between ASUTE SALKAUSKAITE ("Plaintiff") and SEPHORA USA, INC. ("Defendant"). Plaintiff and Defendant are each referred to as a "Party" and are collectively referred to herein as the "Parties."

2. This Court has jurisdiction over the subject matter of the Litigation and personal jurisdiction over all parties to the Litigation, including all Settlement Class Members.

3. The Court preliminarily approved the Settlement Agreement on March 12, 2020. The Court finds that adequate notice was given to all members of the Settlement Class pursuant to the terms of the Preliminary Approval Order.

4. The Court has read and considered the papers filed in support of this Motion for Final Approval, including the Settlement Agreement and exhibits thereto and supporting declarations.

5. The Court held a Final Approval Hearing on June 23, 2021, at which time the Parties and all other interested persons were afforded the opportunity to be heard in support of and in opposition to the Settlement.

6. Based on the papers filed with the Court and the presentations made to the Court by the Parties and other interested persons at the Final Approval Hearing, the Court now gives Final Approval to the Settlement and finds that the Settlement Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class. The complex legal and factual posture of the Litigation, and the fact that the Settlement Agreement is the result of arms-length negotiations presided over by a neutral mediator, further support this finding.

7. Pursuant to 735 ILCS 5/2-801 and 2-802, the Court finally certifies, for settlement purposes only, the following Settlement Class:

> All natural persons who pushed a button to interact with any Sephora Virtual Artist Kiosk within the state of Illinois from July 1, 2018 to the date of the Preliminary Approval Order.

8. For settlement purposes only, the Court confirms the appointment of Auste Salkauskaite as Class Representative of the Settlement Class.

9. For settlement purposes only, the Court confirms the appointment of the following counsel as Class Counsel, and finds they are experienced in class litigation and have adequately represented the Settlement Class:

Evan M. Meyers
Eugene Y. Turin
Timothy P. Kingsbury
MCGUIRE LAW, P.C.
55. W. Wacker Dr., 9th Fl.
Chicago, IL 60601

10. With respect to the Settlement Class, this Court finds, for settlement purposes only, that: (a) the Settlement Class defined above is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Settlement Class, and those common questions predominate over any questions affecting only individual members; (c) the Class Representative and Class Counsel have fairly and adequately protected, and will continue to fairly and adequately protect, the interests of the Settlement Class; and (d) certification of the Settlement Class is an appropriate method for the fair and efficient adjudication of this Litigation.

11. The Court has determined that the Notice given to the Settlement Class Members, in accordance with the Preliminary Approval Order fully and accurately informed Settlement Class Members of all material elements of the Settlement and constituted the best notice practicable under the circumstances, and fully satisfied the requirements of 735 ILCS 5/2-803, applicable law, and the Due Process Clauses of the U.S. Constitution and Illinois Constitution.

12. The Court orders the Parties to the Settlement Agreement to perform their obligations thereunder. The terms of the Settlement Agreement shall be deemed incorporated herein as if explicitly set forth and shall have the full force of an order of this Court.

13. The Court dismisses this action with prejudice and without costs (except as otherwise provided herein and in the Settlement Agreement) as to Plaintiff's and all Settlement

Class Members' claims against Defendant. The Court adjudges that the Released Claims and all of the claims described in the Settlement Agreement are released against the Released Parties.

14. The Court adjudges that Plaintiff and all Settlement Class Members shall be deemed to have fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties, as set forth in the Settlement Agreement.

15. The Released Claims specifically extend to claims that Plaintiff and Settlement Class Members do not know or suspect to exist in their favor at the time that the Settlement Agreement, and the releases contained therein, become effective.

16. The Court further adjudges that, upon entry of this Order, the Settlement Agreement and the above-described release of the Released Claims will be binding on, and have *res judicata* preclusive effect in, all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiff and all other Settlement Class Members who did not validly and timely exclude themselves from the Settlement, and their respective predecessors, successors, affiliates, spouses, heirs, executors, administrators, agents and assigns of each of the foregoing, as set forth in the Settlement Agreement. The Released Parties may file the Settlement Agreement and/or this Final Order and Judgment in any action or proceeding that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

17. Plaintiff and Settlement Class Members who did not validly and timely request exclusion from the Settlement are permanently barred and enjoined from asserting, commencing, prosecuting, or continuing any of the Released Claims or any of the claims described in the Settlement Agreement against any of the Released Parties.

18. The Court approves payment of attorneys' fees, costs and expenses to Class Counsel in the amount of $455,145.31. This amount shall be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement. The Court, having considered the materials submitted by Class Counsel in support of final approval of the Settlement and their request for attorneys' fees, costs and expenses, finds the award of attorneys' fees, costs and expenses appropriate and reasonable for the following reasons: First, the Court finds that the Settlement provides substantial benefits to the Settlement Class. Second, the Court finds the payment fair and reasonable in light of the substantial work performed by Class Counsel. Third, the Court concludes that the Settlement was negotiated at arms-length without collusion, and that the negotiation of the attorneys' fees only followed agreement on the settlement benefits for the Settlement Class Members. Finally, the Court notes that the Class Notice specifically and clearly advised the Settlement Class that Class Counsel would seek an award in the amount sought.

19. The Court approves the Incentive Award in the amount of $10,000.00 for the Class Representative Auste Salkauskaite, and specifically finds such amount to be reasonable in light of the services performed by Plaintiff for the Settlement Class, including taking on the risks of litigation and helping achieve the results to be made available to the Settlement Class. This amount shall be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement.

20. The Parties have agreed to distribute any *cy pres* funds to the Chicago Bar Foundation. Such funds, if any, shall be comprised of the value of uncashed settlement checks and paid in accordance with the Settlement Agreement.

21. Neither this Final Order and Judgment, nor the Settlement Agreement, nor the payment of any consideration in connection with the Settlement shall be construed or used as an admission or concession by or against Defendant or any of the other Released Parties of any fault,

omission, liability, or wrongdoing, or of the validity of any of the Released Claims as set forth in the Settlement Agreement. This Final Order and Judgment is not a finding of the validity or invalidity of any claims in this Litigation or a determination of any wrongdoing by Defendant or any of the other Released Parties. The Final Approval of the Settlement does not constitute any position, opinion, or determination of this Court, one way or another, as to the merits of the claims or defenses of Plaintiff, the Settlement Class Members, or Defendant.

22. No objections were filed in this matter, and any objections to the Settlement Agreement are overruled and denied in all respects. The Court finds that no reason exists for delay in entering this Final Order and Judgment. Accordingly, the Clerk is hereby directed forthwith to enter this Final Order and Judgment.

23. The Parties, without further approval from the Court, are hereby permitted to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement and its implementing documents (including all exhibits to the Settlement Agreement) so long as they are consistent in all material respects with the Final Order and Judgment and do not limit the rights of the Settlement Class Members.

**IT IS SO ORDERED.**

Judge Anna M. Loftus
JUN 23 2021
Circuit Court-2102

ENTERED:

*Anna M. Loftus*

Judge Anna M. Loftus, No. 2102

# EXHIBIT 6

UNITED STATES OF AMERICA

STATE OF ILLINOIS COUNTY OF DU PAGE

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT

AMIRA POWE
Plaintiff

-VS-

DERMALOGICA LLC
Defendant

2022LA000874
CASE NUMBER

FILED
23 Mar 22 AM 09: 22
Candice Adams
CLERK OF THE
18TH JUDICIAL CIRCUIT
DUPAGE COUNTY, ILLINOIS

ORDER

**FINAL APPROVAL ORDER AND JUDGEMENT**

This matter coming to be heard on Plaintiff's Motion for Final Approval of Class Action Settlement (the "Motion"), due and adequate notice having been given to the Settlement Class, and the Court having considered the papers filed and proceedings in this matter, and being fully advised in the premises, IT IS HEREBY ORDERED, ADJUDGED, and DECREED as follows:

1. Unless otherwise noted, all capitalized terms in this Final Approval Order and Judgment shall have the same meaning as ascribed to them in the Settlement Agreement between Amira Powe ("Plaintiff") and Dermalogica, LLC. ("Defendant", and, together, the "Parties").
2. This Court has jurisdiction over the subject matter of the Litigation and personal jurisdiction over all Parties to the Litigation, including all Class Members.
3. The Court preliminarily approved the Settlement Agreement by Preliminary Approval Order dated December 13, 2022, and the Court finds that adequate notice was given to all members of the Settlement Class pursuant to the terms of the Preliminary Approval Order.
4. The Court has read and considered the papers filed in support of this Motion for Final Approval, including the Settlement Agreement and exhibits thereto and supporting declarations
5. The Court held a Final Approval Hearing on March 22, 2023 at 9:00 a.m. at which time the Parties and all other interested persons were afforded the opportunity to be heard in support of and in opposition to the Settlement
6. Based on the papers filed with the Court, the Court now gives final approval to the Settlement and finds that the Settlement Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class. The complex legal and factual posture of the Litigation, and the fact that the Settlement Agreement is the result of arms-length negotiations, including negotiations presided over by a neutral mediator, further support this finding.
7. The Settlement Agreement calls for a Settlement Class which consists of:

   All individuals who while residing or present in the State or Illinois, used Dermalogica's Face Mapping feature and provided a valid email address, and thus allegedly had their face geometry collected, captured, received, or otherwise obtained and/or stored by Dermalogica.

   Excluded from the Settlement Class are (i) any judge presiding over this action and members or their staff, as well as members of their families, (ii) Dermalogica, Dermalogica's predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which Dermalogica has a controlling interest, as well as Dermalogica's current or former employees, agents, officers, and directors, (iii) persons who properly execute and file a timely request for exclusion from the Settlement Class, (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released, (v) counsel for Dermalogica, and (vi) the legal representatives, successors, and assigns of any such excluded persons.

8. 0 individuals have made a timely or valid request for exclusion.

9. For settlement purposes only, the Court confirms the appointment of Plaintiff as Class Representative for the Settlement Class.

10 For settlement purposes only, the Court confirms the appointment of the following counsel as Class Counsel, and finds they are experienced in class litigation and have adequately represented the Settlement Class: Gary M. Klinger, Milberg Coleman Bryson Phillips Grossman, PLLC, Katrina Carroll of Lynch Carpenter, LLP, and Jon Jagher of Freed Kanner London & Millen, LLC.

11. With respect to the Settlement Class, this Court finds, for settlement purposes only, that: (a) the Settlement Class defined above is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Settlement Class, and those common questions predominate over any questions affecting only individual members; (c) the Class Representatives and Class Counsel have fairly and adequately protected, and will continue to fairly and adequately protect, the interests of the Settlement Class; and (d) certification of the Settlement Class is an appropriate method for the fair and efficient adjudication of this controversy.

12. The Court has determined that the Notice given to the Settlement Class Members, in accordance with the Preliminary Approval Order, fully and accurately informed Settlement Class Members of all material elements of the Settlement and constituted the best notice practicable under the circumstances, applicable law, and the Due Process Clauses of the U.S. Constitution.

13. The Court orders the Parties to the Settlement Agreement to perform their obligations thereunder. The terms of the Settlement Agreement shall be deemed incorporated herein as if explicitly set forth and shall have the full force of an order of this Court.

14. The Court dismisses the Litigation with prejudice and without costs (except as otherwise provided herein and in the Settlement Agreement) as to Plaintiff's and all Class Members' claims against Defendant. The Court adjudges that the Released Claims and all of the claims described in the Settlement Agreement are released against the Releasees.

15. The Court adjudges that the Plaintiff and all members of the Settlement Class shall be deemed to have fully, finally, and forever released, relinquished, and discharged all Released Claims against the Releasees, as defined under the Settlement Agreement.

16. The Released Claims specifically extend to claims that Plaintiff and Class Members do not know or suspect to exist in their favor at the time that the Settlement Agreement, and the releases contained therein, become effective.

17. The Court further adjudges that, upon entry of this Final Approval Order, the Settlement Agreement and the above-described release of the Released Claims will be binding on, and have *res judicata* preclusive effect in, all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiff and all Class Members who did not validly and timely exclude themselves from the Settlement, and their respective affiliates, assigns, heirs, executors, administrators, successors, and agents, as set forth in the Settlement Agreement. The Releasees may file the Settlement Agreement and/or this Final Approval Order and Judgment in any action or proceeding that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

18. Plaintiff and Class Members are permanently barred and enjoined from asserting, filing, commencing, prosecuting, pursuing, continuing, and/or seeking to reopen any of the Released Claims or any of the claims described in the Settlement Agreement against any of the Releasees.

19. The Court approves payment of attorneys' fees and costs to Class Counsel in the amount of 12% of the Settlement Fund and the value of injunctive relief in the amount of $1,080,000. This amount shall be paid by Defendant in accordance with the terms of the Settlement Agreement. The allocation of attorneys' fees and costs shall be left to the sole discretion of Class Counsel. The Court, having considered the materials submitted by Class Counsel in support of final approval of the Settlement and their request for attorneys' fees, costs and expenses and in response to any timely filed objections thereto, finds the award of attorneys' fees, costs and expenses

appropriate and reasonable for the following reasons: First, the Court finds that the Settlement provides substantial benefits to the Settlement Class. Second, the Court finds the payment fair and reasonable in light of the substantial work performed by Class Counsel. Third, the Court concludes that the Settlement was negotiated at arms-length without collusion, and that the negotiation of the attorneys' fees only followed agreement on the settlement benefits for the Class Members. Finally, the Court notes that the Notice Form specifically and clearly advised the Settlement Class that Class Counsel would seek an award in the amount sought.

20. The Court approves the requested Incentive Award in the amount of $2,500 for the Class Representative and specifically finds the amount to be reasonable in light of the services performed by Plaintiff for the Settlement Class, including taking on the risks of litigation, and helping achieve the results to be made available to the Settlement Class. This amount shall be paid by Defendant in accordance with the terms of the Settlement Agreement.

21. Neither this Final Approval Order and Judgment, nor the Settlement Agreement, nor the payment of any consideration in connection with the Settlement shall be construed or used as an admission or concession by or against Defendant or any of the Releasees of any fault, omission, liability, or wrongdoing, or of the validity of any of the Released Claims. This Final Approval Order and Judgment is not a finding of the validity or invalidity of any claims in this Litigation or a determination of any wrongdoing by Defendant or any of the Releasees. The final approval of the Settlement Agreement does not constitute any position, opinion, or determination of this Court, one way or another, as to the merits of the claims or defenses of Plaintiff, the Class Members, or Defendant.

22. Any objections to the Settlement Agreement are overruled and denied in all respects. The Court finds that no reason exists for delay in entering this Final Approval Order and Judgment. Accordingly, the Clerk is hereby directed forthwith to enter this Final Approval Order and Judgment.

23. The Parties, without further approval from the Court, are hereby permitted to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement and its implementing documents (including all exhibits to the Settlement Agreement) so long as they are consistent in all material respects with the Final Approval Order and Judgment and do not limit the rights of the Class Members.

Submitted by: GARY M. KLINGER
Attorney Firm: MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN
DuPage Attorney Number: 368326
Attorney for: PLAINTIFFS
Address: 227 W MONROE STREET, SUITE 2100
City/State/Zip: CHICAGO, IL, 60606
Phone number: 866-252-0878
Email : gklinger@milberg.com

Entered: File Date 03/22/2023

JUDGE DAVID E SCHWARTZ
Validation ID : DP-03222023-0922-27655

Date: 03/22/2023

# EXHIBIT 7

A D. H.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| ALEXANDER MARSHALL, individually and on behalf of a class of similarly situated individuals,<br><br>*Plaintiff*,<br><br>v.<br><br>LIFE TIME FITNESS, INC., a Minnesota Corporation, and LTF CLUB OPERATIONS COMPANY, INC., a Minnesota Corporation,<br><br>*Defendants*. | ) | Case No. 17-CH-14262<br><br>Hon. Sanjay T. Tailor |

**FINAL ORDER AND JUDGMENT**

This matter coming to be heard on Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement (the "Motion"), due and adequate notice having been given to the Settlement Class, and the Court having considered the papers filed and proceedings in this matter, and being fully advised in the premises, IT IS HEREBY ORDERED, ADJUDGED, and DECREED as follows:

1. Unless otherwise noted, all capitalized terms in this Final Order and Judgment shall have the same meaning as ascribed to them in the Settlement Agreement between Alexander Marshall ("Plaintiff") and Life Time Fitness, Inc. and LTF Club Operations Company, Inc. ("Defendants"). Defendants and Plaintiff are each referred to as a "Party" and are collectively referred to herein as the "Parties."

2. This Court has jurisdiction over the subject matter of the Litigation and personal jurisdiction over all parties to the Litigation, including all Settlement Class Members.

3. The Court preliminarily approved the Settlement Agreement by Preliminary Approval Order dated April 26, 2019, and the Court finds that adequate notice was given to all

members of the Settlement Class pursuant to the terms of the Preliminary Approval Order.

4. The Court has read and considered the papers filed in support of this Motion for Final Approval, including the Settlement Agreement and exhibits thereto and supporting declarations.

5. The Court held a Final Approval Hearing on July 30, 2019, at which time the Parties and all other interested persons were afforded the opportunity to be heard in support of and in opposition to the Settlement.

6. Based on the papers filed with the Court and the presentations made to the Court by the Parties and other interested persons at the Final Approval Hearing, the Court now gives Final Approval to the Settlement and finds that the Settlement Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class. The complex legal and factual posture of the Litigation, and the fact that the Settlement Agreement is the result of arms-length negotiations presided over by a neutral mediator, further support this finding.

7. Pursuant to 735 ILCS 5/2-801 and 2-802, the Court finally certifies, for settlement purposes only, the following Settlement Class:

> Any individual whose biometric identifier and/or biometric information was allegedly captured, collected, obtained, stored, disseminated, transmitted, or used by Defendants within the state of Illinois between October 26, 2013 and November 11, 2018.

8. Three Settlement Class Members made timely and valid requests for exclusion. Thus, only those three Settlement Class Members are excluded from the Settlement Class and all other Settlement Class Members are bound by this Final Order and Judgment. A list of the Settlement Class Members who made timely and valid requests for exclusion is attached hereto as Exhibit A.

9. For settlement purposes only, the Court confirms the appointment of Plaintiff

Alexander Marshall as Class Representative of the Settlement Class.

10. For settlement purposes only, the Court confirms the appointment of the following counsel as Class Counsel, and finds they are experienced in class litigation and have adequately represented the Settlement Class:

Myles McGuire
Evan M. Meyers
David L. Gerbie
Jad Sheikali
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
mmcguire@mcgpc.com
emeyers@mcgpc.com
dgerbie@mcgpc.com
jsheikali@mcgpc.com
Tel: 312-893-7002

11. With respect to the Settlement Class, this Court finds, for settlement purposes only, that: (a) the Settlement Class defined above is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Settlement Class, and those common questions predominate over any questions affecting only individual members; (c) the Class Representative and Class Counsel have fairly and adequately protected, and will continue to fairly and adequately protect, the interests of the Settlement Class; and (d) certification of the Settlement Class is an appropriate method for the fair and efficient adjudication of this Litigation.

12. The Court has determined that the Notice given to the Settlement Class Members, in accordance with the Preliminary Approval Order, fully and accurately informed Settlement Class Members of all material elements of the Settlement and constituted the best notice practicable under the circumstances, and fully satisfied the requirements of 735 ILCS 5/2-803, applicable law, and the Due Process Clauses of the U.S. Constitution and Illinois Constitution.

13. The Court orders the Parties to the Settlement Agreement to perform their obligations thereunder. The terms of the Settlement Agreement shall be deemed incorporated herein as if explicitly set forth and shall have the full force of an order of this Court.

14. The Court dismisses the Litigation with prejudice and without costs (except as otherwise provided herein and in the Settlement Agreement) as to Plaintiff's and all Settlement Class Members' claims against Defendants. The Court adjudges that the Released Claims and all of the claims described in the Settlement Agreement are released against the Releasees.

15. The Court adjudges that the Plaintiff and all Settlement Class Members who have not opted out of the Settlement Class shall be deemed to have fully, finally, and forever released, relinquished, and discharged all Released Claims against the Releasees, as set forth in the Settlement Agreement.

16. The Released Claims specifically extend to claims that Plaintiff and Settlement Class Members do not know or suspect to exist in their favor at the time that the Settlement Agreement, and the releases contained therein, become effective. The Court finds that Plaintiff has, and the Settlement Class Members are deemed to have, knowingly waived the protections of any law of the United States or any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code Section 1542 which provides:

> ***A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.***

17. The Court further adjudges that, upon entry of this Order, the Settlement Agreement and the above-described release of the Released Claims will be binding on, and have *res judicata* preclusive effect in, all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiff and all other Settlement Class Members who did not validly and timely exclude themselves from the Settlement, and their respective predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing, as set forth in the Settlement Agreement. The Releasees may file the Settlement Agreement and/or this Final Order and Judgment in any action or proceeding that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

18. Plaintiff and Settlement Class Members who did not validly and timely request exclusion from the Settlement are permanently barred and enjoined from asserting, commencing, prosecuting, or continuing any of the Released Claims or any of the claims described in the Settlement Agreement against any of the Releasees.

19. The Court approves payment of attorneys' fees, costs and expenses to Class Counsel in the amount of $800,000.00. This amount shall be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement. The Court, having considered the materials submitted by Class Counsel in support of final approval of the Settlement and their request for attorneys' fees, costs and expenses and in response to any timely filed objections thereto, finds the award of attorneys' fees, costs and expenses appropriate and reasonable for the following reasons: First, the Court finds that the Settlement provides substantial benefits to the Settlement Class. Second, the Court finds the payment fair and reasonable in light of the

substantial work performed by Class Counsel. Third, the Court concludes that the Settlement was negotiated at arms length without collusion, and that the negotiation of the attorneys' fees only followed agreement on the settlement benefits for the Settlement Class Members. Finally, the Court notes that the Class Notice specifically and clearly advised the Settlement Class that Class Counsel would seek an award in the amount sought and no objections were made.

20. The Court approves the Incentive Award in the amount of Five Thousand Dollars ($5,000.00) for the Class Representative Alexander Marshall, and specifically finds such amount to be reasonable in light of the services performed by Plaintiff for the Settlement Class, including taking on the risks of litigation and helping achieve the relief to be made available to the Settlement Class. This amount shall be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement.

21. Neither this Final Order and Judgment, nor the Settlement Agreement, nor the payment of any consideration in connection with the Settlement shall be construed or used as an admission or concession by or against any Defendant or any of the other Releasees of any fault, omission, liability, or wrongdoing, or of the validity of any of the Released Claims as set forth in the Settlement Agreement. This Final Order and Judgment is not a finding of the validity or invalidity of any claims in this Litigation or a determination of any wrongdoing by any Defendant or any of the other Releasees. The Final Approval of the Settlement does not constitute any position, opinion, or determination of this Court, one way or another, as to the merits of the claims or defenses of Plaintiff, the Settlement Class Members, or Defendants.

22. Any objections to the Settlement Agreement are overruled and denied in all respects. The Court finds that no reason exists for delay in entering this Final Order and Judgment. Accordingly, the Clerk is hereby directed forthwith to enter this Final Order and Judgment.

23. The Parties, without further approval from the Court, are hereby permitted to agree

to and adopt such amendments, modifications and expansions of the Settlement Agreement and its implementing documents (including all exhibits to the Settlement Agreement) so long as they are consistent in all material respects with the Final Order and Judgment and do not limit the rights of the Settlement Class Members.

ENTERED
JUDGE SANJAY TAILOR-1870
JUL 30 2019
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

**IT IS SO ORDERED.**

ENTERED: ____________________

Hon. Sanjay T. Tailor
Circuit Court Judge
Circuit Court of Cook County, Illinois

*Marshall v. Life Time Fitness, Inc. et al.* Case No. 17-CH-14262

**Exclusions/Opt Outs:**

Caroline Casas – 905 Monticello Dr Naperville IL 60563-3260

Lauren Spedale – 17643 Lilac Ln Tinley Park IL 60477-6580

Melody Mathewson – 1581 Raymond Dr Naperville IL 60563-2290